UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| IN RE: | BIG LEVEL TRUCKING, INC. | CHAPTER 11 |
| | DEBTOR(S) | CASE NO. 25-51204-KMS |

## RULE 9019 MOTION TO SETTLE AND COMPROMISE DISPUTED CLAIMS

COMES NOW Debtor Big Level Trucking, Inc. (the "Debtor"), by and through undersinged counsel, and files this its *Rule 9019 Motion to Settle and Compromise Disputed Claims* (the "Motion"), and in support thereof, would respectfully show unto this Honorable Court as follows, to-wit:

1. On August 18, 2025, the Debtor herein filed with this Court its Voluntary Petition (the "Petition") for bankruptcy under Chapter 11 of the Bankruptcy Code.

2. This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105, 363, 1107, 1109, related statutes, related rules, and various orders of reference. This is a core proceeding.

3. Prior to the filing of the Petition herein, the Debtor was a party in a wrongful death lawsuit filed by the Plaintiff's estate against multiple defendants, including the Debtor. The lawsuit was filed in the Circuit Court of Second Judicial Circuit, in and for Gadsden County, Florida (the "Florida lawsuit"), and styled: *Modou Secka, as Personal Representative of the Estate of Alhagie Secka v. Jade Ce'Mone Smith, et al.*, Case No. 2025 CAA 440.

4. After the filing of the Petition herein, the Debtor and the other litigation parties entered into a series of extensive negotiations that produced a settlement and compromise of numerous issues along with related relief (the "Settlement").

5. The Debtor's portion of the Settlement will be paid by the Debtor's insurer, so there will be no impact on the Debtor's creditors.

6. The Settlement is pervasive and obviously speaks for itself. A copy of the signed settlement and release is attached, incorporated by reference, and marked hereto as **Exhibit "A"**. As a summary, the Debtor submits that the Settlement resolves difficult and unsettled issues with respect to the alleged wrongful death of the Plaintiff. In exchange for the payment to Plaintiff of $225,000.00, the Plaintiff agrees to dismiss the Florida lawsuit against all parties.

7. The Settlement provides finality to the Debtor regarding this matter, avoids a lengthy, expensive, and time-consuming trial in this wrongful death dispute, ends any possibility of appeals and resolves difficult issues without the necessity of a trial.

8. Federal Rule of Bankruptcy Procedure 9019 ("Rule 9019") authorizes the Court to approve the compromise and settlement of claims and causes of action in a bankruptcy case after appropriate notice and an opportunity for a hearing.

9. Compromises are tools for expediting the administration of the case and reducing administrative costs and are favored in bankruptcy. *See Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000); *Fishell v. Soltow (In re Fishell)*, 1995 WL 66622, at *2 (6th Cir. February 16, 1995); *In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996) ("To minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'") (quoting 9 Collier on Bankruptcy ¶ 9019.03[1] (15th Ed. 1993)). Various courts have endorsed the use of Bankruptcy Rule 9019 to resolve disputes. See, e.g., *In re Miller*, 148 B.R. 510, 516 (Bankr. N.D. Ill. 1992); *In re Patel*, 43 B.R. 500, 504 (Bankr. N.D. Ill. 1984); see also, *Bartel v. Bar Harbor Airways, Inc.*, 196 B.R. 268 (S.D.N.Y. 1996); *In re Foundation for New Era*

*Philanthropy*, 1996 Bankr. LEXIS 1892 (Bankr. E.D. Pa. Aug 21, 1996); *In re Check Reporting Servs., Inc.*, 137 B.R. 653 (Bankr. W.D. Mich. 1992).

