**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

IN RE:

**BIG LEVEL TRUCKING, INC.**                    **NO. 25-51204 KMS**

**MOTION FOR RELIEF FROM AUTOMATIC STAY,
IN THE ALTERNATIVE, ADEQUATE PROTECTION, FOR
ABANDONMENT AND FOR ALTERNATIVE RELIEF**

Comes now Midland States Bank, by and through its counsel of record, Byrd & Wiser, and files this its Motion for Relief from Automatic Stay, in the Alternative, Adequate Protection, for Abandonment and for Alternative Relief pursuant to Section 361, Section 362 and Section 554 of the Bankruptcy Code, and in support of same would show unto the Court the following, to-wit:

I

That the Debtor filed its Petition for Relief pursuant to Chapter 11 on August 18, 2025.

II

This Court has jurisdiction over the parties and the subject matter, pursuant to 28 USC Section 1334. The instant Motion is a core proceeding, pursuant to 28 USC Section 157(b)(2).

III

That Midland States Bank is the holder of a secured claim as to one 2024 International LT625 Sleeper Cab, VIN 3HSDZSZR7RN034369, with an outstanding balance of $145,024.35, exclusive of late charges, and reasonable attorney's fees, all as more fully set forth on Exhibit "A" which is attached hereto and incorporated herein by reference. (POC #21)

IV

Midland States Bank would show unto the Court that the Debtor is in default pursuant to the parties Loan and Security Agreement, and is presently due for the June 5, 2025, through January 5, 2026, installments of $3,067.33 each, for total arrearages of $24,538.64, exclusive of accumulating late charges, interest, costs and reasonable attorney's fees.

BYRD & WISER
ATTORNEYS AT LAW
145 MAIN STREET
P.O. BOX 1939
BILOXI, MISSISSIPPI 39533
TELEPHONE (228) 432-8123
FAX (228) 432-7029

V

That Midland States Bank is also the holder of a secured claim as to one 2024 International LT625, VIN 3HSDZAPR0RN479498, with an outstanding balance of $125,856.71, exclusive of late charges, and reasonable attorney's fees, all as more fully set forth on Exhibit "B" which is attached hereto and incorporated herein by reference. (POC #22)

VI

Midland States Bank would show unto the Court that the Debtor is in default pursuant to the parties Loan and Security Agreement, and is presently due for the May 28, 2025, through January 28, 2026, installments of $5,628.03 each, for total arrearages of $50,652.27, exclusive of accumulating late charges, interest, costs and reasonable attorney's fees.

VII

That Midland States Bank is also the holder of a secured claim as to one 2019 International LT625 Tractor, VIN 3HSDZAPRXKN278925, one 2019 International LT625 6X4 Sleeper Cab, VIN 3HSDZAPR4KN278919, and one 2019 International LT625 6X4 Sleeper Cab, VIN 3HSDZAPR8KN278924, with an outstanding balance of $37,602.44, exclusive of late charges, and reasonable attorney's fees, all as more fully set forth on Exhibit "C" which is attached hereto and incorporated herein by reference. (POC #20)

VIII

Midland States Bank would further show unto the Court that the Debtor is in default pursuant to the parties Loan and Security Agreement, and is presently due for the July 16, 2025, through January 16, 2026, installments of $4,118.29 each, for total arrearages of $28,828.03, exclusive of accumulating late charges, interest, costs and reasonable attorney's fees.

IX

Midland States Bank would furthermore show unto the court that the Debtor has failed to maintain insurance on the subject matter vehicles duly naming Midland States Bank as lien holder and loss payee as required by the parties' Loans and Security Agreements.

BYRD & WISER
ATTORNEYS AT LAW
145 MAIN STREET
P.O. BOX 1939
BILOXI, MISSISSIPPI 39533
TELEPHONE (228) 432-8123
FAX (228) 432-7029

X

Midland States Bank would further show unto the Court that the Debtor continues to utilize its collateral which continues to depreciate and Midland States Bank would furthermore show unto the Court that it is entitled to adequate protection in the form of the resumption of post-petition payments otherwise called for pursuant to the parties Loans and Security Agreements, failing which adequate cause exists for termination of the Automatic Stay as to the Movant, Midland States Bank, pursuant to the provisions of Section 362(d) of the Bankruptcy Code.

WHEREFORE, premises considered, Midland States Bank would pray that after notice and hearing this Court enter its Order terminating the Automatic Stay of Section 362 of the Bankruptcy Code as to the Movant and abandoning said property as property of the estate, or in the alternative, that the Debtor be required to furnish Midland States Bank with adequate protection, and Midland States Bank furthermore prays that it be awarded its reasonable attorney's fees necessitated by the filing of the instant motion and Midland States Bank prays for such other and further relief as is just and proper in the premises.

Respectfully submitted,

MIDLAND STATES BANK

BY:  BYRD & WISER

BY:  _____
   ROBERT ALAN BYRD, MSB#7651
   EMAIL: rab@byrdwiser.com

BYRD & WISER
ATTORNEYS AT LAW
145 MAIN STREET
P.O. BOX 1939
BILOXI, MISSISSIPPI 39533
TELEPHONE (228) 432-8123
FAX (228) 432-7029

## CERTIFICATE

I, ROBERT ALAN BYRD, Attorney for Midland States Bank, do hereby certify that I have this date transmitted via Electronic Case Filing, as it appears on this date in the court registered e-filers of CM/ECF and/or via U.S. Mail, postage prepaid, a true and correct copy of the above and foregoing Motion for Relief from Automatic Stay, in the Alternative, Adequate Protection, for Abandonment and for Alternative Relief to the following:

Craig M. Geno, Attorney for Debtor,  at **cmgeno@cmgenolaw.com**

Office of the U.S. Trustee, at **USTPRegion05.JA.ECF@usdoj.gov**

**WITH A COPY MAILED TO:**

Big Level Trucking, Inc., Debtor
PO Boxx 306
Wiggins, MS 39577

This the ____ day of February, 2026.

_____
ROBERT ALAN BYRD

BYRD & WISER
ATTORNEYS AT LAW
145 MAIN STREET
P.O. BOX 1939
BILOXI, MISSISSIPPI 39533
TELEPHONE (228) 432-8123
FAX (228) 432-7029

# U.S. Bankruptcy Court

## Southern District of Mississippi

Notice of Electronic Claims Filing

The following transaction was received from Byrd, Robert on 9/26/2025 at 4:20 PM CDT

File another claim

**Case Name:**      Big Level Trucking, Inc.

**Case Number:**      25-51204-KMS

**Creditor Name:**      Midland States Bank
PO Box 2149
Gig Harbor, WA 98335

**Claim Number:**      21    Claims Register

**Amount Claimed:** $145,024.35

**Amount Secured:** $100000.00

**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** doc03295920250926145910.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1059593727 [Date=9/26/2025] [FileNumber=20823669-
0] [9b2c0c506429b9faedaf9354dba01dd5394d8887e6310b8974b68d10b65fcc6550
20d83161b44a27c65f435af57a7af3e414d2343e5bc486f2f21a79cf013b85]]

**25-51204-KMS Notice will be electronically mailed to:**

Robert Alan Byrd on behalf of Creditor Keesler Federal Credit Union
rab@byrdwiser.com, wrs@byrdwiser.com;WandaRitaStanovich@gmail.com

Robert Alan Byrd on behalf of Creditor Midland States Bank
rab@byrdwiser.com, wrs@byrdwiser.com;WandaRitaStanovich@gmail.com

Craig M. Geno on behalf of Debtor In Possession Big Level Trucking, Inc.
cmgeno@cmgenolaw.com, kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com

Chad J. Hammons on behalf of Creditor Mitsubishi HC Capital America, Inc.
chammons@joneswalker.com, mgreen@joneswalker.com;chad-hammons-2384@ecf.pacerpro.com

James Haney on behalf of Creditor Crossroads Equipment Lease and Finance
jhaney@wongfleming.com, sfiorentino@wongfleming.com

Winston Lee on behalf of Creditor PNC Equipment Finance
wlee@burr.com, sberry@burr.com;cbankston@burr.com;cmccann@burr.com

Abigail M. Marbury on behalf of U.S. Trustee United States Trustee
abigail.m.marbury@usdoj.gov

Erin McManus on behalf of Creditor Trustmark Bank, successor in interest to Trustmark National Bank
emcmanus@watkinseager.com, scook@watkinseager.com

EXHIBIT "A"

Paul S. Murphy on behalf of Creditor Bank of Wiggins
paul.murphy@butlersnow.com, kitty.logan@butlersnow.com;ecf.notices@butlersnow.com

Eric T. Ray on behalf of Creditor Corporate Billing, a Division of SouthState Bank
etray@hklaw.com, brooke.freeman@wallerlaw.com

Sylvie Derdeyn Robinson on behalf of Creditor MISSISSIPPI DEPARTMENT OF REVENUE
bankruptcy.attorney@dor.ms.gov

John S. Simpson on behalf of Creditor H&P Leasing, Inc.
jsimpson@simpsonlawfirm.net, rboone@simpsonlawfirm.net

Alan Lee Smith on behalf of Creditor Banc of America Leasing & Capital, LLC
asmith@bakerdonelson.com

Alan Lee Smith on behalf of Creditor Navistar Leasing Company
asmith@bakerdonelson.com

Jim F. Spencer, Jr. on behalf of Creditor Trustmark Bank, successor in interest to Trustmark National Bank
jspencer@watkinseager.com, mryan@watkinseager.com

Christopher J. Steiskal, Sr. on behalf of Debtor In Possession Big Level Trucking, Inc.
csteiskal@cmgenolaw.com, kcarter@cmgenolaw.com;csteiskal@ecf.courtdrive.com

Joe Stevens on behalf of Creditor Renasant Bank
jds@wisecarter.com

United States Trustee
USTPRegion05.JA.ECF@usdoj.gov

Andrew R. Wilson on behalf of Creditor M&T Equipment Finance Corporation
awilson@blswlaw.com, blsw@ecf.courtdrive.com

**25-51204-KMS Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1   BIG LEVEL TRUCKING, INC.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of Mississippi

Case number   25-51204 KMS

Official Form 410

# Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

MIDLAND STATES BANK
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

MIDLAND STATES BANK
Name

PO BOX 2149
Number    Street

GIG HARBOR          WA          98335
City                State        ZIP Code

Contact phone   (253) 358-4086

Contact email   jmitchell@orionfirst.com

Where should payments to the creditor be sent? (if different)

Name

Number    Street

City                State        ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
            MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

Official Form 410                              **Proof of Claim**                              page 1

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

---

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   1   2   8   9

---

**7. How much is the claim?**    $_____ 145,024.35   **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

MONEY LOANED

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☑ Motor vehicle

☐ Other. Describe:   2024 INTERNATIONAL LT625 SLEEPER CAB

**Basis for perfection:**   SEE ATTACHED

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____ 100,000.00

**Amount of the claim that is secured:**   $_____ 100,000.00

**Amount of the claim that is unsecured:**   $_____ 45,024.35 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) _8.17_ %

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**   $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | | |
|---|---|---|---|
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No | |
| | | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/26/2025
                   MM / DD / YYYY

/S/ROBERT ALAN BYRD
Signature

Print the name of the person who is completing and signing this claim:

| Name | ROBERT ALAN BYRD | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR MIDLAND STATES BANK | | |
| Company | BYRD & WISER | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | PO DRAWER 1939 | | |
| | Number        Street | | |
| | BILOXI | MS | 39533 |
| | City | State | ZIP Code |
| Contact phone | 228-432-8123 | Email | rab@byrdwiser.com |

## LOAN AND SECURITY AGREEMENT

Loan Agreement No.   826-202728-007
Dated:                       April 1, 2024


Midland
Equipment Finance
A division of Midland States Bank

| LENDER AND SECURED PARTY:  Midland States Bank | BORROWER AND DEBTOR:  Big Level Trucking Inc. |
|---|---|
| 1801 Park 270 Drive, Suite 200<br>St. Louis, MO 63146<br>Phone: 800.648.6517 | 1727 Dummy Line Road<br>Wiggins, MS 39577<br>**Type and State of Organization:** C Corp, MS<br>**Federal Tax ID:** 808025234 |

### LOAN TERMS

| PRINCIPAL SUM:<br>$163,850.00 | EQUIPMENT DESCRIPTION:<br>One (1) New 2024 International LT625<br>Sleeper Cab VIN: 3HSDZSZR7RN034369 | COLLATERAL (EQUIPMENT) LOCATION:<br>1727 Dummy Line Road Wiggins, MS 39577 | |
|---|---|---|---|
| LOAN PAYMENT AMOUNT: 47 @<br>$3,067.33<br>1 @ $56,550.00<br><br>Payments to be made in Arrears | LOAN TERM (in months): 48<br><br>Funding Date: 04/05/2024<br>Commencement Date:<br>04/05/2024 | INTEREST RATE:<br>8.17% | ADVANCE PAYMENT(S):<br>FOR PAYMENT(S): |

This **LOAN AND SECURITY AGREEMENT** (the "**Loan Agreement**") by and between lender as "Lender" and "Secured Party" and borrower as "Borrower" and "Debtor" is entered into as of the above date. Borrower requested Lender make a loan to Debtor and Lender agrees to make such a loan (the "**Loan**") subject to this Loan Agreement and all other documents evidencing and securing this Loan (the "**Loan Documents**"). The words "you" and "your" mean you as Borrower and Debtor and the words "we", "us" and "our" means us as Lender and Secured Party. This Loan Agreement is not effective until executed by an authorized representative of Lender. For valuable consideration, the receipt and sufficiency of which is acknowledged, we as Lender and Secured Party, and you as Borrower and Debtor, agree as follows:

1.  **LOAN AGREEMENT DEFINITIONS.**
    a.  "**Collateral**" means the Equipment, Software and all general intangibles relating to or arising therefrom, all products thereof and all cash and non-cash proceeds (including insurance proceeds) related thereto.
    b.  "**Equipment**" means and includes the personal property and equipment in the Equipment Description above or any schedule attached hereto, all software and/or software licenses acquired in an integrated transaction with the Equipment or acquired principally for use in or otherwise with the Equipment, together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto, wherever located and whether now owned or hereinafter acquired, and all proceeds of the foregoing, including, any insurance recoveries.
    c.  "**Guarantor**" means any guarantor that executes the below Personal Guaranty or any other guaranty guaranteeing this Loan or any Obligation(s) of Debtor.
    d.  "**Obligations**" means (I) this Loan and all your obligations to us under this Loan Agreement; and (ii) all other indebtedness and obligations of you as Debtor to us, of any kind or nature under any lease, loan or similar financing agreement, whether now existing or hereafter arising.

2.  **TERMS OF LOAN.**
    a.  **Loan Payments.** You as Borrower unconditionally promise to pay to the order of us as Lender the Principal Sum, together with interest at the Interest Rate thereon, in consecutive payments, each in the Loan Payment Amount (each a "Loan Payment") for the entire Loan Term. The above stated Commencement Date for this Loan is the date funds are disbursed under this Loan Agreement. You authorize us to insert or correct the applicable Commencement Date or Funding Date above. The first Loan Payment shall be due on the Commencement Date, if it is stated above that the payments are "made in advance", or if it is stated above that the payments are "made in arrears", then the first Loan Payment shall be due on the date that is one month after the Commencement Date. All subsequent payments are due on the same day of each month thereafter, whether an invoice is rendered, until all amounts due under this Loan Agreement are paid in full and all your obligations are satisfied. All Loan Payment Amount(s) include principal and interest, shall be made in immediately available, good and valid funds, in United States lawful currency, at our address stated above, or such other address designated to you in writing. Interest shall be computed at the above stated Interest Rate on a per annum basis (360-day year consisting of twelve 30-day months) and shall accrue on the unpaid Principal Sum beginning on the Funding Date. Upon execution of this Loan Agreement, you will provide to us any Advance Payment(s)(non-refundable) as stated above and we may also charge you costs incurred in the origination of this Loan. If this Agreement is executed by more than one Debtor, the obligations of all Debtors shall be joint and several.
    b.  **Application of Payments; Late Fees; Usury.** All Loan Payment Amounts received by us shall be applied: (i) to each Loan Payment(s) then due and outstanding, in order of the most delinquent Loan Payment, and for each such Loan Payment, first to the accrued but unpaid interest, and then, to the Principal Sum thereof; next (ii) to any late fees owed for any due but unpaid Loan Payment(s); next (iii) to any other costs owed Lender; and finally (iv) any remaining balance shall be applied to future Loan Payment(s) in the order due. We may adjust the amount of your final Loan Payment based on a recalculation of the remaining Loan balance to properly reflect the Principal Sum, Interest Rate and resulting yield intended and stated for this Loan. Time is of the essence. We may charge a late fee, not to exceed the greater of either $50.00 or ten percent (10%), of any Loan Payment or other amount not paid within ten (10) days of when due and a fee of $36.00 for each check or draft request returned for insufficient funds or other similar reason(s). Any late charges or other fee(s) hereunder shall not exceed the maximum amount permitted under applicable law, and if any amount (including any interest, late fees, prepayment fees, or other fees) are determined by a court, regulatory agency or other similar authority to be usurious, then such amounts will be reduced to the maximum amount permitted by law. Any excess amounts paid deemed usurious will be applied to your Obligations until fully satisfied and any remaining excess amount(s) refunded.
    c.  **Prepayment.** You shall be privileged to prepay the unpaid balance of this Loan before maturity in whole by paying us the unpaid Principal Sum, any accrued but unpaid interest, late charges, and any unamortized expenses incurred by us for the origination of this Loan, as of the prepayment date, plus a prepayment fee equal to 5% of the prepaid Principal Sum if prepayment occurs during months 1 – 12, 4% during months 13 – 24, 3% during months 25 – 36 and 2% during months 37 – 48. You recognize prepayment of the unpaid Principal Sum of this Loan will result in us incurring losses, including investment loss, additional expenses, and an inability to satisfy commitments. You agree it is difficult and impractical to ascertain the exact damage amounts and the above prepayment calculation represents a reasonable estimate of liquidated damages (not a penalty), we could incur.
    d.  **Default and Remedies.** In an Event of Default by you under this Loan Agreement, we may exercise any remedies hereunder, at law, or in equity. No failure or delay of us to exercise any right or remedy constitutes a waiver and any partial exercise of a remedy shall not preclude future exercise of any right or remedy. Our books and records as Lender shall be conclusive evidence for purposes of the Loan. You waive presentment, demand, protest, notice of dishonor, notice of protest and further notice of nonpayment of any kind.

