IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN
DISTRICT OF MISSISSIPPI,
SOUTHERN DIVISION

IN RE:

| | |
|---|---|
| **BIG LEVEL TRUCKING, INC.** | **CASE NO: 25-51204-KMS** |
| **Debtor** | **Chapter 11** |

### BANK OF WIGGINS' MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND ABANDONMENT OF PROPERTY OF THE ESTATE OR ALTERNATIVELY FOR ADEQUATE PROTECTION

Bank of Wiggins ("the Bank"), in accordance with 11 U.S.C. §§ 361, 362 and 554(b), Federal Rules of Bankruptcy Procedure 4001 and 6007 and Local Rule 4001-1 and 6007-1, hereby files this it's Motion for Relief from the Automatic Stay and Abandonment of Property of the Bankruptcy Estate or, alternatively, for Adequate Protection (the "Motion"), and in support thereof, respectfully represents as follows:

### JURISDICTION AND VENUE

1.  This Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

### BACKGROUND

2.  On August 18, 2025, (the "Petition Date"), Big Level Trucking, Inc (the Debtor" or "BLT") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Mississippi, Southern Division (the "Bankruptcy Court").  No Trustee or unsecured creditors' committee has been appointed, and the Debtor continues

to operate as a debtor-in-possession under 11 U.S.C. §§ 1107 and 1108 of the Bankruptcy Code.

3. On July 30, 2025, the Debtor was indebted to the Bank in the amount of One Million Five Hundred Twenty-Four Thousand Four Hundred Ninety-Eight and 51/100 Dollars ($1,524,498.51) (the "Indebtedness") and, being so indebted, executed a Promissory Note (the "Note") for account number xxxx5100 in that amount dated July 30, 2025, by which the Debtor promised to repay the Indebtedness to the Bank. The Note states, *inter alia*, as follows:

> **PROMISE TO PAY. BIG LEVEL TRUCKING, INC. ("Borrower") promises to pay the Bank of Wiggins ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Five Hundred Twenty-four Thousand Four Hundred Ninety-eight & 51/100 Dollars ($1,524,498.510 or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance, calculated as described in the "INTEREST CALCULATION METHOD" paragraph using an interest rate of 9.000%. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate may change under the terms and conditions of the "INTEREST AFTER DEFAULT" section.**
>
> \* \* \*
>
> **PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all unaccrued interest on July 30, 2026. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning August 30, 2025, with all subsequent interest payments to be due on the same day of each month after that.
>
> \*\*\*
>
> **DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:
>
> \* \* \*
>
> **Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.
>
> \* \* \*

A true and correct copy of the Note is attached hereto as Exhibit "A."

4.   Also on July 30, 2025, and as security for the Note, the Debtor executed a Commercial Security Agreement (the "CSA"), granting the Bank a first-priority security interest in, and lien upon, seventy-seven (77) units including Dump Trailers, Flatbed Trailers, Curtain Side Trailers, Bulk Trailers, Lowboy Trailers, Van Trailers, Cattle Trailers, Peterbilt Trucks and International Trucks (the "Vehicular Collateral"). The CSA includes an itemized list identifying each unit of the Vehicular Collateral by Year, Make/Model and VIN. In addition, the Debtor's CSA granted the Bank a security interest in the following:

(A) All attachments, accessories, replacements of and additions to any of the collateral described herein, whether added now or later;
(B) All products and produce of any of the property described in this collateral section;
(C) All accounts, general intangibles, instruments, rents, monies, payments and all other rights arising out of a sale, lease, consignment or other disposition of any of the property described in this collateral section;
(D) All proceeds (including insurance proceeds) from the sale, destruction, loss or other disposition of any of the property described in this collateral section, and sums due from a third party who has damaged or destroyed the collateral or from that third party's insurer, whether due to judgment, settlement or other process;
(E) All records and data relating to any of the property described in this collateral section . . . .

The above along with the Vehicular Collateral is collectively the "Collateral".

5.   The Bank perfected its security interest in and lien upon the Collateral by having its interest noted on the Certificates of Title for the Vehicular Collateral. A true and correct copy of the CSA is attached hereto as Exhibit "B." True and Correct copies of the Certificates of Title are attached hereto as Exhibit "C".

6.   The Debtor has made no pre-petition payments to the Bank on the Note. Less than a month after securing the loan from the Bank, the Debtor filed its Voluntary

Chapter 11 petition. The Debtor has made no post-petition payments to the Bank on the Note.