10. A compromise or proposed settlement should be approved where such settlement is in the best interests of the bankruptcy estate and is fair and reasonable under the circumstances. *In re Griffin Trading Co.*, 270 B.R. 883, 903 (Bankr. N.D. Ill. 2001) (citing *In re American Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987)). More specifically, "[t]his determination requires a comparison of the settlement's terms with the litigation's probably costs and probable benefits." *In re Miller*, 148 B.R. at 516 (citing *In re American Reserve Corp.*, 841 F.2d at 161). Furthermore, "[i]n making this comparison the bankruptcy judge should consider the litigation's probable costs and probability of success, the litigation's complexity, and the litigation's attendant expense, inconvenience, and delay." *Id.*

11. Settlements in bankruptcy cases are, of course, encouraged and favored.

12. A basic policy in bankruptcy cases is that settlement is favored. 10 *Collier on Bankruptcy* ¶ 9019.01 at 9019-2 (15th Ed. Revised 1997). Courts have built on this policy by adopting the standards set forth in the U.S. Supreme Court decision *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). In *TMT*, the Supreme Court held that:

> A compromise would be approved by the bankruptcy court only after it apprise[s itself] of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense and likely duration of such litigation, the possible difficulties in collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.

*Id.* at 424.

13. The Fifth Circuit standard was stated in *Official Comm. of Unsecured Creditors v. Cajun Electric Power Co-op., Inc.*:

    (1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law;

    (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and

    (3) [a]ll other factors bearing on the wisdom of the compromise.

119 F.3d 349, 356 (5th Cir. 1997). These factors have been summarized as requiring the compromise to be "fair and equitable" and "in the best interests of the estate." *TMT*, 390 U.S. at 424; *Cajun Elec.*, 119 F.3d at 355.

14. In this case, the Settlement is reasonable, fair and equitable.

15. The Debtor is of the opinion that litigation of the issues in this action would not produce a better result than has been agreed to already.

16. The costs, expenses, and delay of litigation would not justify litigating any of the issues in this matter, and the Debtor is of the opinion that the Settlement is reasonable, justified and fair.

17. Accordingly, the Debtor respectfully requests that the Court and the creditors approve the Settlement that has been reached. The Debtor requests that it be authorized to execute such release, or settlement and compromise agreements and any other commercially reasonable documents necessary to implement the terms of the Settlement to the extent any are necessary in addition to an order of the Court granting the Motion.

18. Other grounds to be assigned upon a hearing hereof if necessary.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully prays that upon a hearing hereof, this Honorable Court will enter its order granting the Motion. Debtor prays for general relief.

THIS, the 23rd day of January, 2026.

                                    Respectfully submitted,

                                    BIG LEVEL TRUCKING, INC.

                                    By Its Attorneys,

                                    LAW OFFICES OF GENO AND STEISKAL, PLLC

                                    By: _____
                                                Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Pleadings\9019 Mot to Settle and Compromise Disputed Claims - Seeka Wrongful Death - 2026-01-16.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to the following:

Abigail M. Marbury, Esq.
Assistant U.S. Trustee
abigail.m.marbury@usdoj.gov

THIS, the 23rd day of January, 2026.

_____
Craig M. Geno

## RELEASE OF ALL CLAIMS

### *Definitions*

1. **"INCIDENT"** herein refers to: injuries sustained by "RELEASOR" (*as defined herein, below*) due to injuries Plaintiff/Decedent sustained as alleged in the Amended Complaint filed in *Modou Secka, as Personal Representative of the Estate of Alhagie Secka v. Jade Ce'Mone Smith, Alejandro Aviles, Marcos Termaine Bines, Big Level Trucking, Inc., Michael LeRoy Carter, Charles Bearden, GEME, LLC, and JNJ Express, Inc.,* Case No. 2025 CAA 440, pending in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida.

2. **"CLAIMS"** herein refers to: all claims for legal damages and equitable remedies sought by the "RELEASOR" against the "RELEASEES" (*as defined herein, below*) arising or inferable from the INCIDENT.

3. **"RELEASOR"** collectively herein refers to: Modou Secka, as Personal Representative of the Estate of Alhagie Secka, on behalf of the Estate and Survivors, Modou Secka, Mamfoday Bamba Secka, Sering Salieu Secka, Awamarie Secka, Mariam Secka, Sheakhuna Bamba Secka, Isatou Bamba Secka, Ndeyegnagna Secka, Muhammad Secka, as well as decedent's spouse, representatives, heirs, agents, attorneys, servants, firms, executors, administrators, survivors, and assignees (both current and former) of RELEASOR having any actual or potential claims by and though the Estate of Alhagie Secka for legal damages or equitable remedies against the "RELEASEES" that arises or that is inferable from the INCIDENT.