3.  **TITLE; SECURITY INTEREST.** To secure the Obligations, you as Debtor grant us a continuing lien on, and a valid, perfected and enforceable first priority security interest in, all of your right, title and interest in and to the Collateral pursuant to the Uniform Commercial Code in the state of Illinois (the "UCC"). You authorize us to file any UCC financing statements, amendments, certificates of title or other documents we deem necessary to perfect and protect our security interest and you are responsible for all

costs related thereto. You represent and warrant you are the sole owner of the Collateral and hold good title, free of any liens, encumbrances or interests of any kind except for our security interest. You agree not to sell, transfer, or dispose of the Collateral or any interest therein or allow the Collateral to become subject to any liens, encumbrances or interests of any kind and you shall be responsible for all costs related thereto. You shall deliver to us any documents requested, in a form acceptable to us, to perfect and maintain our first priority security interest in, and related lien on, the Collateral.

4. **COLLATERAL; TAXES.** You will keep the Collateral at the Collateral (Equipment) Location, within the continental United States, and will not remove the Collateral without our prior written consent; except for temporary removal, which may occur in the ordinary course of Debtor's business (such as transport to a job site, motor vehicles, cargo transport, etc.). We may enter your premises during normal business hours to confirm the existence of, and inspect, the Collateral and your business records. At your expense, you will keep the Collateral in good operating order as designed, with manufacturer's recommendations and in compliance with all applicable laws, regulations and insurance requirements. You will furnish any required parts and labor and not make any alterations or additions to the Collateral without our prior written consent. Any additions, modifications, attachments, substitutions or replacements are part of the Collateral. The Collateral will be used solely for business purposes and not for personal or household purposes and will remain, personal property and not a fixture to real estate. If the Collateral is a motor vehicle, you will register and obtain a certificate of title showing you as the owner and us as lienholder in all applicable jurisdictions. You shall not alter any such Collateral registration(s) without our prior written consent. You are liable for, shall pay when due (or reimburse us), and file all tax filings for, all taxes (including sales, use and property taxes), license and registration fees, assessments, penalties, and other charges relating to this Loan Agreement and the Collateral.

5. **RISK OF LOSS; CASUALTY LOSSES.** You bear all risk of loss or damage, theft, loss or destruction to the Collateral, from and after the date the Collateral is delivered to you. You will immediately notify us in writing if any casualty event occurs causing damage, loss, or theft to the Collateral (a "Collateral Loss") and no Collateral Loss relieves you of your Obligations. In the event of a Collateral Loss, you shall either, at our option: (a) place such Collateral in good repair, condition, and working order; (b) replace such Collateral with like kind Collateral, that in our sole opinion, is good repair, condition, and working order, free of all liens and encumbrances; provided, you will obtain our prior written consent for such Collateral replacement and cooperate to provide all documents and requirements we deem necessary; or (c) you will pay to us the outstanding Principal Sum of the Loan, together with all accrued but unpaid interest and all outstanding costs due and unpaid hereunder.

6. **INSURANCE.** You agree to keep the Collateral fully insured until all Obligations are fully satisfied, including: (a) general property damage insurance covering the Collateral for its full replacement value, which such amount shall be equal or greater than the amount of this Loan, with us and our successors and assigns named as loss payee; (b) general liability insurance or other similar form of third party liability coverage in an amount determined by us; and (c) any other insurance we may require. All such insurance shall be in amounts, and with insurers, reasonably acceptable to us and we will be provided thirty (30) days prior written notice of any material policy alteration or cancellation. You will provide certificate(s) of insurance or other sufficient evidence as we reasonably request, or we may, but are not obligated to, obtain insurance to protect our interests in the Collateral, at your expense. This insurance may, but is not required to, protect your interests and the cost of this insurance may be more than your own insurance. In addition to the insurance premiums, we may charge interest and/or administrative related fee(s), with such costs added to your obligations hereunder. Nothing hereunder shall create any type of insurance relationship between us and you. You appoint us as your attorney-in-fact, providing us a limited power of attorney to make claims for, receive payment of, and endorse all documents, checks or other drafts for loss, theft, or damage to the Collateral under insurance and you will cooperate with us and/or insurance agents for the procurement of insurance and processing of claims.

7. **INDEMNIFICATION.** You as Debtor agree to indemnify, hold harmless and, upon request, defend us as Lender and Secured Party, and our directors, officers, agents and affiliates, against all claims, directly or indirectly arising out of, or connected with, the Collateral or this Loan Agreement. "Claims" means all losses, liabilities, damages, penalties, expenses, claims or actions, arising out of or relating to your ownership, possession, operation (regardless of where, how, or by whom the Collateral is operated), control, use, condition (including latent and other defects, whether or not discoverable), maintenance, and delivery of the Collateral, or if you are in default, arising out of the condition of the Collateral sold or disposed of after your use. These indemnities and obligations survive and continue in full force and effect notwithstanding termination of this Loan Agreement. You shall pay our reasonable expenses relating to this Loan Agreement or the enforcement thereof.

8. **ASSIGNMENT.** You may not assign or transfer this Loan Agreement and you may not sell, lease, or pledge the Collateral or any interest therein to anyone under any circumstances. We, as Lender and Secured Party, may sell, assign, grant a security interest in or otherwise transfer any of our interests in this Loan Agreement or the Collateral without notice to, or consent by, you. The assignee will have all rights we assign to them, but none of our obligations, which shall be retained by us. The rights of the assignee will not be subject to any claims, defenses or set-offs you have against us. Upon any such assignment by us, you agree to acknowledge the assignment and remaining Loan Obligations and comply with any directions by the assignee including as to payment and notices. This Loan Agreement shall inure to the benefit of, and is binding upon, the successors or permitted assigns of the parties hereto.

9. **EVENTS OF DEFAULT.** An event of default hereunder (each, an "Event of Default") by you shall exist if any of the following occur: (a) failure by you to pay any amount due hereunder within ten (10) days of when due; (b) the failure by you to perform any covenant or obligation hereunder within thirty (30) days of notice by us; (c) failure by you to perform any covenant or obligation under any Obligation with us as Secured Party or any lease, financing, or other indebtedness with any other lender; (d) you or any Guarantor files, or has filed, a petition for bankruptcy under any federal or state bankruptcy or similar law, becomes insolvent, or has a liquidator or receiver appointed with or without consent; (e) Debtor ceases doing business, is liquidated or dissolved, or if an individual, you or any Guarantor dies; (f) a material adverse change in Debtor's or any Guarantor's financial condition, business, assets has occurred, in our sole discretion, or we as Secured Party deem this Loan or the Collateral insecure for any reason; (g) for this Loan Agreement or any Obligation, a material breach occurs by you, or any representation or warranty you make to us is false, misleading or inaccurate; (h) any judgment against Debtor in excess of $25,000 exists; (i) any lien or encumbrance against, or the making of any levy, seizure or attachment on, the Collateral; (j) the failure of the Secured Party to have a perfected first priority security interest in the Collateral; or (k) if a legal entity, you or any Guarantor have: (i) a change in control resulting in fifty percent (50%) or more of your or the Guarantor's ownership or interests changing; (ii) a merger or consolidation with any other legal entity, or (iii) a sale of all or substantially all of your or any Guarantor's assets or business.

10. **REMEDIES.** Upon any Event of Default or thereafter, we may exercise any remedies hereunder, under other agreements, in law or equity, or as a Secured Party under the UCC, and such remedies are not exclusive, and may be exercised separately or concurrently, including, but not limited to: (a) cancellation or termination of this Loan Agreement; (b) acceleration of this Loan and each Obligation(s) to be immediately due and payable by you paying the outstanding Principal Sum of the Loan, together with all accrued but unpaid interest thereon and all outstanding fees and expenses due and unpaid; (c) without notice to, or consent by you, and with or without legal process, we may enter your premises and take possession of the Collateral; (d) require you return the Collateral to us, to our designated location, at your expense; (e) in addition to all other amounts due hereunder, we may charge you costs of enforcement (including attorneys' fees) and interest on all monies due from the Event of Default date, at a default rate equal to the stated Interest Rate above plus 3% (or the maximum rate permitted by law); or (f) we may sell or dispose of the Collateral in compliance with the UCC and other applicable laws. Any such sale proceeds shall be applied to your Obligations and any excess proceeds paid to you. No delay or omission by us to exercise any right or remedy impairs or waives such right or remedy. We may release any obligor, guarantor, or Collateral for the Loan, in whole or in part, without notice to or consent by you, and it does not relieve any of your Obligations. We may, but are not required to, perform certain of your obligations, such as paying taxes, insurance or for maintenance for the Collateral; provided, you are obligated to promptly reimburse us, and no obligation hereunder is relieved. No waiver by us of any default operates as a waiver of any other present or future default.

11. **DEBTOR REPRESENTATIONS, WARRANTIES, AND COVENANTS.** As of the date hereof and during the Loan Term, you represent, warrant and covenant to us that: (a) this Loan Agreement constitutes a legal, valid, and binding obligation, enforceable against you in accordance with its terms; (b) you are able to perform all of your obligations hereunder, including the grant of the security interest; (c) you are not in violation of any law, contract or organizational documents by entering into and performing your obligations hereunder; (d) all financial or other statements you have made are true and correct and you are not insolvent; and (e) no consent, approval or giving of notice to any party is required to perform your Obligations; (f) any person signing this Loan Agreement is duly authorized; (g) if a legal entity, your legal entity is as stated above and is duly organized, validly existing and in good standing under the laws of the state above and is duly qualified, in good standing, and authorized to do business where the Collateral is located; (h) your legal name is as stated above, and if an individual, such name is as stated on your valid and unexpired state driver's license, or alternative identification issued by your primary state of residence, and if a legal entity, such legal name is as stated on your organizational documents; (i) you will provide at least thirty (30) days prior written notice if you change your name, legal entity or principal place of business; (j) you authorize us to obtain and use credit bureau reports and other similar

inquiries we deem necessary, whether obtained directly by us or indirectly through other lenders or vendors assisting with your financing and purchase of Collateral; (k) you will provide any further credit, financial or business information we require, including current interim or annual financial statements; (l) you irrevocably authorize and direct us to disburse the Loan proceeds; (m) you are, and will remain, in full compliance with all applicable laws, including that: (i) no person who owns a controlling interest in or otherwise controls you or any Guarantor is, or shall be, (A) listed on the "Specially Designated Nationals and Blocked Person List" maintained by the Office of Foreign Assets Control ("OFAC"), Department of Treasury or any similar lists maintained by agencies under statute, regulation, order or other authority, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), or any related authority; and (ii) all applicable Bank Secrecy Act laws for the prevention and detection of money laundering violations.

12.  MISCELLANEOUS.

a.  **Entire Agreement; Amendments; Counterparts; Chattel Paper; Enforceability.** This Loan Agreement constitutes the entire agreement for the subject matter hereunder and supersedes all prior oral and written agreements. No modification or amendment of this Loan Agreement shall be binding unless executed in writing by both parties. This Loan Agreement may be executed in one or more counterparts. Unless this Loan Agreement is executed using an electronic signature platform and chattel paper is held in an electronic format, only  the counterpart bearing our "wet ink" signature, stamp, or otherwise denoted  by us as the original, together with Borrower's copy or counterpart (or copies or counterparts if there is more than one Borrower) will constitute the sole chattel paper original and no security interest in this Loan Agreement may be created through the transfer, possession, or control of any copy or counterpart other than the sole chattel paper original. If any term hereunder is determined by a court, agency or other party with authority to be invalid or unenforceable, such finding shall not affect any remaining terms of this Loan Agreement.

b.  **Notices; Electronic Documents.** All notices hereunder must be sent by certified mail or recognized overnight delivery service, postage prepaid, return receipt requested to you at the address stated above or an alternative address provided in writing. This Loan Agreement, any signature page or counterpart thereto, signed and transmitted by facsimile machine, telecopier or other electronic means (including via transmittal of a "pdf" file) shall be deemed an original document that is valid, binding and enforceable. The signature of any person thereto shall be considered an original signature and the document transmitted has the same binding effect as an original signature on an original document. At our request, any facsimile, telecopy or other electronic document shall be provided with a "wet ink" signature and/or manually transmitted in original form by the person(s) who executed the facsimile, telecopy or other electronic document. The parties hereby consent to using such electronic signature(s) and/or electronic transmission of document(s) and intend to be legally bound thereby. No party may raise use of a facsimile, telecopier or other electronic means of delivery, or the fact any signature is electronic, as a defense to enforcement of this Loan Agreement.

c.  **Further Assurances; USA Patriot Act.** You hereby authorize us, without notice and in addition to our other rights under this Loan Agreement, to insert or correct missing or incorrect information on this Loan Agreement, including but not limited to any blank or incorrect dates, your proper legal name, business title, serial numbers and any other information describing the Collateral. You will promptly execute and deliver any further documents and take further action as we may request to fulfill the purpose of this Loan Agreement. We hereby provide notice that pursuant to the USA PATRIOT Act (Title III of Pub. L. 107-56, October, 26 2001), we are required to obtain, verify and record information identifying you and any guarantor(s), including names, addresses and information to comply with this law. You and any Guarantor(s) agree to promptly provide documentation complying with obligations under anti-money laundering laws, "know your customer" requirements and the Act.

d.  **Governing Law; Jurisdiction/Venue; Jury Trial Waiver.** This Loan Agreement shall be subject to, and governed by, the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each party consents hereto to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes arising under this Loan Agreement and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. EACH PARTY HERETO IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, CONSEQUENTIAL, PUNITIVE OR INDIRECT DAMAGES ARISING OUT OF THIS LOAN AGREEMENT.

| LENDER AND SECURED PARTY | Midland States Bank | BORROWER AND DEBTOR | Big Level Trucking Inc. |
|---|---|---|---|
| | Print Name: Maggie Nunn | | Print Name: Steven Evans |
| | Titles:     Senior Funding QC Specialist | | Titles: President |
| | Authorized Signature: X  *(signature)* | | Authorized Signature: X  *(signature)* |

**PERSONAL GUARANTY:** Each undersigned guarantor (each a 'Guarantor'), jointly and severally, unconditionally and irrevocably, guarantees the full and prompt payment and performance of Debtor's obligations for the above Loan Agreement and amendments (the 'Loan Agreement'), to which this Guaranty is attached, and any other now existing, or hereafter arising, obligation or indebtedness of Debtor to Lender, its successors, assignees and affiliates (each, an 'Obligation'). This Guaranty is a legal, valid and binding obligation, enforceable in accordance with its terms, and remains in full force and effect until all Obligations are fully satisfied. No obligation of Guarantor can be assigned or delegated, and this Guaranty may only be modified in writing by both parties. This Guaranty is of payment and performance and may be enforced directly against Guarantor without proceeding against Debtor, guarantors or other parties and without Lender pursuing any other remedy. Guarantor waives any right to require Lender to make presentment or demand for performance, or give any notice of nonperformance, protest, or dishonor. Without notice to, or consent by, Guarantor, Lender may for any Obligation, in its sole discretion, release obligors, guarantors or debtors, modify terms, sell or release collateral, or exercise any right or remedy. Guarantor shall have no right of subrogation, reimbursement, contribution or indemnity with Debtor or any guarantor for any Obligation. EACH GUARANTOR WAIVES ALL DEFENSES TO THIS GUARANTY. This Guaranty shall be governed by the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each Guarantor consents to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes arising hereunder and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. EACH GUARANTOR IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OBLIGATION. The terms in 12(b) and (c) of the Loan Agreement as relating to notices, electronic documents, further assurances and the USA Patriot Act shall apply to this Guaranty and Guarantor. Guarantor shall be liable for all costs incurred by Lender in enforcing this Guaranty and this Guaranty is binding upon each Guarantor, its heirs and representatives, in favor of Lender, its assignees and affiliates

| GUARANTOR | Name: Steven Evans |
|---|---|
| | Print Name: Steven Evans |
| | Authorized Signature: X  *(signature)* |

| GUARANTOR | Name: Charles Guy Evans JR |
|---|---|
| | Print Name: Charles Guy Evans JR |
| | Authorized Signature: X  *(signature)* |

**PAY PROCEEDS DISBURSEMENT AUTHORIZATION**



| Agreement Type: | Loan |
| Agreement No. | 826-202728-007 |
| Agreement Dated: | April 1, 2024 |

| CREDITOR:  Midland States Bank | OBLIGOR:  Big Level Trucking Inc. |
|---|---|
| 1801 Park 270 Drive, Suite 200 | 1727 Dummy Line Road |
| St. Louis, MO 63146 | Wiggins, MS 39577 |
| Phone: 800.648.6517 | Phone: 6019283770 |

This Pay Proceeds Disbursement Authorization is dated and made effective as of even date with the above-referenced Agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor) and Obligor (as debtor, lessee or obligor), of which this Pay Proceeds Disbursement Authorization is made a part of, and incorporated into, such Contract.