7.   As of the Petition Date, the outstanding balance on the Note was not less than $1,524,498.10 plus interest, attorneys' fees, costs and expenses. (the "Prepetition Indebtedness").

8.   As of the Petition Date, the Debtor was in default of its obligations to the Bank under the Note.

9.   The Bank is the legal and rightful owner of the Note, the CSA and other applicable loan documents, and the Bank has performed all of its obligations and conditions precedent to enforce the Note, the CSA and other applicable loan documents.

## ARGUMENT

10.   Section 362(d) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
(1) for cause, including the lack of adequate protection on an interest in property of such party in interest; [or]
(2) with respect to a stay of an act against property under subsection (a) of this section, if –
    (A) the debtor does not have an equity in such property; and
    (B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d).

11.   The Bankruptcy Code does not define "cause" and the Fifth Circuit has noted that "this lack of definition affords 'flexibility to the bankruptcy courts." *Bonneville Power Admin. V. Mirant Corp. (In re Mirant Corp.),* 440 F.3d 238, 253 (5th Cir. 2006)(quoting *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1079 (5th Cir. 1986). Moreover, the party seeking relief

4

from the automatic stay need only establish a factually and legally sufficient basis for relief in order for the burden to shift to the debtor to demonstrate its entitlement for stay continuation. 11 U.S.C. § 362(g); *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd. (In re Timbers of Inwood Forest Assocs., Ltd)*, 793 F.2d 1380, 1388 (5th Cir. 1986).

12. Cause exists to terminate the Automatic Stay with respect to the Bank's Collateral. In its **Schedule D: Creditors Who Have Claims Secured by Property** [ECF. 88], the Debtor assets that the Collateral pledged as security for the Bank's loan has a value of $1,087,500.00 as of the Petition Date. With a Prepetition Indebtedness of not less than $1,524,498.51, it follows that the Debtor has no equity in the Collateral. Accordingly, the Bank's interest in its Collateral is not adequately protected.

13. The Debtor continues to use the Collateral in the operations of its business as a Debtor in Possession and the Collateral continues to decline in value.

14. Moreover, because the Debtor has yet to proffer a Chapter 11 Plan and Disclosure Statement, and based on the Debtor's disclosures and proceedings in this chapter 11 case so far, the Bank is of the belief that the Debtor has no reasonable hope of an effective reorganization – obviating any alleged necessity for the Collateral.

15. Alternatively, and in accordance with 11 U.S.C. §§ 361 and 362, the Bank requests that the Bankruptcy Court order that the Debtor make Adequate Protection payments in an amount sufficient to cover the decline in value of the Collateral while the automatic stay remains in place.

16. The Bank requests that the 14-day stay prescribed by Bankruptcy Rule 4001(a)(3) be waived and that the order granting this Motion be effective immediately upon entry.

17. The Bank reserves its right to raise additional arguments at a Bankruptcy Court scheduled hearing on this Motion.

**WHEREFORE**, The Bank prays that this Court will enter an Order GRANTING the relief requested herein and granting such other and further relief as deemed just and proper in the circumstances.

Respectfully submitted this 3rd day of February 2026.

                                                BANK OF WIGGINS

                                                By:   */s/ Paul S. Murphy*
                                                        Paul S. Murphy (MB # 101396)

                                                *ITS COUNSEL*

OF COUNSEL:

BUTLER SNOW LLP
1300 25th Avenue, Suite 204
P.O. Drawer 4248
Gulfport, MS  39502
(T):  (228) 864-1170
(F):  (228) 868-1531
paul.murphy@butlersnow.com

**CERTIFICATE OF SERVICE**

I, Paul S. Murphy, do hereby certify that I have this date electronically filed the foregoing document with the Clerk of the United States Bankruptcy Court for the Southern District of Mississippi using the electronic case filing systems ("ECF") of the Court, which ECF system sent a "Notice of Electronic Filing" to all parties and participants who by rule have consented to accept the Notice as service of this document by electronic means, including the following:

Craig M. Geno, Attorney for the Debtor

Christopher J. Steiskal, Sr., Attorney for the Debtor

Abigail M. Marbury, Attorney for the United States Trustee

Office of the United States Trustee for Region 5

DATED this 3rd day of February 2026.

By: */s/ Paul S. Murphy*
PAUL S. MURPHY

99416655.v1