4. **"RELEASEES"** collectively herein refers to: Big Level Trucking, LLC and Michael LeRoy Carter, Cottingham & Butler Claims Services (CBCS) and Arch Insurance Group Inc., and their respective parent company(ies), subsidiaries, corporations, insurers, reinsurers, retrocessionaries, affiliates, heirs, agents, volunteers, board members, attorneys, servants, successors, principals, officers, members, managers, directors, shareholders, assigns, executors, administrators and all employees, contractors, firms, direct and indirect owners, lenders and related limited liability companies, predecessors and successors in interest (both current and former).

5. **"PARTIES"** herein refers to: the RELEASOR and the RELEASEES, collectively, as defined above.

6. **"PARTY"** herein refers to: any member of the RELEASOR or the RELEASEES as defined above.

7. The plural shall include the singular and the singular shall include the plural, and the masculine, feminine, and neutral shall include each of the other genders.

# EXHIBIT "A"

### *Terms*

8. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka for and in consideration of the total sum of TWO HUNDRED TWENTY FIVE THOUSAND DOLLARS AND ZERO CENTS ($225,000.00), receipt of which is hereby acknowledged, does hereby remise, release, acquit, satisfy and forever discharge RELEASEES of and from any and all types of actions, of whatever name or nature, claims (*whether presently known or unknown*), causes of action, derivative causes of action, including bodily injury, property damage, wrongful death claims, third party claims, cross claims, counterclaims, extra-contractual claims, common law or statutory "bad faith" claims, unfair claims practices claims, demands, loss of service, subrogation claims, rights, indemnification claims, contribution claims, pain and suffering claims, Medicaid claims, Social Security claims, or any other disability claims, liens, suits, rights, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, lost wages, loss of business (*whether presently known or unknown*), judgments, executions, attorneys' fees, costs, punitive damages, and demands whatsoever, in law or in equity, expense and compensation whatsoever of every name and nature, known or unknown, which RELEASOR now has, and which RELEASOR hereinafter can, shall, could or may have, from the beginning of time to the present, upon or by reason of any manner, resulting from or arising out of or relating in any manner whatsoever to the INCIDENT. The Undersigned hereby acknowledges that the full extent of RELEASOR'S damages may not have manifested as of the date of this Release of All Claims and knowingly enters into same notwithstanding. The foregoing Release and discharge is intended by RELEASOR to be as broad in favor of RELEASEES as he can possibly create.

   RELEASOR agrees to dismiss, with prejudice, the lawsuit filed against RELEASEES in *Modou Secka, as Personal Representative of the Estate of Alhagie Secka v. Jade Ce'Mone Smith, Alejandro Aviles, Marcos Termaine Bines, Big Level Trucking, Inc., Michael LeRoy Carter, Charles Bearden, GEME, LLC, and JNJ Express, Inc.*, Case No. 2025 CAA 440, pending in the Circuit Court of the Second Judicial Circuit, in and for Gadsden County, Florida, immediately upon clearance of the settlement funds set forth above to RELEASOR.

9. The payment set forth in Paragraph 8 is to be produced to RELEASOR within twenty (20) days of RELEASEES' counsel's receipt of this Release executed by RELEASOR.

10. The payment set forth in Paragraph 8 shall be issued to Hinkle Law Trust Account, Tax ID # 04-3613005.

11. RELEASOR, on behalf of and as the Personal Representative of the Estate of Alhagie Secka, agrees that he is solely responsible for satisfying any lien, taxes, or other obligations relating to the settlement proceeds.

12. RELEASOR agrees that all liens and subrogated interests in the settlement proceeds, including,

Docusign Envelope ID: B86E1E99-68A2-4B9D-A0A9-C127D9F75DB2

but not limited to, liens held by medical providers and facilities, funeral/burial entities, health insurers, the Social Security Administration, Medicaid, Medicare, contractors for Medicaid and Medicare, the Centers for Medicare & Medicaid Services, have been satisfied or will be satisfied from the settlement proceeds by RELEASOR and his attorney.