Obligor hereby irrevocably authorizes and directs Creditor to disburse, on behalf of Obligor, for Obligor's benefit, the following amounts and/or proceeds below (excluding any down payment amount(s) paid by Obligor to Creditor that are not disbursed to any Payee), pursuant to the Contract, for the Equipment, Collateral or related services or requirements, to the following payee(s) below.  Obligor shall indemnify, defend and hold harmless Creditor from and against any and all losses, costs, expenses, claims, damages, or liabilities, relating to or arising from Creditor's disbursement(s) and actions related thereto hereunder.  Each such disbursement hereunder is made in accordance with, and subject to, the terms and conditions of the Contract.

| Payee | Total Amount(s) Disbursed to Payee |
|---|---|
| Waters International Trucks, Inc. dba Waters Truck and Tractor Upon Delivery and Acceptance | $163,350.00 |
| Origination Fee - Midland States Bank | $500.00 |
|  |  |
|  |  |

Obligor hereby causes this Pay Proceeds Disbursement Authorization to be duly executed below by its authorized representatives.

Agreed to and accepted by Obligor:

| By: | Steven Evans |
| Its: | President |
| Signature: | |

**TITLED EQUIPMENT AGREEMENT AND ACKNOWLEDGMENT — CUSTOMER**

**Midland**
Equipment Finance
A Division of Midland States Bank

Agreement No.      826-202728-007
Dated:             April 1, 2024

**Name and Address of Customer:**
Big Level Trucking Inc.
1727 Dummy Line Road
Wiggins, MS 39577

**Equipment Description:**      One (1) New 2024 International LT625 Sleeper Cab VIN: 3HSDZSZR7RN034369

The Equipment must be titled if your state or jurisdiction requires titling, as follows:

**Lienholder Name and Address:**                          **Owner Name and Address:**
Midland States Bank                                      Big Level Trucking Inc.
1801 Park 270 Drive, Suite 200                           1727 Dummy Line Road
St. Louis, MO 63146                                      Wiggins, MS 39577

**PLEASE NOTE:** The legal name of the Customer must be used on all title applications or documentation submitted to the State for titling purposes.

If there are multiple customer(s) as co-borrowers for the Equipment, then any certificate(s) of title must include at least one of the customer's name(s), which shall name such customer/co-borrower as Owner.

**Party Responsible to submit title work to state (check the box next to the applicable option):**

☐   Customer                    ☐   Titling Agency

☑   Dealer or Vendor            ☐   Equipment does not require titling at time of commencement (MSO must be forwarded to Lessor)

**Contact Information for Titling Party:**

Name: _VAUGHAN WATERS_

Street Address: _80 SLK DR._

City: _Hattiesburg_  State: _MS_  Zip Code: _39402_

Direct Phone Number: _601-544-7401_  Fax Number: _601-544-7478_

E-mail Address: _vwaters @ waterstruck. com_

**PLEASE NOTE:** If you are in one of the Electronic Titling States identified on the attached Exhibit A you are required to supply the appropriate ELT identifier to your registration office.

If your state or jurisdiction requires titling or registration of the equipment described above at any time during the term of the agreement by signing below, Customer hereby represents, warrants, agrees and unconditionally guarantees that Customer (1) has the absolute and unconditional right, title, and interest to transfer ownership and any lienholder interest in the above described Equipment; (2) shall title the Equipment as set forth in this agreement; (3) is responsible for ensuring the Titling Party designated above will apply for title(s) immediately upon disbursement of funds by Midland States Bank for the above stated Contract and related Equipment, even if Customer is not directly submitting title work to the state; (4) has confirmed that the current party holding the original title(s) or Certificate(s) of Origin for the titled equipment referenced above will deliver such documents to the designated Titling Party within ten business (10) days of the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; (5) shall ensure Titling Party agrees to send a copy of the processed title application receipt as endorsed by the applicable State to the address set forth below within thirty (30) business days after the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; and (6) hereby agrees to indemnify, defend, and hold Midland States Bank harmless for any claims, losses, liabilities, costs, or expenses arising between the date of disbursement of funds by Midland States Bank for the above stated Contract and any related Equipment, and the date of full satisfaction of all obligations and agreements of Customer hereunder, which occur as a result of: (i) Customer's breach of, or delay or failure relating to, any representation, warranty, covenant, or agreement in the Contract or in this agreement; or (ii) the creation or imposition of any intervening rights, interests, or liens with respect to the Equipment, including but not limited to, any liens by third parties or other creditors, mechanics liens, storage liens, or other similar liens.

**In addition to any rights and remedies contained in the Contract, failure to satisfy the titling and registration requirements within 90 days of disbursement of funds by Midland States Bank for stated Contract and related Equipment will result in a Title Delinquency Fee in the amount of $500.00 per month plus any other direct costs incurred by Midland States Bank to be billed and due monthly until satisfactory completion of titling or registration of the Equipment.**

Midland States Bank
Attn: Funding Department
1801 Park 270 Drive, Suite 200, St. Louis, MO 63146

Customer: Big Level Trucking Inc.

By: _____          Steven Evans, President

TitleGuarantyCustomer_082022

**POWER OF ATTORNEY (VEHICLES)**

| | AGENT | | GRANTOR | |
|---|---|---|---|---|
| **AGENT** | Wolters Kluwer Lien Solutions (as agent on behalf of Midland States Bank) | **GRANTOR** | Big Level Trucking Inc. | |
| | 187 Wolf Road, Suite 101 | | 1727 Dummy Line Road | |
| | Albany NY 12205 | | Wiggins, MS, 39577 | |
| | | | Phone: 6019283770 | |
| | Printed Name of Authorized Person for Agent / Attorney in Fact: | | Contact: Steven Evans | |
| | Signature of Authorized Person for Agent / Attorney in Fact: | | | |

Agreement No. 826-202728-007, dated April 1, 2024 by and between Midland States Bank and Big Level Trucking Inc. ("Obligor") (the "Agreement"). Vehicle Description(s) or VIN(s) (the "Vehicle(s)"):

3HSDZSZR7RN034369

The party identified in the box above as Grantor ("Grantor"), does hereby appoint Wolters Kluwer Lien Solutions (appointed as agent on behalf of Midland States Bank), or any officer, employee, contractor or designee of agent (herein "Agent"), as stated above, as its attorney-in-fact, with full power of substitution, and hereby authorizes and empowers Agent, in the name, place and stead of Grantor, to take the following actions and to do the following things from time to time with respect to the) Vehicle(s) described above or on any schedule attached hereto, as related to the specific Agreement(s) and Obligor(s) stated above , for the purpose of enabling Agent in the name of Grantor to do any and all of the following:

1. To take any and all actions and to do any and all things necessary or desirable in all matters pertaining to the titling or registration, sale or transfer of ownership or recording of a lien (including into the name of Agent), or applying for an original or duplicate certificate of title to the Vehicle(s), or any other similar forms or documents in the name and stead of Grantor in connection therewith;

2. To delegate said power of attorney to any person it deems appropriate, but only for the limited purposes set forth herein; and

3. To do and perform all acts necessary to carry into effect and exercise the rights and powers granted by this Power of Attorney as fully as Grantor might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Power of Attorney shall be effective from and after the date hereof, is coupled with an interest and is irrevocable. **THIS POWER OF ATTORNEY CANNOT BE CANCELLED BY GRANTOR.** Any third party may at any and all times hereafter rely upon this document as the Agent's authority to continue to exercise the rights and powers herein granted.

Grantor executes this Power of Attorney as of the date set forth above, with the intent to be legally bound hereby.

**GRANTOR:** Big Level Trucking Inc.

By:

Name: Steven Evans

Title: President

State of MS

County of Forres

Subscribed and sworn to before me, a Notary Public in and for said County and State, by the foregoing individual who is personally known to me, or who proved to me on the basis of satisfactory evidence to be the person who appeared before me, who, being informed of the contents hereof, as a representative of Grantor and with full authority, executed the same voluntarily for and as the act of the Grantor.

Notary Public Signature

*[Notary seal: FORREST COUNTY, ID # 358621, Commission Expires July 4, 2027, R. COWART, NOTARY PUBLIC, STATE OF MISSISSIPPI]*

142
839910
111930
034369



## CERTIFICATE OF ORIGIN FOR A VEHICLE

A NAVISTAR COMPANY

DATE
DECEMBER 01, 2023

INVOICE NO.
N31201218

VEHICLE IDENTIFICATION NO.
3HSDZSZR7RN034369

YEAR
2024

MAKE
INTERNATIONAL

BODY TYPE
TRUCK/TRACTOR

SHIPPING WEIGHT
18188

H.P. (S.A.E.)

G.V.W.R.
53200

NO. CYLS.
6

SERIES OR MODEL
LT625 6x4

ENGINE NAME
INTL S13 450HP/2000 GOV

ENGINE NO.
127KM2Y6000574

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the Invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

WATERS INTERNATIONAL
P O BOX 4199
MERIDIAN, MS 39304

```
******************************
*    THIS VEHICLE HAS A      *
*  50-STATE EMISSION SYSTEM  *
******************************
```

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

NAVISTAR, INC.

BY: *Melanie Wilson*

(SIGNATURE OF AUTHORIZED REPRESENTATIVE)      (AGENT)

1111 NORTHSHORE DR.
KNOXVILLE, TN 37919-3805

CITY-STATE

NAV 3190967

*3HSDZSZR7RN034369*

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than disclosed herein and warrant title to the vehicle.

**FOR VALUE RECEIVED I TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:**

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1**

NAME OF PURCHASER(S) Big Level Trucking, Inc.

ADDRESS 1727 Dunny Line Road   Wiggins MS 39577

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER Waters International Trucks, Inc. 614   By: MS Wata

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year _____

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2**

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____   By: _____

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year _____

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3**

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____   By: _____

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year _____

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4**

NAME OF PURCHASER(S) _____

ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths

DEALER _____   By: _____

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year _____

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**ODOMETER DISCLOSURE FOR RETAIL SALE**

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer Reading _____ No Tenths. ☐ The mileage stated is in excess of its mechanical limits. ☐ The odometer reading is not the actual mileage.

**WARNING ODOMETER DISCREPANCY**

Signature(s) of Seller(s) _____   Date of Statement _____ Date of sale _____

Printed Name(s) of Seller(s) _____   Dealer's No _____   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

Signature(s) of Purchaser(s) _____   _____ day of _____ Year _____

Printed Name(s) of Purchaser(s) _____   _____ Notary Public

Company Name (if Applicable) _____

Address of Purchaser(s) _____   State of _____

County of _____

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

**LIENHOLDER**

1st lien in favor of Midland States Bank

whose address is 1801 Park 270 Drive, Suite 200   St. Louis, MO 63146

2nd lien in favor of _____

whose address is _____

# U.S. Bankruptcy Court

## Southern District of Mississippi

Notice of Electronic Claims Filing

The following transaction was received from Byrd, Robert on 9/26/2025 at 4:22 PM CDT

File another claim

**Case Name:**           Big Level Trucking, Inc.
**Case Number:**         25-51204-KMS
                         Midland States Bank
**Creditor Name:**       PO Box 2149
                         Gig Harbor, WA 98335
**Claim Number:**        22    Claims Register
**Amount Claimed:** $125,856.71
**Amount Secured:** $100000.00
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** doc03296220250926150257.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1059593727 [Date=9/26/2025] [FileNumber=20823674-
0] [c32d1afab1dc002fe3d04a5a3334ff6ccb6cbc9370ac957692174289ed02c7a9b4
1456ecee422953b282b14a6da670130096ea48c6d98f58df23c5019a0793d6]]

**25-51204-KMS Notice will be electronically mailed to:**

Robert Alan Byrd on behalf of Creditor Keesler Federal Credit Union
rab@byrdwiser.com, wrs@byrdwiser.com;WandaRitaStanovich@gmail.com

Robert Alan Byrd on behalf of Creditor Midland States Bank
rab@byrdwiser.com, wrs@byrdwiser.com;WandaRitaStanovich@gmail.com

Craig M. Geno on behalf of Debtor In Possession Big Level Trucking, Inc.
cmgeno@cmgenolaw.com, kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com

Chad J. Hammons on behalf of Creditor Mitsubishi HC Capital America, Inc.
chammons@joneswalker.com, mgreen@joneswalker.com;chad-hammons-2384@ecf.pacerpro.com

James Haney on behalf of Creditor Crossroads Equipment Lease and Finance
jhaney@wongfleming.com, sfiorentino@wongfleming.com

Winston Lee on behalf of Creditor PNC Equipment Finance
wlee@burr.com, sberry@burr.com;cbankston@burr.com;cmccann@burr.com

Abigail M. Marbury on behalf of U.S. Trustee United States Trustee
abigail.m.marbury@usdoj.gov

Erin McManus on behalf of Creditor Trustmark Bank, successor in interest to Trustmark National Bank
emcmanus@watkinseager.com, scook@watkinseager.com

EXHIBIT

"B"

Paul S. Murphy on behalf of Creditor Bank of Wiggins
paul.murphy@butlersnow.com, kitty.logan@butlersnow.com;ecf.notices@butlersnow.com

Eric T. Ray on behalf of Creditor Corporate Billing, a Division of SouthState Bank
etray@hklaw.com, brooke.freeman@wallerlaw.com

Sylvie Derdeyn Robinson on behalf of Creditor MISSISSIPPI DEPARTMENT OF REVENUE
bankruptcy.attorney@dor.ms.gov

John S. Simpson on behalf of Creditor H&P Leasing, Inc.
jsimpson@simpsonlawfirm.net, rboone@simpsonlawfirm.net

Alan Lee Smith on behalf of Creditor Banc of America Leasing & Capital, LLC
asmith@bakerdonelson.com

Alan Lee Smith on behalf of Creditor Navistar Leasing Company
asmith@bakerdonelson.com

Jim F. Spencer, Jr. on behalf of Creditor Trustmark Bank, successor in interest to Trustmark National Bank
jspencer@watkinseager.com, mryan@watkinseager.com

Christopher J. Steiskal, Sr. on behalf of Debtor In Possession Big Level Trucking, Inc.
csteiskal@cmgenolaw.com, kcarter@cmgenolaw.com;csteiskal@ecf.courtdrive.com

Joe Stevens on behalf of Creditor Renasant Bank
jds@wisecarter.com

United States Trustee
USTPRegion05.JA.ECF@usdoj.gov

Andrew R. Wilson on behalf of Creditor M&T Equipment Finance Corporation
awilson@blswlaw.com, blsw@ecf.courtdrive.com

**25-51204-KMS Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1   BIG LEVEL TRUCKING, INC.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of Mississippi

Case number   25-51204 KMS

Official Form 410

# Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| 1. Who is the current creditor? | MIDLAND STATES BANK |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |
| 2. Has this claim been acquired from someone else? | ☑ No ☐ Yes. From whom? |
| 3. Where should notices and payments to the creditor be sent? Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** MIDLAND STATES BANK Name PO BOX 2149 Number       Street GIG HARBOR       WA       98335 City       State       ZIP Code Contact phone (253) 358-4086 Contact email jmitchell@orionfirst.com Uniform claim identifier (if you use one): |

**Where should payments to the creditor be sent?** (if different)

Name

Number       Street

City       State       ZIP Code

Contact phone

Contact email

| | |
| --- | --- |
| 4. Does this claim amend one already filed? | ☑ No ☐ Yes. Claim number on court claims registry (if known) _____       Filed on ___ / ___ / _____  MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No ☐ Yes. Who made the earlier filing? |

Official Form 410       Proof of Claim       page 1

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  _3_  _7_  _5_  _7_

---

**7. How much is the claim?**   $ _____ 125,856.71 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

MONEY LOANED _____

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☑ Motor vehicle

☐ Other. Describe:   2024 INTERNATIONAL LT625 _____

**Basis for perfection:**   SEE ATTACHED _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $ _____ 100,000.00

Amount of the claim that is secured:   $ _____ 100,000.00

Amount of the claim that is unsecured:  $ _____ 25,856.71  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ _____

Annual Interest Rate (when case was filed) _8.09_ %

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| | | |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No | |
| | ☐ Yes. *Check one:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   09/26/2025
                   MM / DD / YYYY

        /S/ROBERT ALAN BYRD
        Signature

Print the name of the person who is completing and signing this claim:

| Name | ROBERT ALAN BYRD | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | ATTORNEY FOR MIDLAND STATES BANK | | |
| Company | BYRD & WISER | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | PO DRAWER 1939 | | |
| | Number        Street | | |
| | BILOXI | MS | 39533 |
| | City | State | ZIP Code |
| Contact phone | 228-432-8123 | Email | rab@byrdwiser.com |

## LOAN AND SECURITY AGREEMENT



**Midland**
Equipment Finance
A division of Midland States Bank

| | |
|---|---|
| Loan Agreement No. | 826-202728-005 |
| Dated: | February 26, 2024 |

| LENDER AND SECURED PARTY: Midland States Bank | BORROWER AND DEBTOR:  Big Level Trucking Inc. |
|---|---|
| 1801 Park 270 Drive, Suite 200<br>St. Louis, MO 63146<br>Phone: 800.648.6517 | 1727 Dummy Line Road<br>Wiggins, MS 39577<br>**Type and State of Organization:** C Corp, MS<br>**Federal Tax ID:** 808025234 |

### LOAN TERMS

| PRINCIPAL SUM:<br>$320,100.00 | EQUIPMENT DESCRIPTION:<br>See the attached Exhibit A | COLLATERAL (EQUIPMENT) LOCATION:<br>See the attached Exhibit A | |
|---|---|---|---|
| LOAN PAYMENT AMOUNT: 72 @<br>$5,628.03<br><br>Payments to be made in Arrears | LOAN TERM (in months): 72<br><br>Funding Date: __02/28/2024__<br>Commencement Date:<br>__02/28/2024__ | INTEREST RATE:<br>8.1% | ADVANCE PAYMENT(S):<br>FOR PAYMENT(S): |

This LOAN AND SECURITY AGREEMENT (the "Loan Agreement") by and between lender as "Lender" and "Secured Party" and borrower as "Borrower" and "Debtor" is entered into as of the above date.  Borrower requested Lender make a loan to Debtor and Lender agrees to make such a loan (the "Loan") subject to this Loan Agreement and all other documents evidencing and securing this Loan (the "Loan Documents").  The words "you" and "your" mean you as Borrower and Debtor and the words "we", "us" and "our" means us as Lender and Secured Party.  This Loan Agreement is not effective until executed by an authorized representative of Lender.  For valuable consideration, the receipt and sufficiency of which is acknowledged, we as Lender and Secured Party, and you as Borrower and Debtor, agree as follows:

1. **LOAN AGREEMENT DEFINITIONS.**
   a. "**Collateral**" means the Equipment, Software and all general intangibles relating to or arising therefrom, all products thereof and all cash and non-cash proceeds (including insurance proceeds) related thereto.
   b. "**Equipment**" means and includes the personal property and equipment in the Equipment Description above or any schedule attached hereto, all software and/or software licenses acquired in an integrated transaction with the Equipment or acquired principally for use in or otherwise with the Equipment, together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto, wherever located and whether now owned or hereinafter acquired, and all proceeds of the foregoing, including, any insurance recoveries.
   c. "**Guarantor**" means any guarantor that executes the below Personal Guaranty or any other guaranty guaranteeing this Loan or any Obligation(s) of Debtor.
   d. "**Obligations**" means (i) this Loan and all your obligations to us under this Loan Agreement; and (ii) all other indebtedness and obligations of you as Debtor to us, of any kind or nature under any lease, loan or similar financing agreement, whether now existing or hereafter arising.