In order to give full effect to the intent expressed in this Release, RELEASOR stipulates and agrees in consideration for the aforesaid payment, to fully indemnify and hold harmless RELEASEES from any and all loss associated with any conditional payment, lien, subrogation, expenses incurred by RELEASOR, including funeral/burial expenses, fire-rescue expenses, medical services, and property damage, or other claim or demand asserted by the Centers for Medicare & Medicaid Services and/or its contractors, other governmental entities or programs, medical providers, or other sources of payment or benefits that may arise in any manner, including without limitation under the Medicare Second Payer statute (42 U.S.C. § 1395y(b)), contract, or other applicable state or federal law relating to Medical Services or from RELEASOR'S failure to provide accurate representations and warranties or to adhere to the representations and warranties contained herein. This indemnification from loss includes all damages and costs incurred by RELEASEES and or their attorneys, including without limitation, any attorneys fees, fines and penalties, interest, expenses, judgments, and multipliers.

RELEASOR further stipulates and agrees that he is solely responsible for satisfying any conditional payment, lien or other obligation to reimburse the Centers for Medicare & Medicaid Services ("CMS") and/or its contractors, other governmental entities or programs, insurers or other sources of payment or benefits for any Medical Services furnished to RELEASOR. RELEASOR acknowledge and agree that it is their responsibility, and not that of RELEASEES, to satisfy any and all conditional payments, liens, subrogation and other claims or demands for payment associated with Medical Services that may arise in any manner, including without limitation under the Medicare Secondary Payer ("MSP") statute (42 U.S.C. § 1395y(b)), contract, or other applicable state or federal law. RELEASOR further stipulates and agrees that he will indemnify RELEASEES and hold them harmless from any such liens.

With respect to Medicare status (check relevant box):

| [X] | RELEASOR hereby represents and warrants that Alhagie Secka (a) was not entitled to Medicare benefits, (b) was not entitled to Medicare benefits on or between the date of the incident giving rise to the Lawsuit and execution of this Settlement Agreement and Release and (c) does not reasonably expect to qualify for Medicare coverage within 30 months of executing this Settlement Agreement and Release; or |

| [ ] | RELEASOR hereby represents and warrants that Alhagie Secka (a) qualified for Medicare coverage or (b) was entitled to Medicare benefits on |

Docusign Envelope ID: B86E1E99-68A2-4B9D-A0A9-C127D9F75DB2

>or between the date of the incident giving rise to the Lawsuit and execution of this Settlement Agreement and Release.
>
>In order to give full effect to the intent expressed in this Settlement Agreement and Release, RELEASOR stipulates and agrees in consideration for the aforesaid payment, to fully indemnify and hold harmless RELEASEES from any and all loss associated with any conditional payment, lien, subrogation or other claim or demand asserted by CMS and/or its contractors, other governmental entities or programs, Medicare, Humana, or other sources of payment or benefits that may arise in any manner, including without limitation under the MSP statute (42 U.S.C. § 1395y(b)), contract, or other applicable state or federal law relating to Medical Services or from RELEASOR'S failure to make the payments and satisfaction described in this Release. RELEASOR'S further agree to indemnify and hold harmless RELEASEES from any and all loss resulting from RELEASOR'S failure to provide accurate representations and warranties or to adhere to the representations and warranties contained herein. This indemnification from loss includes all damages and costs incurred by RELEASEES and/or their attorneys, including without limitation, any attorneys' fees, fines and penalties, interest, expenses, judgments, and multipliers.

13. It is expressly understood and agreed that this settlement is the compromise of a doubtful and disputed claim and that the payment made is NOT to be construed as an admission of liability on the part of the PARTY or PARTIES hereby released, and that RELEASEES deny liability therefore and intend merely to avoid litigation and buy peace.

14. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka, promise not to sue or proceed in any manner, whether at law, in equity, by way of administrative hearing, or otherwise, to solicit others to institute any such actions or proceedings, against RELEASEES because of, or arising out of, any event or transaction relating to or reasonably inferred from the CLAIMS and the INCIDENT.

15. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka, agrees that the terms of this Release shall remain confidential and that the RELEASOR is not permitted to disclose the terms of this Release in any means or media or to any person or entity except for the following: tax preparers, financial professionals, the Guardian Ad Litem, guardians and trustees of the minor survivors, and if required and/or ordered by a Court of competent jurisdiction in any proceeding.

16. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as

devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka and RELEASEES mutually agree that they will neither take nor encourage any action which reflects negatively on the other, or their business operations or management, including on social media including but not limited to Facebook, Instagram, Snapchat, TikTok, Tumblr, Reddit, Foursquare, Yelp, LinkedIn, Twitter, X, and/or other similar social networking sites or applications. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka agrees that he will not assert, claim or allege, through conversation, comment, reply or otherwise, to any person that RELEASEES, or any of their respective affiliates, insurers, related entities, or any past or present officer, director, partner, owner or employee, committed any wrongful or illegal acts. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka and RELEASEES mutually agree that the non-disparagement provision set forth in this section is a material term of this Agreement and that breach of this section constitutes a material breach of this Agreement. The Parties to this Agreement represent and acknowledge that no portion of the settlement amount in this Agreement represents consideration or payment for anything other than personal injuries within the meaning of Section 104 (a)(2) of the United States Tax Code; the sole consideration for this section is the reciprocal promises made herein.

17. RELEASOR warrants and attests that he is more than eighteen (18) years old and operates under no impairment that prevents him from understanding this Release of All Claims and executing this instrument. RELEASOR further warrants and attests that he has the authority to execute this Release of All Claims and to completely release the RELEASEES from any and all CLAIMS arising or inferable from the INCIDENT. The Undersigned has read this Release of All Claims completely and has conferred with counsel about its terms. The undersigned understands and voluntarily accept its terms.

18. It is further stipulated that each PARTY to this Release of All Claims will bear their respective attorneys' fees and costs incurred by reason of this litigation.

19. The Undersigned further declares and represents that no promise, inducement or agreement, that is not herein expressed, has been made to the Undersigned, and that this Release of All Claims contains the entire agreement between the PARTIES hereto, and that the items of this Release of All Claims are contractual and not a mere recital.

20. The terms of this Release are limited to resolve and release of CLAIMS which exist as to RELEASEE AND RELEASOR. The Parties recognize and acknowledge that the terms of this Release are not designed nor intended to resolve all pending claims, nor does payment received represent the full damages suffered in this case. Any and all claims which have been made, or

which may exist, as to any other person, corporation, partnership, or other legal entity shall not be compromised or extinguished by the terms of this Release.

21. The RELEASOR acknowledges the need, and accepts responsibility, to obtain the court's approval of this settlement and to seek the court's authority to execute a binding release, to dismiss the claims herein with finality, and to seek authority to execute such other documents as are necessary to consummate the terms of the settlement outlined herein. It is understood that the terms of this Release and settlement agreement must be authorized and approved by the court before the settlement described herein can be finalized.

22. RELEASOR, on behalf of and as Personal Representative of the Estate of Alhagie Secka, all of the survivors, devisees, legatees, beneficiaries, heirs, claimants, and successor personal representatives to the Estate of Alhagie Secka, whether or not specifically listed and/or named as devisees or beneficiaries of the Estate of Alhagie Secka, as well as all other persons having any actual or potential claims by and though the Estate of Alhagie Secka further stipulates and agrees that he had an adequate opportunity to review the terms of this Settlement Agreement and Release with legal counsel of his choice.

BY SIGNATURE, RELEASOR AFFIRMS THAT HE HAS READ THE FOREGOING RELEASE AND FULLY UNDERSTANDS IT.

**IN WITNESS WHEREOF**, I hereunto set my hand and seal this _____ day of December 5, 2025 , 2025.

Signed by:
*[signature]*

**MODOU SECKA, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ALHAGIE SECKA**