2. **TERMS OF LOAN.**
   a. **Loan Payments.**  You as Borrower unconditionally promise to pay to the order of us as Lender the Principal Sum, together with interest at the Interest Rate thereon, in consecutive payments, each in the Loan Payment Amount (each a "Loan Payment") for the entire Loan Term.  The above stated Commencement Date for this Loan is the date funds are disbursed under this Loan Agreement.  You authorize us to insert or correct the applicable Commencement Date or Funding Date above.  The first Loan Payment shall be due on the Commencement Date, if it is stated above that the payments are "made in advance", or if it is stated above that the payments are "made in arrears", then the first Loan Payment shall be due on the date that is one month after the Commencement Date.  All subsequent payments are due on the same day of each month thereafter, whether an invoice is rendered, until all amounts due under this Loan Agreement are paid in full and all your obligations are satisfied.  All Loan Payment(s) include principal and interest, shall be made in immediately available, good and valid funds, in United States lawful currency, at our address stated above, or such other address designated to you in writing.  Interest shall be computed at the above stated Interest Rate on a per annum basis (360-day year consisting of twelve 30-day months) and shall accrue on the unpaid Principal Sum beginning on the Funding Date.  Upon execution of this Loan Agreement, you will provide to us any Advance Payment(s)(non-refundable) as stated above and we may also charge you costs incurred in the origination of this Loan.  If this Agreement is executed by more than one Debtor, the obligations of all Debtors shall be joint and several.
   b. **Application of Payments; Late Fees; Usury.**  All Loan Payment Amounts received by us shall be applied: (i) to each Loan Payment(s) then due and outstanding, in order of the most delinquent Loan Payment, and for each such Loan Payment, first to the accrued but unpaid interest, and then, to the Principal Sum thereof; next (ii) to any late fees owed for any due but unpaid Loan Payment(s); next (iii) to any other costs owed Lender; and finally (iv) any remaining balance shall be applied to future Loan Payment(s) in the order due.  We may adjust the amount of your final Loan Payment based on a recalculation of the remaining Loan balance to properly reflect the Principal Sum, Interest Rate and resulting yield intended and stated for this Loan.  Time is of the essence.  We may charge a late fee, not to exceed the greater of either $50.00 or ten percent (10%), of any Loan Payment or other amount not paid within ten (10) days of when due and a fee of $36.00 for each check or draft request returned for insufficient funds or other similar reason(s).  Any late charges or other fee(s) hereunder shall not exceed the maximum amount permitted under applicable law, and if any amount (including any interest, late fees, prepayment fees, or other fees) are determined by a court, regulatory agency or other similar authority to be usurious, then such amounts will be reduced to the maximum amount permitted by law.  Any excess amounts paid deemed usurious will be applied to your Obligations until fully satisfied and any remaining excess amount(s) refunded.
   c. **Prepayment.**  You shall be privileged to prepay the unpaid balance of this Loan before maturity in whole by paying us the unpaid Principal Sum, any accrued but unpaid interest,  late charges, and any unamortized expenses incurred by us for the origination of this Loan, as of the prepayment date, plus a prepayment fee equal to 5% of the prepaid Principal Sum if prepayment occurs during months 1 – 12, 4% during months 13 – 24, 3% during months 25 – 36, 2% during months 37 – 48 and 1% during months 49 – 72.  You recognize prepayment of the unpaid Principal Sum of this Loan will result in us incurring losses, including investment loss, additional expenses, and an inability to satisfy commitments.  You agree it is difficult and impractical to ascertain the exact damage amounts and the above prepayment calculation represents a reasonable estimate of liquidated damages (not a penalty), we could incur.
   d. **Default and Remedies.**  In an Event of Default by you under this Loan Agreement, we may exercise any remedies hereunder, at law, or in equity.  No failure or delay of us to exercise any right or remedy constitutes a waiver and any partial exercise of a remedy shall not preclude future exercise of any right or remedy.  Our books and records as Lender shall be conclusive evidence for purposes of the Loan.  You waive presentment, demand, protest, notice of dishonor, notice of protest and further notice of nonpayment of any kind.

3. **TITLE; SECURITY INTEREST.**  To secure the Obligations, you as Debtor grant us a continuing lien on, and a valid, perfected and enforceable first priority security interest in, all of your right, title and interest in and to the Collateral pursuant to the Uniform Commercial Code in the state of Illinois (the "UCC").  You authorize us to file any UCC financing statements, amendments, certificates of title or other documents we deem necessary to perfect and protect our security interest and you are responsible for all costs related thereto.  You represent and warrant you are the sole owner of the Collateral and hold good title, free of any liens, encumbrances or interests of any kind except

for our security interest. You agree not to sell, transfer, or dispose of the Collateral or any interest therein or allow the Collateral to become subject to any liens, encumbrances or interests of any kind and you shall be responsible for all costs related thereto. You shall deliver to us any documents requested, in a form acceptable to us, to perfect and maintain our first priority security interest in, and related lien on, the Collateral.

4. **COLLATERAL; TAXES.** You will keep the Collateral at the Collateral (Equipment) Location, within the continental United States, and will not remove the Collateral without our prior written consent; except for temporary removal, which may occur in the ordinary course of Debtor's business (such as transport to a job site, motor vehicles, cargo transport, etc.). We may enter your premises during normal business hours to confirm the existence of, and inspect, the Collateral and your business records. At your expense, you will keep the Collateral in good operating order as designed, with manufacturer's recommendations and in compliance with all applicable laws, regulations and insurance requirements. You will furnish any required parts and labor and not make any alterations or additions to the Collateral without our prior written consent. Any additions, modifications, attachments, substitutions or replacements are part of the Collateral. The Collateral will be used solely for business purposes and not for personal or household purposes and will remain, personal property and not a fixture to real estate. If the Collateral is a motor vehicle, you will register and obtain a certificate of title showing you as the owner and us as lienholder in all applicable jurisdictions. You shall not alter any such Collateral registration(s) without our prior written consent. You are liable for, shall pay when due (or reimburse us), and file all tax filings for, all taxes (including sales, use and property taxes), license and registration fees, assessments, penalties, and other charges relating to this Loan Agreement and the Collateral.

5. **RISK OF LOSS; CASUALTY LOSSES.** You bear all risk of loss or damage, theft, loss or destruction to the Collateral, from and after the date the Collateral is delivered to you. You will immediately notify us in writing if any casualty event occurs causing damage, loss, or theft to the Collateral (a "Collateral Loss") and no Collateral Loss relieves you of your Obligations. In the event of a Collateral Loss, you shall either, at our option: (a) place such Collateral in good repair, condition, and working order, (b) replace such Collateral with like kind Collateral, that in our sole opinion, is good repair, condition, and working order, free of all liens and encumbrances; provided, you will obtain our prior written consent for such Collateral replacement and cooperate to provide all documents and requirements we deem necessary; or (c) you will pay to us the outstanding Principal Sum of the Loan, together with all accrued but unpaid interest and all outstanding costs due and unpaid hereunder.

6. **INSURANCE.** You agree to keep the Collateral fully insured until all Obligations are fully satisfied, including: (a) general property damage insurance covering the Collateral for its full replacement value, which such amount shall be equal or greater than the amount of this Loan, with us and our successors and assigns named as loss payee; (b) general liability insurance or other similar form of third party liability coverage in an amount determined by us; and (c) any other insurance we may require. All such insurance shall be in amounts, and with insurers, reasonably acceptable to us and we will be provided thirty (30) days prior written notice of any material policy alteration or cancellation. You will provide certificate(s) of insurance or other sufficient evidence as we reasonably request, or we may, but are not obligated to, obtain insurance to protect our interests in the Collateral, at your expense. This insurance may, but is not required to, protect your interests and the cost of this insurance may be more than your own insurance. In addition to the insurance premiums, we may charge interest and/or administrative related fee(s), with such costs added to your obligations hereunder. Nothing hereunder shall create any type of insurance relationship between us and you. You appoint us as your attorney-in-fact, providing us a limited power of attorney to make claims for, receive payment of, and endorse all documents, checks or other drafts for loss, theft, or damage to the Collateral under insurance and you will cooperate with us and/or insurance agents for the procurement of insurance and processing of claims.

7. **INDEMNIFICATION.** You as Debtor agree to indemnify, hold harmless and, upon request, defend us as Lender and Secured Party, and our directors, officers, agents and affiliates, against all claims, directly or indirectly arising out of, or connected with, the Collateral or this Loan Agreement. "Claims" means all losses, liabilities, damages, penalties, expenses, claims or actions, arising out of or relating to your ownership, possession, operation (regardless of where, how, or by whom the Collateral is operated), control, use, condition (including latent and other defects, whether or not discoverable), maintenance, and delivery of the Collateral, or if you are in default, arising out of the condition of the Collateral sold or disposed of after your use. These indemnities and obligations survive and continue in full force and effect notwithstanding termination of this Loan Agreement. You shall pay our reasonable expenses relating to this Loan Agreement or the enforcement thereof.

8. **ASSIGNMENT.** You may not assign or transfer this Loan Agreement and you may not sell, lease, or pledge the Collateral or any interest therein to anyone under any circumstances. We, as Lender and Secured Party, may sell, assign, grant a security interest in or otherwise transfer any of our interests in this Loan Agreement or the Collateral without notice to, or consent by, you. The assignee will have all rights we assign to them, but none of our obligations, which shall be retained by us. The rights of the assignee will not be subject to any claims, defenses or set-offs you have against us. Upon any such assignment by us, you agree to acknowledge the assignment and remaining Loan Obligations and comply with any directions by the assignee including as to payment and notices. This Loan Agreement shall inure to the benefit of, and is binding upon, the successors or permitted assigns of the parties hereto.

9. **EVENTS OF DEFAULT.** An event of default hereunder (each, an "**Event of Default**") by you shall exist if any of the following occur: (a) failure by you to pay any amount due hereunder within ten (10) days of when due; (b) the failure by you to perform any covenant or obligation hereunder within thirty (30) days of notice by us; (c) failure by you to perform any covenant or obligation under any Obligation with us as Secured Party or any lease, financing, or other indebtedness with any other lender; (d) you or any Guarantor files, or has filed, a petition for bankruptcy under any federal or state bankruptcy or similar law, becomes insolvent, or has a liquidator or receiver appointed with or without consent; (e) Debtor ceases doing business, is liquidated or dissolved, or if an individual, you or any Guarantor dies; (f) a material adverse change in Debtor's or any Guarantor's financial condition, business, assets has occurred, in our sole discretion, or we as Secured Party deem this Loan or the Collateral insecure for any reason; (g) for this Loan Agreement or any Obligation, a material breach occurs by you, or any representation or warranty you make to us is false, misleading or inaccurate; (h) any judgment against Debtor in excess of $25,000 exists; (i) any lien or encumbrance against, or the making of any levy, seizure or attachment on, the Collateral; (j) the failure of the Secured Party to have a perfected first priority security interest in the Collateral; or (k) if a legal entity, you or any Guarantor have: (i) a change in control resulting in fifty percent (50%) or more of your or the Guarantor's ownership or interests changing; (ii) a merger or consolidation with any other legal entity, or (iii) a sale of all or substantially all of your or any Guarantor's assets or business.

10. **REMEDIES.** Upon any Event of Default or thereafter, we may exercise any remedies hereunder, under other agreements, in law or equity, or as a Secured Party under the UCC, and such remedies are not exclusive, and may be exercised separately or concurrently, including, but not limited to: (a) cancellation or termination of this Loan Agreement; (b) acceleration of this Loan and each Obligation(s) to be immediately due and payable by you paying the outstanding Principal Sum of the Loan, together with all accrued but unpaid interest thereon and all outstanding fees and expenses due and unpaid; (c) without notice to, or consent by you, and with or without legal process, we may enter your premises and take possession of the Collateral; (d) require you return the Collateral to us, or designated location, at your expense; (e) in addition to all other amounts due hereunder, we may charge you costs of enforcement (including attorneys' fees) and interest on all monies due from the Event of Default date, at a default rate equal to the stated Interest Rate above plus 3% (or the maximum rate permitted by law); or (f) we may sell or dispose of the Collateral in compliance with the UCC and other applicable laws. Any such sale proceeds shall be applied to your Obligations and any excess proceeds paid to you. No delay or omission by us to exercise any right or remedy impairs or waives such right or remedy. We may release any obligor, guarantor, or Collateral for the Loan, in whole or in part, without notice to or consent by you, and it does not relieve any of your Obligations. We may, but are not required to, perform certain of your obligations, such as paying taxes, insurance or for maintenance for the Collateral; provided, you are obligated to promptly reimburse us, and no obligation hereunder is relieved. No waiver by us of any default operates as a waiver of any other present or future default.

11. **DEBTOR REPRESENTATIONS, WARRANTIES, AND COVENANTS.** As of the date hereof and during the Loan Term, you represent, warrant and covenant to us that: (a) this Loan Agreement constitutes a legal, valid, and binding obligation, enforceable against you in accordance with its terms; (b) you are able to perform all of your obligations hereunder, including the grant of the security interest; (c) you are not in violation of any law, contract or organizational documents by entering into and performing your obligations hereunder; (d) all financial or other statements you have made are true and correct and you are not insolvent; and (e) no consent, approval or giving of notice to any party is required to perform your Obligations; (f) any person signing this Loan Agreement is duly authorized; (g) if a legal entity, your legal entity is as stated above and is duly organized, validly existing and in good standing under the laws of the state above and is duly qualified, in good standing, and authorized to do business where the Collateral is located; (h) your legal name is as stated above, and if an individual, such name is as stated on your valid and unexpired state driver's license, or alternative identification issued by your primary state of residence, and if a legal entity, such legal name is as stated on your organizational documents; (i) you will provide at least thirty (30) days prior written notice if you change your name, legal entity or principal place of business; (j) you authorize us to obtain and use credit bureau reports and other similar inquiries we deem necessary, whether obtained directly by us or indirectly through other lenders or vendors assisting with your financing and purchase of Collateral; (k) you will

provide any further credit, financial or business information we require, including current interim or annual financial statements; (l) you irrevocably authorize and direct us to disburse the Loan proceeds; (m) you are, and will remain, in full compliance with all applicable laws, including that: (i) no person who owns a controlling interest in or otherwise controls you or any Guarantor is, or shall be, (A) listed on the "Specially Designated Nationals and Blocked Person List" maintained by the Office of Foreign Assets Control ("OFAC"), Department of Treasury or any similar lists maintained by agencies under statute, regulation, order or other authority, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), or any related authority; and (ii) all applicable Bank Secrecy Act laws for the prevention and detection of money laundering violations.

12. **MISCELLANEOUS.**

   a. **Entire Agreement; Amendments; Counterparts; Chattel Paper; Enforceability.** This Loan Agreement constitutes the entire agreement for the subject matter hereunder and supersedes all prior oral and written agreements. No modification or amendment of this Loan Agreement shall be binding unless executed in writing by both parties. This Loan Agreement may be executed in one or more counterparts. Unless this Loan Agreement is executed using an electronic signature platform and chattel paper is held in an electronic format, only the counterpart bearing our "wet ink" signature, stamp, or otherwise denoted by us as the original, together with Borrower's copy or counterpart (or copies or counterparts if there is more than one Borrower) will constitute the sole chattel paper original and no security interest in this Loan Agreement may be created through the transfer, possession, or control of any copy or counterpart other than the sole chattel paper original. If any term hereunder is determined by a court, agency or other party with authority to be invalid or unenforceable, such finding shall not affect any remaining terms of this Loan Agreement.

   b. **Notices; Electronic Documents.** All notices hereunder must be sent by certified mail or recognized overnight delivery service, postage prepaid, return receipt requested to you at the address stated above or an alternative address provided in writing. This Loan Agreement, any signature page or counterpart thereto, signed and transmitted by facsimile machine, telecopier or other electronic means (including via transmittal of a "pdf" file) shall be deemed an original document that is valid, binding and enforceable. The signature of any person thereto shall be considered an original signature and the document transmitted has the same binding effect as an original signature on an original document. At our request, any facsimile, telecopy or other electronic document shall be provided with a "wet ink" signature and/or manually transmitted in original form by the person(s) who executed the facsimile, telecopy or other electronic document. The parties hereby consent to using such electronic signature(s) and/or electronic transmission of document(s) and intend to be legally bound thereby. No party may raise use of a facsimile, telecopier or other electronic means of delivery, or the fact any signature is electronic, as a defense to enforcement of this Loan Agreement.

   c. **Further Assurances; USA Patriot Act.** You hereby authorize us, without notice and in addition to our other rights under this Loan Agreement, to insert or correct missing or incorrect information on this Loan Agreement, including but not limited to any blank or incorrect dates, your proper legal name, business title, serial numbers and any other information describing the Collateral. You will promptly execute and deliver any further documents and take further action as we may request to fulfill the purpose of this Loan Agreement. We hereby provide notice that pursuant to the USA PATRIOT Act (Title III of Pub. L. 107-56, October, 26 2001), we are required to obtain, verify and record information identifying you and any guarantor(s), including names, addresses and information to comply with this law. You and any Guarantor(s) agree to promptly provide documentation complying with obligations under anti-money laundering laws, "know your customer" requirements and the Act.

   d. **Governing Law; Jurisdiction/Venue; Jury Trial Waiver.** This Loan Agreement shall be subject to, and governed by, the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each party consents hereto to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes arising under this Loan Agreement and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. **EACH PARTY HERETO IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, CONSEQUENTIAL, PUNITIVE OR INDIRECT DAMAGES ARISING OUT OF THIS LOAN AGREEMENT.**

| LENDER AND SECURED PARTY | Midland States Bank | BORROWER AND DEBTOR | Big Level Trucking Inc. |
|---|---|---|---|
| | Print Name:   Shelly Nowak | | Print Name: Steven Evans |
| | Titles:   Senior Funding QC Specialist | | Titles: President |
| | Authorized Signature: X  Shelly Nowak | | Authorized Signature: X |

**PERSONAL GUARANTY:** Each undersigned guarantor (each a 'Guarantor'), jointly and severally, unconditionally and irrevocably, guarantees the full and prompt payment and performance of Debtor's obligations for the above Loan Agreement and amendments (the 'Loan Agreement'), to which this Guaranty is attached, and any other now existing, or hereafter arising, obligation or indebtedness of Debtor to Lender, its successors, assignees and affiliates (each, an 'Obligation'). This Guaranty is a legal, valid and binding obligation, enforceable in accordance with its terms, and remains in full force and effect until all Obligations are fully satisfied. No obligation of Guarantor can be assigned or delegated, and this Guaranty may only be modified in writing by both parties. This Guaranty is of payment and performance and may be enforced directly against Guarantor without proceeding against Debtor, guarantors or other parties, and without Lender pursuing any other remedy. Guarantor waives any right to require Lender to make presentment or demand for performance, or give any notice of nonperformance, protest, or dishonor. Without notice to, or consent by, Guarantor, Lender may for any Obligation, in its sole discretion, release obligors, guarantors or debtors, modify terms, sell or release collateral, or exercise any right or remedy. Guarantor shall have no right of subrogation, reimbursement, contribution or indemnity with Debtor or any guarantor for any Obligation. **EACH GUARANTOR WAIVES ALL DEFENSES TO THIS GUARANTY.** This Guaranty shall be governed by the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each Guarantor consents to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes arising hereunder and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. **EACH GUARANTOR IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OBLIGATION.** The terms in 12(b) and (c) of the Loan Agreement as relating to notices, electronic documents, further assurances and the USA Patriot Act shall apply to this Guaranty and Guarantor. Guarantor shall be liable for all costs incurred by Lender in enforcing this Guaranty and this Guaranty is binding upon each Guarantor, its heirs and representatives, in favor of Lender, its assignees and affiliates

| GUARANTOR | Name: Steven Evans |
|---|---|
| | Print Name: Steven Evans |
| | Authorized Signature: X |

| GUARANTOR | Name: Charles Guy Evans JR |
|---|---|
| | Print Name: Charles Guy Evans JR |
| | Authorized Signature: X |

## EXHIBIT A



**Midland**
Equipment Finance
A division of Midland States Bank

**Agreement Type:**   Loan

**Agreement No.**   826-202728-005
**Dated:**   February 26, 2024

This EXHIBIT A dated as of February 26, 2024 supplements the above referenced agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor under such Contract) and Obligor (as debtor, lessee or obligor under such Contract).

| Equipment Description | Equipment Location |
|---|---|
| One (1) New 2024 International LT625 VIN: 3HSDZAPR0RN479498 | 1727 Dummy Line Road<br>Wiggins, MS 39577 |
| One (1) New 2024 International LT625 VIN: 3HSDZAPR2RN479499 | 1727 Dummy Line Road<br>Wiggins, MS 39577 |

IN WITNESS WHEREOF, the parties hereto have caused this Exhibit A to be duly executed as of the date first set forth above by their authorized representatives.

| CREDITOR | Midland States Bank | OBLIGOR | Big Level Trucking Inc. |
|---|---|---|---|
| | Print Name:  Shelly Nowak | | Print Name: Steven Evans |
| | Title:  Senior Funding QC Specialist | | Title:  President |
| | Authorized Signature: X  _Shelly Nowak_ | | Authorized Signature: X  _Steven Evans_ |

ExhibitA_082022




780022241000



**= DEPARTMENT OF =**
# REVENUE
**STATE OF MISSISSIPPI**

## Application for Title

Application #: W1861797376

| | |
|---|---|
| **County Code** STONE | **Date** 27-Feb-2024 ☐ **Fast Track Application** |

| Lessor (if Leased) | Lessor Mailing Address |
|---|---|

**Owner(s) or Lessee(s) if Leased**
BIG LEVEL TRUCKING, INC.

☐ AND   ☐ AND / OR   ☐ OR

**Registered Physical Address (DO NOT GIVE A PO BOX)**
1727 DUMMY LINE RD
WIGGINS MS 39577-8182

**Registered Mailing Address (if Different)**

**Beneficiary**

| Vehicle ID | | Year | Make | Model | | Body Style |
|---|---|---|---|---|---|---|
| 3HSDZAPR0RN479498 | | 2024 | INTL | LT625 | | Tractor Truck, Diesel |
| ☐ Provisional | | | | | | |

| Vehicle Type | Fuel Type | Color | Unladen Weight |
|---|---|---|---|
| Truck Tractor | Diesel | Blue | 0 |

| Seats | Axles | Cylinders | Gross Vehicle Weight |
|---|---|---|---|
| 0 | 3 | 6 | 0 |

| Purchase Date | New / Used | Odometer Reading | Odometer Code |
|---|---|---|---|
| 27-Feb-2024 | New | 0 | Exempt from Disclosure |

**Brands**

☐ Bonded   ☐ Collision   ☐ Fire   ☐ Flooded   ☐ Hail   ☐ Rebuilt   ☐ Salvaged   ☐ Wind
☐ Recovered Theft   ☐ Unrecovered Theft   ☐ Other

| Primary Lienholder's Information | Secondary Lienholder's Information |
|---|---|
| MIDLAND STATES BANK | |
| 1801 PARK 270 DR STE 200 | |
| SAINT LOUIS MO 63146-4022 | |
| **Date of Lien** 27-Feb-2024 | **Date of Lien** |

**Designated Agent**
WATERS INTERNATIONAL TK INC

**Designated Agent Number**
64059826000

*[signature]*                                              27-Feb-2024
Signature                                                        Date

I/WE, THE UNDERSIGNED, CERTIFY THAT THE VEHICLE DESCRIBED ABOVE IS OWNED BY ME AND I HEREBY MAKE APPLICATION FOR A CERTIFICATE OF TITLE FOR SAID MOTOR VEHICLE, AND THIS VEHICLE WILL NOT BE SUBJECT TO LIEN PRIOR TO RECEIPT OF THE TITLE UNLESS INDICATED ABOVE.

**\*\*DISCLOSURE STATEMENT AND PRIVACY ACT NOTICE\*\***
DRIVER'S LICENSE NUMBERS ARE REQUIRED BY STATE LAW AND WILL BE USED IN THE ADMINISTRATION OF STATE MOTOR VEHICLE LAWS. THE COMMISSION IS AUTHORIZED TO COLLECT THE INFORMATION PURSUANT TO 42 U.S.C. §405(c)(2)C AND MISS CODE ANN §63-21-15. TITLES AND REGISTRATION RECORDS MAY BE RELEASED ONLY PURSUANT TO 18 U.S.C. §§2721-2725. FAILURE TO PROVIDE THE INFORMATION WILL RESULT IN THE DENIAL OF A CERTIFICATE OF TITLE.

*[signature]*
First Owner/Lessee's Signature                           License #

Print one copy for each of the following: MS Department of Revenue,
Owner, Designated Agent, and Lienholder (If Applicable)

Joint Owner/Lessee's Signature                           License #



## CERTIFICATE OF ORIGIN FOR A VEHICLE

142
839910
588047
479498

A NAVISTAR COMPANY

DATE
AUGUST 26, 2023

MODEL NO.
N30826038

VEHICLE IDENTIFICATION NO.
3HSDZAPR0RN479498

YEAR
2024

MAKE
INTERNATIONAL

BODY TYPE
TRUCK/TRACTOR

SHIPPING WEIGHT
17785

G.F.P. (G.A.E.)
53200

NO. CYLS.
6

SERIES OR MODEL
LT625 6x4

ENGINE NAME
CUM X15 450 450HP/1700 GOV

ENGINE NO.
80562556

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

WATERS INTERNATIONAL
P O BOX 4199
MERIDIAN, MS 39304

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

**NAVISTAR, INC.**

BY: _Melanie Wilson_

(SIGNATURE OF AUTHORIZED REPRESENTATIVE)          (AGENT)
1111 NORTHSHORE DR.
KNOXVILLE, TN 37919-3805

CITY-STATE

NAV 3170272

*3HSDZAPR0RN479498*

**TITLED EQUIPMENT AGREEMENT AND ACKNOWLEDGMENT — CUSTOMER**

**Midland**
Equipment Finance
A division of Midland States Bank

Agreement No.     826-202728-005
Dated:            February 26, 2024

Name and Address of Customer:
Big Level Trucking Inc.
1727 Dummy Line Road
Wiggins, MS 39577

Equipment Description:     See the attached Exhibit A

The Equipment must be titled if your state or jurisdiction requires titling, as follows:

<u>Lienholder Name and Address</u>:
Midland States Bank
1801 Park 270 Drive, Suite 200
St. Louis, MO 63146

<u>Owner Name and Address</u>:
Big Level Trucking Inc.
1727 Dummy Line Road
Wiggins, MS 39577

PLEASE NOTE: The legal name of the Customer must be used on all title applications or documentation submitted to the State for titling purposes.

If there are multiple customer(s) as co-borrowers for the Equipment, then any certificate(s) of title must include at least one of the customer's name(s), which shall name such customer/co-borrower as Owner.

<u>Party Responsible to submit title work to state (check the box next to the applicable option):</u>
☐     Customer          ☐     Titling Agency

☒     Dealer or Vendor     ☐     Equipment does not require titling at time of commencement (MSO must be forwarded to Lessor)

<u>Contact Information for Titling Party:</u>

Name: _VAUGHAN WATERS_

Street Address: _80 S & K Drive_

City: _Hattiesburg_ State: _MS_          Zip Code: _39402_

Direct Phone Number: _601-544-7401_ Fax Number: _____

E-mail Address: _vwaters@waterstruck.com_

PLEASE NOTE: If you are in one of the Electronic Titling States identified on the attached Exhibit A you are required to supply the appropriate ELT identifier to your registration office.

If your state or jurisdiction requires titling or registration of the equipment described above at any time during the term of the agreement by signing below, Customer hereby represents, warrants, agrees and unconditionally guarantees that Customer (1) has the absolute and unconditional right, title, and interest to transfer ownership and any lienholder interest in the above described Equipment; (2) shall title the Equipment as set forth in this agreement; (3) is responsible for ensuring the Titling Party designated above will apply for title(s) immediately upon disbursement of funds by Midland States Bank for the above stated Contract and related Equipment, even if Customer is not directly submitting title work to the state; (4) has confirmed that the current party holding the original title(s) or Certificate(s) of Origin for the titled equipment referenced above will deliver such documents to the designated Titling Party within ten business (10) days of the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; (5) shall ensure Titling Party agrees to send a copy of the processed title application receipt as endorsed by the applicable State to the address set forth below within thirty (30) business days after the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; and (6) hereby agrees to indemnify, defend, and hold Midland States Bank harmless for any claims, losses, liabilities, costs, or expenses arising between the date of disbursement of funds by Midland States Bank for the above stated Contract and any related Equipment, and the date of full satisfaction of all obligations and agreements of Customer hereunder, which occur as a result of: (i) Customer's breach of, or delay or failure relating to, any representation, warranty, covenant, or agreement in the Contract or in this agreement; or (ii) the creation or imposition of any intervening rights, interests, or liens with respect to the Equipment, including but not limited to, any liens by third parties or other creditors, mechanics liens, storage liens, or other similar liens.

<u>In addition to any rights and remedies contained in the Contract, failure to satisfy the titling and registration requirements within 90 days of disbursement of funds by Midland States Bank for stated Contract and related Equipment will result in a Title Delinquency Fee in the amount of $500.00 per month plus any other direct costs incurred by Midland States Bank to be billed and due monthly until satisfactory completion of titling or registration of the Equipment.</u>

Midland States Bank
Attn: Funding Department
1801 Park 270 Drive, Suite 200, St. Louis, MO 63146

Customer: Big Level Trucking Inc.

By: _____          Steven Evans, President

TitleGuarantyCustomer_082022



## CERTIFICATE OF ORIGIN FOR A VEHICLE

142
839910
588047
479498

NAVISTAR COMPANY

DATE
AUGUST 26, 2023

INVOICE NO.
N30826038

VEHICLE IDENTIFICATION NO.
3HSDZAPR0RN479498

YEAR
2024

MAKE
INTERNATIONAL

BODY TYPE
TRUCK/TRACTOR

SHIPPING WEIGHT
17785

H.P. (S.A.E.)

G.V.W.R.
53200

NO. CYLS.
6

SERIES or MODEL
LT625 6x4

ENGINE NAME
CUM X15 450 450HP/1700 GOV

ENGINE NO.
80562556

I, the undersigned authorized representative of the company, firm or corporation named below, hereby certify that the new vehicle described above is the property of the said company, firm or corporation and is transferred on the above date and under the invoice Number indicated to the following distributor or dealer.

NAME OF DISTRIBUTOR, DEALER, ETC.

WATERS INTERNATIONAL
P O BOX 4199
MERIDIAN, MS 39304

It is further certified that this was the first transfer of such new vehicle in ordinary trade and commerce.

**NAVISTAR, INC.**

BY: _Melanie Wilson_

(SIGNATURE OF AUTHORIZED REPRESENTATIVE)   (AGENT)
1111 NORTHSHORE DR.
KNOXVILLE, TN 37919-3805
CITY-STATE

**NAV** 3170272

*3HSDZAPR0RN479498*

Each undersigned seller certifies to the best of his knowledge, information and belief under penalty of law that the vehicle is new and has not been registered in this or any state at the time of delivery and the vehicle is not subject to any security interests other than disclosed herein and warrant title to the vehicle.

**FOR VALUE RECEIVED I/WE TRANSFER THE VEHICLE DESCRIBED ON THE FACE OF THIS CERTIFICATE TO:**

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 1

NAME OF PURCHASER(S) Big Level Trucking, Inc.
ADDRESS 1727 Dummy Line Road   Wiggins, MS 39577

I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER Watos International Trucks, Inc. 614   By M.T. Watt

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 2

NAME OF PURCHASER(S) _____
ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER _____

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   By _____   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 3

NAME OF PURCHASER(S) _____
ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER _____

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   By _____   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

### DISTRIBUTION-DEALER ASSIGNMENT NUMBER 4

NAME OF PURCHASER(S) _____
ADDRESS _____

I certify to the best of my knowledge that the odometer reading is _____ No Tenths
DEALER _____

NAME OF DEALERSHIP   DEALER'S LICENSE NUMBER   By _____   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

State of _____   _____ day of _____ Year

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

### ODOMETER DISCLOSURE FOR RETAIL SALE

Federal Law requires you to state the odometer mileage in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

I certify to the best of my knowledge that the odometer reading is the actual mileage of the vehicle unless one of the following statements is checked. Odometer

Reading _____ No Tenths. ☐   The mileage stated is in excess of its mechanical limits. ☐   The odometer reading is not the actual mileage.

**WARNING ODOMETER DISCREPANCY**

Signature(s) of Seller(s) _____   Date of Statement _____   Date of sale _____

Printed Name(s) of Seller(s) _____   Being duly sworn upon oath says that the statements set forth are true and correct. Subscribed and sworn to me before this

Signature(s) of Purchaser(s) _____   Dealer's No. _____

Printed Name(s) of Purchaser(s) _____   _____ day of _____ Year

Company Name (if applicable) _____

Address of Purchaser(s) _____   State of _____

County of _____   _____ Notary Public

USE NOTARIZATION ONLY IF REQUIRED IN TITLING JURISDICTION

### LIENHOLDER

1st lien in favor of Midland States Bank
whose address is 1801 Park 270 Drive, Suite 200  St. Louis, MO 63146

2nd lien in favor of _____
whose address is _____

# Title Application - Confirmation

Your confirmation number is W1593361920.

Now you must,
- Have customer sign the application
- Provide copy of signed application to customer and dealership
- Mail original signed application to Department of Revenue along with required documents:
  **Mississippi Department of Revenue**
  **Motor Vehicle Services**
  **P.O. Box 23049**
  **Jackson MS 39225-3049**

We cannot complete processing this title application until the following documents are received at DOR.
- Signed Title Application
- Properly assigned title, if used vehicle
- MSO, if new vehicle
- Supporting documents

NOTE: You can make any changes to the pending title application at any time through Motor Vehicle e-Services.  If you make any changes, you must print the new title application and submit with required documents.

**POWER OF ATTORNEY (VEHICLES)**

| AGENT | | GRANTOR | |
|---|---|---|---|
| | Wolters Kluwer Lien Solutions (as agent on behalf of Midland States Bank) | | Big Level Trucking Inc. |
| | 187 Wolf Road, Suite 101 | | 1727 Dummy Line Road |
| | Albany NY 12205 | | Wiggins, MS, 39577 |
| | Printed Name of Authorized Person for Agent / Attorney in Fact: | | Phone: 6019283770 |
| | | | Contact: Steven Evans |
| | Signature of Authorized Person for Agent / Attorney in Fact: | | |

Agreement No. 826-202728-005, dated February 26, 2024 by and between Midland States Bank and Big Level Trucking Inc. ("Obligor") (the "Agreement"). Vehicle Description(s) or VIN(s) (the "Vehicle(s)"):

3HSDZAPR0RN479498

3HSDZAPR2RN479499

The party identified in the box above as Grantor ("Grantor"), does hereby appoint Wolters Kluwer Lien Solutions (appointed as agent on behalf of Midland States Bank), or any officer, employee, contractor or designee of agent (herein "Agent"), as stated above, as its attorney-in-fact, with full power of substitution, and hereby authorizes and empowers Agent, in the name, place and stead of Grantor, to take the following actions and to do the following things from time to time with respect to the Vehicle(s) described above or on any schedule attached hereto, as related to the specific Agreement(s) and Obligor(s) stated above , for the purpose of enabling Agent in the name of Grantor to do any and all of the following:

1.  To take any and all actions and to do any and all things necessary or desirable in all matters pertaining to the titling or registration, sale or transfer of ownership or recording of a lien (including into the name of Agent), or applying for an original or duplicate certificate of title to the Vehicle(s), or any other similar forms or documents in the name and stead of Grantor in connection therewith;

2.  To delegate said power of attorney to any person it deems appropriate, but only for the limited purposes set forth herein; and

3.  To do and perform all acts necessary to carry into effect and exercise the rights and powers granted by this Power of Attorney as fully as Grantor might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Power of Attorney shall be effective from and after the date hereof, is coupled with an interest and is irrevocable. **THIS POWER OF ATTORNEY CANNOT BE CANCELLED BY GRANTOR.** Any third party may at any and all times hereafter rely upon this document as the Agent's authority to continue to exercise the rights and powers herein granted.

Grantor executes this Power of Attorney as of the date set forth above, with the intent to be legally bound hereby.

GRANTOR: Big Level Trucking Inc.

By:

Name:     Steven Evans

Title:     President

State of _MS_

County of _Forrs_

Subscribed and sworn to before me, a Notary Public in and for said County and State, by the foregoing individual who is personally known to me, or who proved to me on the basis of satisfactory evidence to be the person who appeared before me, who, being informed of the contents hereof, as a representative of Grantor and with full authority, executed the same voluntarily for and as the act of the Grantor.

Notary Public Signature

[SEAL]

STATE OF MISSISSIPPI NOTARY PUBLIC ID # 35867 K. R. COWART FORRES COUNTY My Commission Expires July 5, 2027

**EXHIBIT A TO TITLED EQUIPMENT AGREEMENT AND ACKNOWLEDGMENT — CUSTOMER**



Midland
Equipment Finance
A division of Midland States Bank

Agreement No.    826-202728-005
Dated:    February 26, 2024

| Electronic Titling States | ELT Identifier |
|---|---|
| Arizona | 370259550 |
| California | GTB |
| Colorado | E370259550002 |
| Florida | 254854815 |
| Georgia | 1115911540 |
| Idaho | 37-0259550 |
| Indiana | 3702595500001 |
| Iowa | 3702595501 |
| Kansas | 370259550 |
| Louisiana | ECMH |
| Maryland | 8178 |
| Massachusetts | C 40968 |
| Michigan | LH049838 |
| Nebraska | 40147444 |
| Nevada | MZ0096 |
| New York | 79811 |
| North Carolina | 36470741 |
| Ohio | E10427 |
| Pennsylvania | 37025955002 |
| South Carolina | 370259550 |
| South Dakota | 370259550 |
| Texas | 37025955000 |
| Virginia | MSB13 |
| Washington | MAB |
| West Virginia | DA0234WV |
| Wisconsin | 129168 |

*New Jersey Corporate Code:  566830074624010

**PAY PROCEEDS DISBURSEMENT AUTHORIZATION**



Midland
Equipment Finance
A division of Midland States Bank

| | |
|---|---|
| **Agreement Type:** | Loan |
| **Agreement No.** | 826-202728-005 |
| **Agreement Dated:** | February 26, 2024 |

| CREDITOR: Midland States Bank | OBLIGOR: Big Level Trucking Inc. |
|---|---|
| 1801 Park 270 Drive, Suite 200<br>St. Louis, MO 63146<br>Phone: 800.648.6517 | 1727 Dummy Line Road<br>Wiggins, MS 39577<br>Phone: 6019283770 |

This **Pay Proceeds Disbursement Authorization** is dated and made effective as of even date with the above-referenced Agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor) and Obligor (as debtor, lessee or obligor), of which this Pay Proceeds Disbursement Authorization is made a part of, and incorporated into, such Contract.

Obligor hereby irrevocably authorizes and directs Creditor to disburse, on behalf of Obligor, for Obligor's benefit, the following amounts and/or proceeds below (excluding any down payment amount(s) paid by Obligor to Creditor that are not disbursed to any Payee), pursuant to the Contract, for the Equipment, Collateral or related services or requirements, to the following payee(s) below. Obligor shall indemnify, defend and hold harmless Creditor from and against any and all losses, costs, expenses, claims, damages, or liabilities, relating to or arising from Creditor's disbursement(s) and actions related thereto hereunder. Each such disbursement hereunder is made in accordance with, and subject to, the terms and conditions of the Contract.

| Payee | Total Amount(s) Disbursed to Payee |
|---|---|
| Waters International Trucks, Inc. dba Waters Truck and Tractor Upon Delivery and Acceptance | $319,700.00 |
| Origination Fee - Midland States Bank | $400.00 |
| | |
| | |

Obligor hereby causes this Pay Proceeds Disbursement Authorization to be duly executed below by its authorized representatives.

**Agreed to and accepted by Obligor:**

By:          Steven Evans

Its:          President

Signature:

**INSURANCE AUTHORIZATION**

**Midland**
Equipment Finance
A division of Midland States Bank

| | |
|---|---|
| Agreement No. | 826-202728-005 |
| Dated: | February 26, 2024 |

| | | | |
|---|---|---|---|
| **To:** | Big Level Trucking Inc.<br>1727 Dummy Line Road<br>Wiggins, MS 39577 | **From:** | Midland States Bank ISAOA ("Creditor" or "Midland States Bank")<br>1801 Park 270 Drive, Suite 200<br>St. Louis, MO 63146 |

**TO THE CUSTOMER:** In connection with one or more financing arrangements, Midland States Bank requires proof in the form of an Insurance Certificate that its insurable interest in the financed property (the "Property") meets Midland States Bank's requirements as follows:

1. Midland States Bank and its successor and assigns (ISAOA) shall be covered as Loss Payee with regard to all equipment financed or leased by Policy Holder through or from Midland States Bank.
2. Customer must carry property insurance (or, for vehicles, Physical Damage Insurance) in an amount no less than the $319,700.00.
3. The Deductible must be listed on the Insurance certificate not exceeding $10,000.00.

Please execute below and return this form to Midland States Bank with your document package. Midland States Bank will fax this form to your insurance agent for verification and certificates of insurance. By signing, Customer authorizes the Agent named below to endorse the policy and subsequent renewals to reflect the required coverage as outlined above.

| Agency: | | Company: | Big Level Trucking Inc. |
|---|---|---|---|
| Agent: | | | |
| Address: | | | |
| City/State/ZIP: | | By: | |
| Phone: | | Name: | Steven Evans |
| Fax: | | Title: | President |
| E-Mail: | | | |

**Total Invoice Amount:** $319,700.00

**Equipment Description:**
One (1) New 2024 International LT625 VIN: 3HSDZAPR0RN479498
One (1) New 2024 International LT625 VIN: 3HSDZAPR2RN479499
together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto and any and all proceeds of the forgoing, including, without limitations, insurance recoveries ("Equipment").

If you do not have an insurance policy that meets the requirements above, you can contact Great American Insurance Group for an easy quotation and enrollment.

> **Great American Insurance Group**
> Phone: 877-878-0380
> Email: agentdesk@gaig.com

InsuranceAuthorization_112020

# U.S. Bankruptcy Court

## Southern District of Mississippi

Notice of Electronic Claims Filing

The following transaction was received from Byrd, Robert on 9/26/2025 at 4:17 PM CDT

File another claim

**Case Name:**       Big Level Trucking, Inc.
**Case Number:**     25-51204-KMS
                     Midland States Bank
**Creditor Name:**   PO Box 2149
                     Gig Harbor, WA 98335
**Claim Number:**    20   Claims Register
**Amount Claimed:** $37,602.44
**Amount Secured:** $37602.44
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** doc03295820250926145411.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1059593727 [Date=9/26/2025] [FileNumber=20823666-0] [b927d411bf812cc67b7bd0c8ceca02775b4fae73f5cbef9c74296c7fbe93e98382 2e767e5a8b37ef03fa5ce400fb1a5cb5a0a165a3c10e1f5de6170b44169342]]

## 25-51204-KMS Notice will be electronically mailed to:

Robert Alan Byrd on behalf of Creditor Keesler Federal Credit Union
rab@byrdwiser.com, wrs@byrdwiser.com;WandaRitaStanovich@gmail.com

Robert Alan Byrd on behalf of Creditor Midland States Bank
rab@byrdwiser.com, wrs@byrdwiser.com;WandaRitaStanovich@gmail.com

Craig M. Geno on behalf of Debtor In Possession Big Level Trucking, Inc.
cmgeno@cmgenolaw.com, kcarter@cmgenolaw.com,cmgeno@ecf.courtdrive.com

Chad J. Hammons on behalf of Creditor Mitsubishi HC Capital America, Inc.
chammons@joneswalker.com, mgreen@joneswalker.com;chad-hammons-2384@ecf.pacerpro.com

James Haney on behalf of Creditor Crossroads Equipment Lease and Finance
jhaney@wongfleming.com, sfiorentino@wongfleming.com

Winston Lee on behalf of Creditor PNC Equipment Finance
wlee@burr.com, sberry@burr.com;cbankston@burr.com;cmccann@burr.com

Abigail M. Marbury on behalf of U.S. Trustee United States Trustee
abigail.m.marbury@usdoj.gov

Erin McManus on behalf of Creditor Trustmark Bank, successor in interest to Trustmark National Bank
emcmanus@watkinseager.com, scook@watkinseager.com

EXHIBIT "C"

Paul S. Murphy on behalf of Creditor Bank of Wiggins
paul.murphy@butlersnow.com, kitty.logan@butlersnow.com;ecf.notices@butlersnow.com

Eric T. Ray on behalf of Creditor Corporate Billing, a Division of SouthState Bank
etray@hklaw.com, brooke.freeman@wallerlaw.com

Sylvie Derdeyn Robinson on behalf of Creditor MISSISSIPPI DEPARTMENT OF REVENUE
bankruptcy.attorney@dor.ms.gov

John S. Simpson on behalf of Creditor H&P Leasing, Inc.
jsimpson@simpsonlawfirm.net, rboone@simpsonlawfirm.net

Alan Lee Smith on behalf of Creditor Banc of America Leasing & Capital, LLC
asmith@bakerdonelson.com

Alan Lee Smith on behalf of Creditor Navistar Leasing Company
asmith@bakerdonelson.com

Jim F. Spencer, Jr. on behalf of Creditor Trustmark Bank, successor in interest to Trustmark National Bank
jspencer@watkinseager.com, mryan@watkinseager.com

Christopher J. Steiskal, Sr. on behalf of Debtor In Possession Big Level Trucking, Inc.
csteiskal@cmgenolaw.com, kcarter@cmgenolaw.com;csteiskal@ecf.courtdrive.com

Joe Stevens on behalf of Creditor Renasant Bank
jds@wisecarter.com

United States Trustee
USTPRegion05.JA.ECF@usdoj.gov

Andrew R. Wilson on behalf of Creditor M&T Equipment Finance Corporation
awilson@blswlaw.com, blsw@ecf.courtdrive.com

**25-51204-KMS Notice will not be electronically mailed to:**

**Fill in this information to identify the case:**

Debtor 1    BIG LEVEL TRUCKING, INC.

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Southern District of Mississippi

Case number   25-51204 KMS

Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form.** This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

MIDLAND STATES BANK
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

MIDLAND STATES BANK
Name

PO BOX 2149
Number   Street

GIG HARBOR    WA    98335
City    State    ZIP Code

Contact phone   (253) 358-4086

Contact email   jmitchell@orionfirst.com

Where should payments to the creditor be sent? (if different)

Name

Number   Street

City    State    ZIP Code

Contact phone _____

Contact email _____

Uniform claim identifier (if you use one): _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____ / _____ / _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__ __3__ __2__ __1__

---

**7. How much is the claim?**   $_____37,602.44__. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

MONEY LOANED

---

**9. Is all or part of the claim secured?**

☐ No

☑ Yes.   The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☑ Motor vehicle

☐ Other. Describe:   (3) - 2019 INTERNATIONAL LT625

**Basis for perfection:**   SEE ATTACHED

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $_____75,000.00

**Amount of the claim that is secured:**   $_____37,602.44

**Amount of the claim that is unsecured:**   $_____(The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $_____

**Annual Interest Rate** (when case was filed) __8.60__ %

☑ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

---

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No ☐ Yes. *Check one:* |

|  | **Amount entitled to priority** |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

| | |
|---|---|
| The person completing this proof of claim must sign and date it. FRBP 9011(b). If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is. **A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.** | *Check the appropriate box:* ☐ I am the creditor. ☑ I am the creditor's attorney or authorized agent. ☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. ☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt. I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct. I declare under penalty of perjury that the foregoing is true and correct. Executed on date  09/26/2025  MM / DD / YYYY |

**/S/ROBERT ALAN BYRD**
Signature

Print the name of the person who is completing and signing this claim:

| Name | ROBERT ALAN BYRD |
|---|---|
| | First name        Middle name        Last name |
| Title | ATTORNEY FOR MIDLAND STATES BANK |
| Company | BYRD & WISER |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | PO DRAWER 1939 |
| | Number        Street |
| | BILOXI        MS        39533 |
| | City        State        ZIP Code |
| Contact phone | 228-432-8123 | Email | rab@byrdwiser.com |

## LOAN AND SECURITY AGREEMENT

| | |
|---|---|
| Loan Agreement No. **826-202728-006** |  Midland |
| Dated: **April 9, 2024** | Equipment Finance<br>A division of Midland States Bank |

| LENDER AND SECURED PARTY: Midland States Bank | BORROWER AND DEBTOR: Big Level Trucking Inc. |
|---|---|
| 1801 Park 270 Drive, Suite 200<br>St. Louis, MO 63146<br>Phone: 800.648.6517 | 1727 Dummy Line Road<br>Wiggins, MS 39577<br>Type and State of Organization: C Corp, MS<br>Federal Tax ID: 800825234 |

### LOAN TERMS

| PRINCIPAL SUM:<br>$90,500.00 | EQUIPMENT DESCRIPTION:<br>See the attached Exhibit A | COLLATERAL (EQUIPMENT) LOCATION:<br>See the attached Exhibit A | |
|---|---|---|---|
| LOAN PAYMENT AMOUNT: 24 @<br>$4,118.29<br><br>Payments to be made in Arrears | LOAN TERM (in months): 24<br><br>Funding Date: 04/16/2024<br>Commencement Date:<br>04/16/2024 | INTEREST RATE:<br>8.61% | ADVANCE PAYMENT(S):<br>FOR PAYMENT(S): |

This **LOAN AND SECURITY AGREEMENT** (the "**Loan Agreement**") by and between lender as "Lender" and "Secured Party" and borrower as "Borrower" and "Debtor" is entered into as of the above date. Borrower requested Lender make a loan to Debtor and Lender agrees to make such a loan (the "**Loan**") subject to this Loan Agreement and all other documents evidencing and securing this Loan (the "**Loan Documents**"). The words "you" and "your" mean you as Borrower and Debtor and the words "we", "us" and "our" means us as Lender and Secured Party. This Loan Agreement is not effective until executed by an authorized representative of Lender. For valuable consideration, the receipt and sufficiency of which is acknowledged, we as Lender and Secured Party, and you as Borrower and Debtor, agree as follows:

1. **LOAN AGREEMENT DEFINITIONS.**
   a. "**Collateral**" means the Equipment, Software and all general intangibles relating to or arising therefrom, all products thereof and all cash and non-cash proceeds (including insurance proceeds) related thereto.
   b. "**Equipment**" means and includes the personal property and equipment in the Equipment Description above or any schedule attached hereto, all software and/or software licenses acquired in an integrated transaction with the Equipment or acquired principally for use in or otherwise with the Equipment, together with all replacements, parts, repairs, additions, accessions, and accessories incorporated therein or affixed or attached thereto, wherever located and whether now owned or hereinafter acquired, and all proceeds of the foregoing, including, any insurance recoveries.
   c. "**Guarantor**" means any guarantor that executes the below Personal Guaranty or any other guaranty guaranteeing this Loan or any Obligation(s) of Debtor.
   d. "**Obligations**" means (i) this Loan and all your obligations to us under this Loan Agreement; and (ii) all other indebtedness and obligations of you as Debtor to us, of any kind or nature under any lease, loan or similar financing agreement, whether now existing or hereafter arising.

2. **TERMS OF LOAN.**
   a. **Loan Payments.** You as Borrower unconditionally promise to pay to the order of us as Lender the Principal Sum, together with interest at the Interest Rate thereon, in consecutive payments, each in the Loan Payment Amount (each a "Loan Payment") for the entire Loan Term. The above stated Commencement Date for this Loan is the date funds are disbursed under this Loan Agreement. You authorize us to insert or correct the applicable Commencement Date or Funding Date above. The first Loan Payment shall be due on the Commencement Date, if it is stated above that the payments are "made in advance", or if it is stated above that the payments are "made in arrears", then the first Loan Payment shall be due on the date that is one month after the Commencement Date. All subsequent payments are due on the same day of each month thereafter, whether an invoice is rendered, until all amounts due under this Loan Agreement are paid in full and all your obligations are satisfied. All Loan Payment amount(s) include principal and interest, shall be made in immediately available, good and valid funds, in United States lawful currency, at our address stated above, or such other address designated to you in writing. Interest shall be computed at the above stated Interest Rate on a per annum basis (360-day year consisting of twelve 30-day months) and shall accrue on the unpaid Principal Sum beginning on the Funding Date. Upon execution of this Loan Agreement, you will provide to us any Advance Payment(s)(non-refundable) as stated above and we may also charge you costs incurred in the origination of this Loan. If this Agreement is executed by more than one Debtor, the obligations of all Debtors shall be joint and several.
   b. **Application of Payments; Late Fees; Usury.** All Loan Payment Amounts received by us shall be applied: (i) to each Loan Payment(s) then due and outstanding, in order of the most delinquent Loan Payment, and for each such Loan Payment, first to the accrued but unpaid interest, and then, to the Principal Sum thereof; next (ii) to any late fees owed for any due but unpaid Loan Payment(s); next (iii) to any other costs owed Lender; and finally (iv) any remaining balance shall be applied to future Loan Payment(s) in the order due. We may adjust the amount of your final Loan Payment based on a recalculation of the remaining Loan balance to properly reflect the Principal Sum, Interest Rate and resulting yield intended and stated for this Loan. Time is of the essence. We may charge a late fee, not to exceed the greater of either $50.00 or ten percent (10%), of any Loan Payment or other amount not paid within ten (10) days of when due and a fee of $36.00 for each check or draft request returned for insufficient funds or other similar reason(s). Any late charges or other fee(s) hereunder shall not exceed the maximum amount permitted under applicable law, and if any amount (including any interest, late fees, prepayment fees, or other fees) are determined by a court, regulatory agency or other similar authority to be usurious, then such amounts will be reduced to the maximum amount permitted by law. Any excess amounts paid deemed usurious will be applied to your Obligations until fully satisfied and any remaining excess amount(s) refunded.
   c. **Prepayment.** You shall be privileged to prepay the unpaid balance of this Loan before maturity in whole by paying us the unpaid Principal Sum, any accrued but unpaid interest, late charges, and any unamortized expenses incurred by us for the origination of this Loan, as of the prepayment date, plus a prepayment fee equal to 5% of the prepaid Principal Sum if prepayment occurs during months 1 – 12 and 4% during months 13 – 24. You recognize prepayment of the unpaid Principal Sum of this Loan will result in us incurring losses, including investment loss, additional expenses, and an inability to satisfy commitments. You agree it is difficult and impractical to ascertain the exact damage amounts and the above prepayment calculation represents a reasonable estimate of liquidated damages (not a penalty), we could incur.
   d. **Default and Remedies.** In an Event of Default by you under this Loan Agreement, we may exercise any remedies hereunder, at law, or in equity. No failure or delay of us to exercise any right or remedy constitutes a waiver and any partial exercise of a remedy shall not preclude future exercise of any right or remedy. Our books and records as Lender shall be conclusive evidence for purposes of the Loan. You waive presentment, demand, protest, notice of dishonor, notice of protest and further notice of nonpayment of any kind.

3. **TITLE; SECURITY INTEREST.** To secure the Obligations, you as Debtor grant us a continuing lien on, and a valid, perfected and enforceable first priority security interest in, all of your right, title and interest in and to the Collateral pursuant to the Uniform Commercial Code in the state of Illinois (the "UCC"). You authorize us to file any UCC financing statements, amendments, certificates of title or other documents we deem necessary to perfect and protect our security interest and you are responsible for all costs related thereto. You represent and warrant you are the sole owner of the Collateral and hold good title, free of any liens, encumbrances or interests of any kind except for our security interest. You agree not to sell, transfer, or dispose of the Collateral or any interest therein or allow the Collateral to become subject to any liens,

encumbrances or interests of any kind and you shall be responsible for all costs related thereto. You shall deliver to us any documents requested, in a form acceptable to us, to perfect and maintain our first priority security interest in, and related lien on, the Collateral.

4. **COLLATERAL; TAXES.** You will keep the Collateral at the Collateral (Equipment) Location, within the continental United States, and will not remove the Collateral without our prior written consent; except for temporary removal, which may occur in the ordinary course of Debtor's business (such as transport to a job site, motor vehicles, cargo transport, etc.). We may enter your premises during normal business hours to confirm the existence of, and inspect, the Collateral and your business records. At your expense, you will keep the Collateral in good operating order as designed, with manufacturer's recommendations and in compliance with all applicable laws, regulations and insurance requirements. You will furnish any required parts and labor and not make any alterations or additions to the Collateral without our prior written consent. Any additions, modifications, attachments, substitutions or replacements are part of the Collateral. The Collateral will be used solely for business purposes and not for personal or household purposes and will remain, personal property and not a fixture to real estate. If the Collateral is a motor vehicle, you will register and obtain a certificate of title showing us as the owner and us as lienholder in all applicable jurisdictions. You shall not alter any such Collateral registration(s) without our prior written consent. You are liable for, shall pay when due (or reimburse us), and file all tax filings for, all taxes (including sales, use and property taxes), license and registration fees, assessments, penalties, and other charges relating to this Loan Agreement and the Collateral.

5. **RISK OF LOSS; CASUALTY LOSSES.** You bear all risk of loss or damage, theft, loss or destruction to the Collateral, from and after the date the Collateral is delivered to you. You will immediately notify us in writing if any casualty event occurs causing damage, loss, or theft to the Collateral (a "Collateral Loss") and no Collateral Loss relieves you of your Obligations. In the event of a Collateral Loss, you shall either, at our option: (a) place such Collateral in good repair, condition, and working order, (b) replace such Collateral with like and Collateral, that in our sole opinion, is good repair, condition, and working order, free of all liens and encumbrances; provided, you will obtain our prior written consent for such Collateral replacement and cooperate to provide all documents and requirements we deem necessary; or (c) you will pay to us the outstanding Principal Sum of the Loan, together with all accrued but unpaid interest and all outstanding costs due and unpaid hereunder.

6. **INSURANCE.** You agree to keep the Collateral fully insured until all Obligations are fully satisfied, including: (a) general property damage insurance covering the Collateral for its full replacement value, which such amount shall be equal or greater than the amount of this Loan, with us and our successors and assigns named as loss payee; (b) general liability insurance or other similar form of third party liability coverage in an amount determined by us; and (c) any other insurance we may require. All such insurance shall be in amounts, and with insurers, reasonably acceptable to us and we will be provided thirty (30) days prior written notice of any material policy alteration or cancellation. You will provide certificate(s) of insurance or other sufficient evidence as we reasonably request, or we may, but are not obligated to, obtain insurance to protect our interests in the Collateral, at your expense. This insurance may, but is not required to, protect your interests and the cost of this insurance may be more than your own insurance. In addition to the insurance premiums, we may charge interest and/or administrative related fee(s), with such costs added to your obligations hereunder. Nothing hereunder shall create any type of insurance relationship between us and you. You appoint us as your attorney-in-fact, providing us a limited power of attorney to make claims for, receive payment of, and endorse all documents, checks or other drafts for loss, theft, or damage to the Collateral under insurance and you will cooperate with us and/or insurance agents for the procurement of insurance and processing of claims.

7. **INDEMNIFICATION.** You as Debtor agree to indemnify, hold harmless and, upon request, defend us as Lender and Secured Party, and our directors, officers, agents and affiliates, against all claims, directly or indirectly arising out of, or connected with, the Collateral or this Loan Agreement. "Claims" means all losses, liabilities, damages, penalties, expenses, claims or actions, arising out of or relating to your ownership, possession, operation (regardless of where, how, or by whom the Collateral is operated), control, use, condition (including latent and other defects, whether or not discoverable), maintenance, and delivery of the Collateral, or if you are in default, arising out of the condition of the Collateral sold or disposed of after your use. These indemnities and obligations survive and continue in full force and effect notwithstanding termination of this Loan Agreement. You shall pay our reasonable expenses relating to this Loan Agreement or the enforcement thereof.

8. **ASSIGNMENT.** You may not assign or transfer this Loan Agreement and you may not sell, lease, or pledge the Collateral or any interest therein to anyone under any circumstances. We, as Lender and Secured Party, may sell, assign, grant a security interest in or otherwise transfer any of our interests in this Loan Agreement or the Collateral without notice to, or consent by, you. The assignee shall have all rights we assign to them, but none of our obligations, which shall be retained by us. The rights of the assignee will not be subject to any claims, defenses or set-offs you have against us. Upon any such assignment by us, you agree to acknowledge the assignment and remaining Loan Obligations and comply with any directions to the assignee including as to payment and notices. This Loan Agreement shall inure to the benefit of, and is binding upon, the successors or permitted assigns of the parties hereto.

9. **EVENTS OF DEFAULT.** An event of default hereunder (each, an "Event of Default") by you shall exist if any of the following occur: (a) failure by you to pay any amount due hereunder within ten (10) days of when due; (b) the failure by you to perform any covenant or obligation hereunder within thirty (30) days of notice by us; (c) failure by you to perform any covenant or obligation under any Obligation with us as Secured Party or any lease, financing, or other indebtedness with any other lender; (d) you or any Guarantor files, or has filed, a petition for bankruptcy under any federal or state bankruptcy or similar law, becomes insolvent, or has a liquidator or receiver appointed with or without consent; (e) Debtor ceases doing business, is liquidated or dissolved, or if an individual, you or any Guarantor dies; (f) a material adverse change in Debtor's or any Guarantor's financial condition, business, assets has occurred, in our sole discretion, or we as Secured Party deem this Loan or the Collateral insecure for any reason; (g) for this Loan Agreement or any Obligation, a material breach occurs by you, or any representation or warranty you make to us is false, misleading or inaccurate; (h) any judgment against Debtor in excess of $25,000 exists; (i) any lien or encumbrance against, or the making of any levy, seizure or attachment on, the Collateral; (j) the failure of Secured Party to have a perfected first priority security interest in the Collateral; or (k) if a legal entity, you or any Guarantor have: (i) a change in control resulting in fifty percent (50%) or more of your or the Guarantor's ownership or interests changing; (ii) a merger or consolidation with any other legal entity, or (iii) a sale of all or substantially all of your or any Guarantor's assets or business.

10. **REMEDIES.** Upon any Event of Default or thereafter, we may exercise any remedies hereunder, under other agreements, in law or equity, or as a Secured Party under the UCC, and such remedies are not exclusive, and may be exercised separately or concurrently, including, but not limited to: (a) cancellation or termination of this Loan Agreement; (b) acceleration of this Loan and each Obligation(s) to be immediately due and payable by you paying the outstanding Principal Sum of the Loan, together with all accrued but unpaid interest thereon and all outstanding fees and expenses due and unpaid; (c) without notice to, or consent by you, and with or without legal process, we may enter your premises and take possession of the Collateral; (d) require you return the Collateral to us, to our designated location, at your expense; (e) in addition to all other amounts due hereunder, we may charge you costs of enforcement (including attorneys' fees) and interest on all monies due from the Event of Default date, at a default rate equal to the stated Interest Rate above plus 3% (or the maximum rate permitted by law); or (f) we may sell or dispose of the Collateral in compliance with the UCC and other applicable laws. Any such sale proceeds shall be applied to your Obligations and any excess proceeds paid to you. No delay or omission by us to exercise any right or remedy impairs or waives such right or remedy. We may release any obligor, guarantor, or Collateral for the Loan, in whole or in part, without notice to or consent by you, and it does not relieve any of your Obligations. We may, but are not required to, perform certain of your obligations, such as paying taxes, insurance or for maintenance for the Collateral; provided, you are obligated to promptly reimburse us, and no obligation hereunder is relieved. No waiver by us of any default operates as a waiver of any other present or future default.

11. **DEBTOR REPRESENTATIONS, WARRANTIES, AND COVENANTS.** As of the date hereof and during the Loan Term, you represent, warrant and covenant to us that: (a) this Loan Agreement constitutes a legal, valid, and binding obligation, enforceable against you in accordance with its terms; (b) you are able to perform all of your obligations hereunder, including the grant of the security interest; (c) you are not in violation of any law, contract or organizational documents by entering into and performing your obligations hereunder; (d) all financial or other statements you have made are true and correct and you are not insolvent; (e) no consent, approval or giving of notice to any party is required to perform your Obligations; (f) any person signing this Loan Agreement is duly authorized; (g) if a legal entity, your legal entity is as stated above and is duly organized, validly existing and in good standing under the laws of the state above and is duly qualified, in good standing, and authorized to do business where the Collateral is located; (h) your legal name is as stated above, and if an individual, such name is as stated on your valid and unexpired state driver's license, or alternative identification issued by your primary state of residence, and if a legal entity, such legal name is as stated on your organizational documents; (i) you will provide at least thirty (30) days prior written notice if you change your name, legal entity or principal place of business; (j) you authorize us to obtain and use credit bureau reports and other similar inquiries we deem necessary, whether obtained directly by us or indirectly through other lenders or vendors assisting with your financing and purchase of Collateral; (k) you will provide any further credit, financial or business information we require, including current interim or annual financial statements; (l) you irrevocably authorize and direct us to

disburse the Loan proceeds; (m) you are, and will remain, in full compliance with all applicable laws, including that: (i) no person who owns a controlling interest in or otherwise controls you or any Guarantor is, or shall be, (A) listed on the "Specially Designated Nationals and Blocked Person List" maintained by the Office of Foreign Assets Control ("OFAC"), Department of Treasury or any similar lists maintained by agencies under statute, regulation, order or other authority, or (B) a person designated under Sections 1(b), (c) or (d) of Executive Order No. 13224 (September 23, 2001), or any related authority; and (ii) all applicable Bank Secrecy Act laws for the prevention and detection of money laundering violations.

12. **MISCELLANEOUS.**

a. **Entire Agreement; Amendments; Counterparts; Chattel Paper; Enforceability.** This Loan Agreement constitutes the entire agreement for the subject matter hereunder and supersedes all prior oral and written agreements. No modification or amendment of this Loan Agreement shall be binding unless executed in writing by both parties. This Loan Agreement may be executed in one or more counterparts. Unless this Loan Agreement is executed using an electronic signature platform and chattel paper is held in an electronic format, only the counterpart bearing our "wet ink" signature, stamp, or otherwise denoted by us as the original, together with Borrower's copy or counterpart (or copies or counterparts if there is more than one Borrower) will constitute the sole chattel paper original and no security interest in this Loan Agreement may be created through the transfer, possession, or control of any copy or counterpart other than the sole chattel paper original. If any term hereunder is determined by a court, agency or other party with authority to be invalid or unenforceable, such finding shall not affect any remaining terms of this Loan Agreement.

b. **Notices; Electronic Documents.** All notices hereunder must be sent by certified mail or recognized overnight delivery service, postage prepaid, return receipt requested to you at the address stated above or an alternative address provided in writing. This Loan Agreement, any signature page or counterpart thereto, signed and transmitted by facsimile machine, telecopier or other electronic means (including via transmittal of a "pdf" file) shall be deemed an original document that is valid, binding and enforceable. The signature of any person thereto shall be considered an original signature and the document transmitted has the same binding effect as an original signature on an original document. At our request, any facsimile, telecopy or other electronic document shall be provided with a "wet ink" signature and/or manually transmitted in original form by the person(s) who executed the facsimile, telecopy or other electronic document. The parties hereby consent to using such electronic signature(s) and/or electronic transmission of document(s) and intend to be legally bound thereby. No party may raise use of a facsimile, telecopier or other electronic means of delivery, or the fact any signature is electronic, as a defense to enforcement of this Loan Agreement.

c. **Further Assurances; USA Patriot Act.** You hereby authorize us, without notice and in addition to our other rights under this Loan Agreement, to insert or correct missing or incorrect information on this Loan Agreement, including but not limited to any blank or incorrect dates, your proper legal name, business title, serial numbers and any other information describing the Collateral. You will promptly execute and deliver any further documents and take further action as we may request to fulfill the purpose of this Loan Agreement. We hereby provide notice that pursuant to the USA PATRIOT Act (Title III of Pub. L. 107-56, October, 26 2001), we are required to obtain, verify and record information identifying you and any guarantor(s), including names, addresses and information to comply with this law. You and any Guarantor(s) agree to promptly provide documentation complying with obligations under anti-money laundering laws, "know your customer" requirements and the Act.

d. **Governing Law; Jurisdiction/Venue; Jury Trial Waiver.** This Loan Agreement shall be subject to, and governed by, the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each party consents hereto to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes arising under this Loan Agreement and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. **EACH PARTY HERETO IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY. IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR SPECIAL, CONSEQUENTIAL, PUNITIVE OR INDIRECT DAMAGES ARISING OUT OF THIS LOAN AGREEMENT.**

| LENDER AND SECURED PARTY | Midland States Bank | BORROWER AND DEBTOR | Big Level Trucking Inc. |
|---|---|---|---|
| | Print Name: Angelica Rodriguez | | Print Name: Steven Evans |
| | Titles:  Funding QC Specialist | | Titles: President |
| | Authorized Signature: X | | Authorized Signature: X |

**PERSONAL GUARANTY:** Each undersigned guarantor (each a 'Guarantor'), jointly and severally, unconditionally and irrevocably, guarantees the full and prompt payment and performance of Debtor's obligations for the above Loan Agreement and amendments (the 'Loan Agreement'), to which this Guaranty is attached, and any other now existing, or hereafter arising, obligation or indebtedness of Debtor to Lender, its successors, assignees and affiliates (each, an 'Obligation'). This Guaranty is a legal, valid and binding obligation, enforceable in accordance with its terms, and remains in full force and effect until all Obligations are fully satisfied. No obligation of Guarantor can be assigned or delegated, and this Guaranty may only be modified in writing by both parties. This Guaranty is of payment and performance and may be enforced directly against Guarantor without proceeding against Debtor, guarantors or other parties, and without Lender pursuing any other remedy. Guarantor waives any right to require Lender to make presentment or demand for performance, or give any notice of nonperformance, protest, or dishonor. Without notice to, or consent by, Guarantor, Lender may for any Obligation, in its sole discretion, release obligors, guarantors or debtors, modify terms, sell or release collateral, or exercise any right or remedy. Guarantor shall have no right of subrogation, reimbursement, contribution or indemnity with Debtor or any guarantor for any Obligation. **EACH GUARANTOR WAIVES ALL DEFENSES TO THIS GUARANTY.** This Guaranty shall be governed by the laws of the State of Illinois, without regard to the conflict of laws principles thereof. Each Guarantor consents to the jurisdiction of the state courts located in Effingham County in the State of Illinois or the federal courts located in the Southern District of Illinois for resolving disputes arising hereunder and waives any objection it may now or hereafter have to the laying of jurisdiction and venue in such courts. **EACH GUARANTOR IRREVOCABLY WAIVES TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR ANY OBLIGATION.** The terms in 12(b) and (c) of the Loan Agreement as relating to notices, electronic documents, further assurances and the USA Patriot Act shall apply to this Guaranty and Guarantor. Guarantor shall be liable for all costs incurred by Lender in enforcing this Guaranty and this Guaranty is binding upon each Guarantor, its heirs and representatives, in favor of Lender, its assignees and affiliates

| GUARANTOR | Name: Steven Evans |
|---|---|
| | Print Name: Steven Evans |
| | Authorized Signature: X |

| GUARANTOR | Name: Charles Guy Evans JR |
|---|---|
| | Print Name: Charles Guy Evans JR |
| | Authorized Signature: X |

**EXHIBIT A**



Midland
Equipment Finance
A division of Midland States Bank

| Agreement Type: | Loan |
| Agreement No. | 826-202728-006 |
| Dated: | April 9, 2024 |

This EXHIBIT A dated as of April 9, 2024 supplements the above referenced agreement (the "Contract"), by and between Creditor (as lender, creditor or lessor under such Contract) and Obligor (as debtor, lessee or obligor under such Contract).

| Equipment Description | Equipment Location |
|---|---|
| One (1) 2019 International LT625 Tractor VIN: 3HSDZAPRXKN278925 | 1727 Dummy Line Road<br>Wiggins, MS 39577 |
| One (1) 2019 International LT625 6x4 Sleeper Cab VIN: 3HSDZAPR4KN278919 | 1727 Dummy Line Road<br>Wiggins, MS 39577 |
| One (1) 2019 International LT625 6x4 Sleeper Cab VIN: 3HSDZAPR8KN278924 | 1727 Dummy Line Road<br>Wiggins, MS 39577 |

IN WITNESS WHEREOF, the parties hereto have caused this Exhibit A to be duly executed as of the date first set forth above by their authorized representatives.

| CREDITOR | Midland States Bank | OBLIGOR | Big Level Trucking Inc. |
|---|---|---|---|
| | Print Name: Angelica Rodriguez | | Print Name: Steven Evans |
| | Title: Funding QC Specialist | | Title: President |
| | Authorized Signature: X  *Angelica Rodriguez* | | Authorized Signature: X |

ExhibitA_082022

# CERTIFICATE OF TITLE

## STATE OF MISSISSIPPI

Form # 79-001

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 3HSDZAPR4KN278919 | INTL | 2019 | LT625 | DS | MS0850065408 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 10/04/2018 | 09/11/2018 | 6 | NEW | TK | EXEMPT |

**OWNER(S)**

BIG LEVEL TRUCKING, INC.
1727 DUMMY LINE RD
WIGGINS MS 39577-8182

**BRANDS**

**1ST LIENHOLDER**

MIDLAND STATES BANK
7700 BONHOMME AVE STE 300
CLAYTON MO 63105-0032

**DATE:** 09/11/2018

**2ND LIENHOLDER**

**DATE:**

**MAIL TO**

‖⸗‖‖‖‖⸗⸗‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖   T6

MIDLAND STATES BANK
7700 BONHOMME AVE STE 300
CLAYTON  MO 63105-0032



LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

**1ST LIEN** _____  **BY** _____
                        (LIENHOLDER)                                            (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ **20** _____

**2ND LIEN** _____  **BY** _____
                        (LIENHOLDER)                                            (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ **20** _____



IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE **4TH**   DAY OF **OCTOBER**   20 **18**

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

**CONTROL NUMBER**

O 00?95430

**MISSISSIPPI DEPARTMENT OF REVENUE**

*Herb Frierson*

**VOID IF ALTERED**

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

## ORIGINAL

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 3HSDZAPR8KN278924 | INTL | 2019 | LT625 | DS | MS0349799424 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 11/14/2018 | 09/11/2018 | 6 | NEW | TK | EXEMPT |

**OWNER(S)**

BIG LEVEL TRUCKING, INC.
1727 DUMMY LINE RD
WIGGINS MS 39577-8182

**BRANDS**

**1ST LIENHOLDER**

MIDLAND STATES BANK
7700 BONHOMME AVE STE 300
CLAYTON MO 63105-0032

**DATE:** 09/11/2018

**2ND LIENHOLDER**

**DATE:**

**MAIL TO**

MIDLAND STATES BANK
7700 BONHOMME AVE STE 300
CLAYTON MO 63105-0032



LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

1ST LIEN _____ BY _____
(LIENHOLDER) (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 _____

2ND LIEN _____ BY _____
(LIENHOLDER) (SIGNATURE AND TITLE)

THIS _____ DAY OF _____ 20 _____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE **14TH** DAY OF **NOVEMBER** 20 **18**

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered by this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

CONTROL NUMBER

○ 00887886

MISSISSIPPI DEPARTMENT OF REVENUE

*Herb Frierson*

**VOID IF ALTERED**

# CERTIFICATE OF TITLE

Form # 79-001

## STATE OF MISSISSIPPI

**ORIGINAL**

| VEHICLE IDENTIFICATION NUMBER | MAKE | YEAR | MODEL | BODY | TITLE NUMBER | TITLE TEXT (E.G. UNIT #) |
|---|---|---|---|---|---|---|
| 3HSDZAPRXKN278925 | INTL | 2019 | LT625 | DS | MS0392583168 | |

| TITLE DATE | DATE OF FIRST SALE FOR USE NEW ONLY | NO. CYL | NEW/USED | TYPE OF VEHICLE | ODOMETER - NO TENTHS |
|---|---|---|---|---|---|
| 10/04/2018 | 09/17/2018 | 6 | NEW | TK | |

EXEMPT

**OWNER(S)**

BIG LEVEL TRUCKING, INC.
1727 DUMMY LINE RD
WIGGINS MS 39577-8182

**BRANDS**

**1ST LIENHOLDER**

MIDLAND STATES BANK
7700 BONHOMME AVE
CLAYTON MO 63105-1960

**DATE:** 09/17/2018

**2ND LIENHOLDER**

**DATE:**

**MAIL TO**

T6

MIDLAND STATES BANK
7700 BONHOMME AVE
CLAYTON MO 63105-1960



LIEN SATISFACTION: THE UNDERSIGNED HOLDER OF ABOVE DESCRIBED LIEN(S) ON THE MOTOR VEHICLE DESCRIBED HEREON HEREBY ACKNOWLEDGES SATISFACTION THEREOF.

**1ST LIEN** _____   **BY** _____
(LIENHOLDER)                                   (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ 20_____

**2ND LIEN** _____   **BY** _____
(LIENHOLDER)                                   (SIGNATURE AND TITLE)

**THIS** _____ **DAY OF** _____ 20_____

IN WITNESS WHEREOF I HAVE HEREUNTO SET MY HAND THIS

THE **4TH** DAY OF **OCTOBER** 20 **18**

The Mississippi Department of Revenue hereby certifies that on application duly made, the person named herein is registered to this office as the lawful owner of the vehicle described subject to the liens or security interests as may subsequently be filed with the Mississippi Department of Revenue. This certificate of title is issued pursuant to the Mississippi Motor Vehicle Title Law Section 63-21-1, Mississippi Code of 1972, and subject to the provisions thereof.

**CONTROL NUMBER**

○ 00795431

**MISSISSIPPI DEPARTMENT OF REVENUE**

*Herb Frierson*

**VOID IF ALTERED**

## POWER OF ATTORNEY (VEHICLES)

| | AGENT | | GRANTOR | |
|---|---|---|---|---|
| | Wolters Kluwer Lien Solutions (as agent on behalf of Midland States Bank) | | | Big Level Trucking Inc. |
| | 187 Wolf Road, Suite 101 | | | 1727 Dummy Line Road |
| | Albany NY 12205 | | | Wiggins, MS, 39577 |
| | | | | Phone: 6019283770 |
| | Printed Name of Authorized Person for Agent / Attorney in Fact: | | | Contact: Steven Evans |
| | Signature of Authorized Person for Agent / Attorney in Fact: | | | |

Agreement No. 826-202728-006, dated April 9, 2024 by and between Midland States Bank and Big Level Trucking Inc. ("Obligor") (the "Agreement"). Vehicle Description(s) or VIN(s) (the "Vehicle(s)"):

3HSDZAPRXKN278925

3HSDZAPR4KN278919

3HSDZAPR8KN278924

The party identified in the box above as Grantor ("Grantor"), does hereby appoint Wolters Kluwer Lien Solutions (appointed as agent on behalf of Midland States Bank), or any officer, employee, contractor or designee of agent (herein "Agent"), as stated above, as its attorney-in-fact, with full power of substitution, and hereby authorizes and empowers Agent, in the name, place and stead of Grantor, to take the following actions and to do the following things from time to time with respect to the Vehicle(s) described above or on any schedule attached hereto, as related to the specific Agreement(s) and Obligor(s) stated above , for the purpose of enabling Agent in the name of Grantor to do any and all of the following:

1.    To take any and all actions and to do any and all things necessary or desirable in all matters pertaining to the titling or registration, sale or transfer of ownership or recording of a lien (including into the name of Agent), or applying for an original or duplicate certificate of title to the Vehicle(s), or any other similar forms or documents in the name and stead of Grantor in connection therewith;

2.    To delegate said power of attorney to any person it deems appropriate, but only for the limited purposes set forth herein; and

3.    To do and perform all acts necessary to carry into effect and exercise the rights and powers granted by this Power of Attorney as fully as Grantor might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for.

This Power of Attorney shall be effective from and after the date hereof, is coupled with an interest and is irrevocable. THIS POWER OF ATTORNEY CANNOT BE CANCELLED BY GRANTOR. Any third party may at any and all times hereafter rely upon this document as the Agent's authority to continue to exercise the rights and powers herein granted.

Grantor executes this Power of Attorney as of the date set forth above, with the intent to be legally bound hereby.

GRANTOR: Big Level Trucking Inc.

By:

Name:    Steven Evans

Title:    President

State of Mississippi
County of Stone

Subscribed and sworn to before me, a Notary Public in and for said County and State, by the foregoing individual who is personally known to me, or who proved to me on the basis of satisfactory evidence to be the person who appeared before me, who, being informed of the contents hereof, as a representative of Grantor and with full authority, executed the same voluntarily for and as the act of the Grantor.

Notary Public Signature

[SEAL]

STATE OF MISSISSIPPI
NOTARY PUBLIC
ID# 115761
AMANDA BIANCHINI
Commission Expires
March 23, 2028
HARRISON COUNTY

**TITLED EQUIPMENT AGREEMENT AND ACKNOWLEDGMENT — CUSTOMER**

**Midland**
Equipment Finance
A division of Midland States Bank

Agreement No.     826-202728-006
Dated:     April 9, 2024

**Name and Address of Customer:**
Big Level Trucking Inc.
1727 Dummy Line Road
Wiggins, MS 39577

**Equipment Description:**     See the attached Exhibit A

The Equipment must be titled if your state or jurisdiction requires titling, as follows:

**Lienholder Name and Address:**
Midland States Bank
1801 Park 270 Drive, Suite 200
St. Louis, MO 63146

**Owner Name and Address:**
Big Level Trucking Inc.
1727 Dummy Line Road
Wiggins, MS 39577

**PLEASE NOTE:  The legal name of the Customer must be used on all title applications or documentation submitted to the State for titling purposes.**

If there are multiple customer(s) as co-borrowers for the Equipment, then any certificate(s) of title must include at least one of the customer's name(s), which shall name such customer/co-borrower as Owner.

**Party Responsible to submit title work to state (check the box next to the applicable option):**

☐     Customer          ☐     Titling Agency

☐     Dealer or Vendor          ☐     Equipment does not require titling at time of commencement (MSO must be forwarded to Lessor)

**Contact Information for Titling Party:**

Name:_____

Street Address:_____

City:_____ State:_____ Zip Code:_____

Direct Phone Number:_____ Fax Number:_____

E-mail Address:_____

**PLEASE NOTE:  If you are in one of the Electronic Titling States identified on the attached Exhibit A you are required to supply the appropriate ELT Identifier to your registration office.**

If your state or jurisdiction requires titling or registration of the equipment described above at any time during the term of the agreement by signing below, Customer hereby represents, warrants, agrees and unconditionally guarantees that Customer (1) has the absolute and unconditional right, title, and interest to transfer ownership and any lienholder interest in the above described Equipment; (2) shall title the Equipment as set forth in this agreement; (3)  is responsible for ensuring the Titling Party designated above will apply for title(s) immediately upon disbursement of funds by Midland States Bank for the above stated Contract and related Equipment, even if Customer is not directly submitting title work to the state; (4) has confirmed that the current party holding the original title(s) or Certificate(s) of Origin for the titled equipment referenced above will deliver such documents to the designated Titling Party within ten business (10) days of the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; (5) shall ensure Titling Party agrees to send a copy of the processed title application receipt as endorsed by the applicable State to the address set forth below within thirty (30) business days after the disbursement of funds by Midland States Bank for the above stated Contract and related Equipment; and (6) hereby agrees to indemnify, defend, and hold Midland States Bank harmless for any claims, losses, liabilities, costs, or expenses arising between the date of disbursement of funds by Midland States Bank for the above stated Contract and any related Equipment, and the date of full satisfaction of all obligations and agreements of Customer hereunder, which occur as a result of: (i) Customer's breach of, or delay or failure relating to, any representation, warranty, covenant, or agreement in the Contract or in this agreement; or (ii)  the creation or imposition of any intervening rights, interests, or liens with respect to the Equipment, including but not limited to, any liens by third parties or other creditors, mechanics liens, storage liens, or other similar liens.

**In addition to any rights and remedies contained in the Contract, failure to satisfy the titling and registration requirements within 90 days of disbursement of funds by Midland States Bank for stated Contract and related Equipment will result in a Title Delinquency Fee in the amount of $500.00 per month plus any other direct costs incurred by Midland States Bank to be billed and due monthly until satisfactory completion of titling or registration of the Equipment.**

Midland States Bank
Attn: Funding Department
1801 Park 270 Drive, Suite 200, St. Louis, MO 63146

Customer: Big Level Trucking Inc.

By:   _____

Steven Evans, President

TitleGuarantyCustomer_082022

**EXHIBIT A TO TITLED EQUIPMENT AGREEMENT AND ACKNOWLEDGMENT — CUSTOMER**



Midland
Equipment Finance
A division of Midland States Bank

Agreement No.     826-202728-006
Dated:            April 9, 2024

| Electronic Titling States | ELT Identifier |
|---|---|
| Arizona | 370259550 |
| California | GTB |
| Colorado | E370259550002 |
| Florida | 254854815 |
| Georgia | 1115911540 |
| Idaho | 37-0259550 |
| Indiana | 3702595500001 |
| Iowa | 3702595501 |
| Kansas | 370259550 |
| Louisiana | ECMH |
| Maryland | 8178 |
| Massachusetts | C 40968 |
| Michigan | LH049838 |
| Nebraska | 40147444 |
| Nevada | MZ0096 |
| New York | 79811 |
| North Carolina | 36470741 |
| Ohio | E10427 |
| Pennsylvania | 37025955002 |
| South Carolina | 370259550 |
| South Dakota | 370259550 |
| Texas | 37025955000 |
| Virginia | MSB13 |
| Washington | MAB |
| West Virginia | DA0234WV |
| Wisconsin | 129168 |

*New Jersey Corporate Code: 566830074624010

ExhibitAtoTitleGuarantyCustomer_122023