# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **IN RE:** | **BIG LEVEL TRUCKING, INC.** | **CHAPTER 11** |
| | **Debtor** | **CASE NO. 25-51204-KMS** |

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic transmission and/or U.S. Mail, postage prepaid, a true and correct copy of the *Order and Notice for Hearing on Disclosure Statement* [**DK #430**], the *Disclosure Statement* [**DK #420**], and the *Plan of Reorganization* [**DK #421**] (copies of which are attached hereto as Exhibit "A"), to all creditors and parties-in-interest as listed on the matrix on file with the Clerk of the Court (a copy of which is attached hereto as Exhibit "B").

THIS, the __24th__ day of March, 2026.

_____
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Plan, DS\COS - DS, Plan 3-20-26.wpd



**SO ORDERED,**

Judge Katharine M. Samson
United States Bankruptcy Judge
Date Signed: March 19, 2026

**The Order of the Court is set forth below. The docket reflects the date entered.**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

**IN RE:**

**BIG LEVEL TRUCKING, INC.**                    **CASE NO. 25-51204-KMS**

**DEBTOR.**                                             **CHAPTER 11**

### ORDER AND NOTICE FOR HEARING
### ON DISCLOSURE STATEMENT

To the debtor, its creditors, and other parties in interest:

A disclosure statement (Dkt. #420) and a plan (Dkt. #421) under chapter 11 of the U.S. Bankruptcy Code having been filed by the debtor on March 13, 2026,

IT IS ORDERED AND NOTICE IS HEREBY GIVEN that:

1. The hearing to consider the approval of the disclosure statement shall be held at the U.S. Bankruptcy Court for the Southern District of Mississippi, Bankruptcy Courtroom, 7th Floor, Dan M. Russell, Jr. U. S. Courthouse, 2012 15th Street, Gulfport, Mississippi, on May 7, 2026 at 1:30 PM.

2. April 30, 2026 is fixed as the last day for filing and serving written objections to the disclosure statement in accordance with Fed. R. Bankr. P. 3017(a). Any party objecting to the adequacy of the information contained in the disclosure statement shall submit such objection to the Clerk of the Court and also shall serve a copy thereof upon the debtor's attorney, Craig M. Geno, 601 Renaissance Way, Suite A, Ridgeland, MS 39157. Attorneys and other registered users of the Case Management/Electronic Case Filing (CM/ECF) system shall file any

# EXHIBIT "A"

such objection electronically.  Miss. Bankr. L.R. 5005-1(a)(2)(A).  Those granted an exception from mandatory electronic filing shall submit any such objection to the Clerk of the Court, U.S. Bankruptcy Court, 501 East Court Street, Suite 2.300, Jackson, MS 39201.  Miss. Bankr. L.R. 5005-1(a)(2)(B).  A corporation, partnership, trust, or other business entity, other than a sole proprietorship, may appear and act in U.S. Bankruptcy Court only through a licensed attorney. Miss. Bankr. L.R. 9010-1(b)(2)(C).

3. Within 5 days after entry of this order and notice, the disclosure statement and plan shall be distributed with a copy of this order and notice by the debtor's attorney in accordance with Fed. R. Bankr. P. 3017(a).  A certificate of service shall be filed with the Clerk of the Court within 7 days of compliance with this requirement.

4. Requests for copies of the disclosure statement and plan shall be mailed to the debtor through counsel, Craig M. Geno at 601 Renaissance Way, Suite A, Ridgeland, MS 39157.

##END OF ORDER##

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:    BIG LEVEL TRUCKING, INC.           CHAPTER 11

          DEBTOR(S)                 CASE NO. 25-51204-KMS

## DISCLOSURE STATEMENT

### INTRODUCTION

Debtor Big Level Trucking, Inc. (the "Debtor" or the "Debtor-in-Possession") filed a Voluntary Petition for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Mississippi on August 18, 2025, (the "Petition Date").

The Debtor provides this Disclosure Statement to all of the known Creditors in this case in order to disclose information deemed by the Debtor to be material, important and necessary for the Creditors to arrive at a reasonably informed decision in exercising rights to vote for acceptance of the Plan of Reorganization (the "Plan") filed contemporaneously herewith.

This Disclosure Statement has been prepared by, and is submitted by and on behalf of, the Debtor. The Disclosure Statement must be approved by the Court, after notice and a hearing, prior to solicitation of acceptances for the Plan.

The information contained in this Disclosure Statement is made as of the date hereof, unless another time is specified. Neither the delivery of this Disclosure Statement, nor any exchange of rights and information made in connection herewith, nor any act in reliance hereon, should create under any circumstances an implication that there has not been a change in the facts underlying the statements set forth herein.

---

No representations concerning the Debtor, the extent of its liabilities, the value of its properties and assets, or the value of any distributions offered to holders of Claims or investor interests in connection with the Plan, are authorized except as specifically denominated in this Disclosure Statement.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained herein will constitute an admission of any fact or liability, or be admissible in any proceeding involving the Debtor or any other party, or be deemed to be advice on the tax or other legal effects of the Plan.

### EXPLANATION OF CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. The formulation and confirmation of a reorganization plan are the primary goals of a Chapter 11 case. A reorganization plan is the vehicle for satisfying, to the extent possible, the Claims against and interests in the Debtor.

Holders of Claims and interests whose Claims or interests are impaired by the Plan are afforded the opportunity to vote to accept or reject the Plan. A class of Claims or interests is impaired if the Claims or interests constituting that class are not paid in full or if the Claims or interests are affected by the Plan. The Bankruptcy Court will determine whether the impaired classes have accepted the Plan by determining whether sufficient acceptances have been received from the holders of Claims in such classes. An impaired class of Claims will be determined to have accepted the Plan if the holders of Allowed Claims in that class casting votes in favor of the Plan (i) hold at least two-thirds ($^2/_3$) in amount of the Allowed Claims of the holders in such class who actually vote on the Plan and (ii) comprise more than one-half ($\frac{1}{2}$) the number of holders of the Allowed Claims in such class who actually vote on the Plan.

-2-

The vote of the class binds all members of the class. Thus, if a class votes to accept the Plan, the provisions of the Bankruptcy Code designed to protect rejecting classes cannot be invoked even by members of that class who voted to reject the Plan. Conversely, if a class rejects the Plan, the member of such class who voted to accept the Plan will be deprived of the benefits of the Plan if not confirmed. Each subclass is treated as a separate class for voting purposes.

The Bankruptcy Code does not require that every class of Claims and interests vote in favor of the Plan. The Plan, however, must be accepted by at least one class of holders of Claims or interests impaired under the Plan. The Bankruptcy Court may confirm the Plan notwithstanding the rejection of the Plan by one or more classes of Claims or interests in what is inelegantly referred to as a "cram-down." The criteria under which the Bankruptcy Court may confirm the Plan over the objection of one or more classes of Claims or interests are set forth in Section 1129(b) of the Bankruptcy Code and, among other requirements, include the requirement that the Bankruptcy Court find, with respect to each class that does not accept the Plan, that the Plan does not discriminate unfairly against such class, that the Plan is fair and equitable as to such class, and that the value or benefits to be distributed to the members of such class will not be less than the members of that class would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. The treatment proposed by the Debtor for certain holders of Claims not accepting the Plan is detailed in another article of the Plan.

The Debtor believes that the Plan as proposed satisfies all of the statutory requirements imposed by Section 1129 of the Bankruptcy Code. Any objections to the Plan filed and prosecuted by a party-in-interest, however, may prevent or delay Confirmation if the Court allows the objection, or appeals of a denial of an objection are pursued.

# ARTICLE I
## DEFINITIONS

Unless otherwise defined, the capitalized terms contained in this Disclosure Statement shall have the same meanings as described in the Plan. All capitalized terms used in this Disclosure Statement not defined herein or in the Plan, but which are defined in the Bankruptcy Code, shall have the respective meanings ascribed in the Bankruptcy Code. All capitalized terms used but not defined in this Disclosure Statement, in the Plan or in the Bankruptcy Code shall have the respective meanings ascribed in the Bankruptcy Rules.

1. **"Allowed Claim"** means, as against the Debtor:

    a. A Claim that has been allowed by Final Order of the Bankruptcy Court, or

    b. A Claim (i) scheduled as liquidated, undisputed and non-contingent by the Debtor in its Schedules as they may be restated, amended or supplemented, or (ii) timely filed with the Clerk of the Bankruptcy Court against which either there has been no objection made to the allowance thereof within the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or a Final Order of the Bankruptcy Court, or which has been allowed in whole or in part by a Final Order of the Bankruptcy Court after either an objection to the Claim or an amendment of the Schedules.

2. **"Allowed Secured Claim"** means the Allowed Claim of a Secured Creditor to the extent that it is secured by a lien on property in which the Debtor has an interest as provided in Sections 506(a) and (b) of the Bankruptcy Code.

25-51204-KMS Dkt 439 Filed 03/24/26 Entered 03/24/26 18:32:19 Page 5 of 43

3. "**Bankruptcy Code**" or "**Code**" means Title 11 of the United States Code, as amended and effective in the Southern District of Mississippi on the Petition Date and includes, where applicable, the Bankruptcy Rules then in effect.

4. "**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over this Chapter 11 case and any and all proceedings therein.

5. "**Claim**" is defined in Bankruptcy Code Section 101(5).

6. "**Closing**" means the consummation of the transactions contemplated by the Plan.

7. "**Confirmation**" means the date the Court enters an order confirming the Plan.

8. "**Creditor**" is defined in Bankruptcy Code Section 101(10).

9. "**Debtor**" or "**Debtor-in-Possession**" means Big Level Trucking, Inc.

10. "**Effective Date of the Plan**" or "**Effective Date**" means ninety (90) days after the order confirming the Plan of Reorganization in this Chapter 11 case becomes final and non-appealable.

11. "**Final Order**" means any order of the Court which is no longer subject to appeal or review.

12. "**Fully Secured Creditor**" means any Secured Creditor designated as such in the Disclosure Statement whose Allowed Claim is less than the value of the collateral securing its Claim.

13. "**Partially Secured Creditor**" means any Secured Creditor designated as such in this Disclosure Statement whose Allowed Claim is greater than the value of the collateral securing its Claim.

14. "**Petition Date**" means the date of the filing of the Debtor's petition which was August 18, 2025.

15. "**Plan**" means a Plan of Reorganization filed by the Debtor and as it may be modified, reinstated and amended from time to time.

16. "**Pro-Rata**" means the same proportion that a Claim or an Allowed Claim in a particular class bears to the aggregate amount of all Claims or Allowed Claims in said class.

17. "**Reorganized Debtor**" or "**Debtor-in-Possession**" means the Debtor and this Chapter 11 case after Confirmation and Closing.

18. "**Schedules**" means the Statement of Financial Affairs and the Schedules of debts and assets filed by the Debtor with the Bankruptcy Court in this case, as amended, reinstated or supplemented from time to time.

19. "**Secured Claim**" means an Allowed Claim for which property of the Debtor or the Debtor's estate serves as security or collateral.

20. "**Secured Creditor**" means those Creditors which possess valid and perfected liens against any assets of the Debtor, including, but not limited to, Fully Secured Creditors and Partially Secured Creditors.

21. "**Unsecured Claim**" means an Allowed Claim for which no property of the Debtor or the Debtor's estate serves as security or collateral.

22. "**Unsecured Creditor**" means a person, corporation, partnership or other entity that holds an Unsecured Claim against the Debtor.

25-51204-KMS   Dkt 439   Filed 03/24/26   Entered 03/24/26 18:32:19   Page 6 of 43

## ARTICLE II
## DESCRIPTION OF THE DEBTOR

### A.    History and Background

Headquartered in Wiggins, Mississippi, the Debtor is actually named after a small community just a few miles to our east—a broad expanse of fertile farmland once covered in pine trees near the Mississippi Gulf Coast. The Debtor's name is very appropriate because it reflects both the Debtor's local roots and its commitment to exceptional service. The Debtor is a fourth-generation family business that was originally founded by Guy Harper Evans in the 1930s as a timber logging and hauling operation. The business was carried forward through many decades of change by Charles "Dink" Evans and his wife, Joyce, who gradually diversified into commercial trucking in 1979 and diminished logging operations through the early 2000s.

In 2012, the Debtor was launched by brothers Steven and Chuck Evans with about 15 trucks to focus on over-the-road truckload freight. Don Mattocks was brought on in 2018 as a partner and executive to help drive the business forward. Since then, the Debtor has grown from about 30 tractors to 200 tractors and over 400 trailers by focusing on excellent performance and strong customer relationships.

Although the Debtor has grown quickly in recent years, it has done it with one truck, one driver, and one customer at a time while maintaining a family culture. The Debtor remains focused on sustainable growth in service of our customers, drivers and employees.

After a boom during the COVID pandemic, the transportation industry experienced an historic downturn starting in 2022 that continues through today. While most industry leaders expected to see improvements in transportation at the beginning of 2025, that has not happened yet. Perhaps related to tariff uncertainties, demand and prices for transportation services remain

-7-

depressed, and capacity (i.e., trucks and trailers) continues to leave the market as companies go out of business or contract.

Despite these industry headwinds, the Debtor has recently seen improvement in its financials as a result of strengthening existing customer accounts, improving efficiency, and controlling costs. While market rates as a whole remain unchanged and historically low, the Debtor has grown our higher paying contract customer base and reduced our dependency on the secondary "spot" market and wholesale freight companies/brokers.

As the Debtor continues to look for higher paying direct freight opportunities, we also focused on cutting our Cost of Sale numbers early last year and then started working on reducing expenses. Our Board of Directors made some very difficult decisions the second half of last year that included requesting the retirement of an executive and owner due to poor performance in our maintenance and repair operations. Since then, we have saved approximately $65,000 per week, and the Debtor feels there are more opportunities in this area. The Debtor has also aggressively managed the cost of third-party services, including lease and financing expenses. Current initiatives aimed at further reducing costs include continued improvement of operational/dispatch efficiency, fuel efficiency, safety performance, and driver retention.

As a result of these and other changes, the Debtor has generated a neutral EBITDA over the past five months (YTD May 2025), and the Debtor expects that to continue to improve. The Debtor feels that these increases in revenue and decreases in cost are sustainable and gets us closer to a breakeven point with regard to cash flow while the overall transportation market continues to struggle. Since our largest contract customers completed their seasonal downtime earlier this year, our revenue has increased to an average of $783,000 per week. As described above, the Debtor continues to review both costs and revenue opportunities.

-8-

The Debtor has, along with other trucking firms, experienced increased fuel/diesel prices as a result of the kinetic activity in Iran. Debtor is managing the fuel price increases. But if this kinetic activity continues for more than three or four weeks, the Debtor's cash flow projections will be negatively impacted.

**B.    Significant Events During the Reorganization**

A copy of the docket report in this case, obtained from PACER, is referenced herein as **Exhibit "A"**. It reflects all filings in this case.

The Debtor continues to file its monthly operating reports.

On August 18, 2025, the Debtor filed its *Interim Emergency Motion to Continue with Factoring and Financing Agreement* [DK #8] that was approved on an interim basis by the Court on August 20, 2025 [DK #21]. The Debtor filed its *Final Motion to Continue with Factoring and Financing Agreement* on August 25, 2025 [DK #42] that was resolved with an Agreed Order entered on September 12, 2025 [DK #81]. The Agreed Order on the final factoring motion allows the Debtor to continue its "factoring arrangement" with Corporate Billing ("CB"). The arrangement allows the Debtor to sell its accounts receivables to CB in exchange for an "advance" from CB based upon the particular receivable that is being sold or factored.

The Debtor filed its Schedules [DK #88] and Statement of Financial Affairs [DK #87] on September 17, 2025. The Office of the United States Trustee held and concluded the meeting of creditors in this case on October 1, 2015 [DK #104]. The Debtor filed its Amended Schedules [DK #180] and its Amended Statement of Financial Affairs [DK #179] on October 31, 2025.

During the course of the bankruptcy proceedings, several secured creditors have filed motions for relief from the automatic stay and/or for adequate protection regrading their collateral. The Debtor has resolved most of these motions with separate agreed orders. The terms of those plan

treatment payments and debt restructuring for the remaining life of the relationship with each secured creditor are reflected in the treatment of each secured creditor's claim in this Disclosure Statement and the Debtor's Plan of Reorganization filed simultaneously herein.

On December 18, 2025, the Debtor filed its *Emergency Motion for Authority to Incur Debt and Grant Security Therefor* [DK #245] that was approved by an Order entered on January 7, 2026 [DK #274]. The Order approved an emergency cash infusion loan by the Debtor from some of the Debtor's equity security holders in order to assist the Debtor in getting over the Christmas holiday season and weather down time which is a normal time of decreased revenue. To date, the Debtor is actively running its transportation and logistics operations without interruption.

**C.    Assets of the Debtor**

The Debtor's assets, at the time of the filing of the case, are reflected on Amended Schedules A/B, which are referenced herein as **Exhibit "B"**. However, Debtor is going to amend, further, Schedules A/B pursuant to market conditions that render many of the values at a higher level than the market will support. The Debtor owns Chapter 5 avoidance causes of action as well and it expressly reserves payments made in the ninety (90) days before filing, including Claims to "clawback" those payments. Debtor attaches a section of its Amended Statement of Financial Affairs that reflects payments to Creditors in the ninety (90) days before filing and marks it as **Exhibit "C"**. All payments listed there are potentially avoidable transfers and Debtor reserves the right to pursue those. Further, Debtor engaged, with the Bank of Wiggins ("BOW"), pre-petition, in a series of transfers that, for simplicity purposes, involved advances, debits, credits and payments on what are commonly referred to as "overdrafts" - and it was a way of financing the Debtor's capital needs prior to the filing of the Petition herein. The Debtor is investigating all of those transfers and reserves the right to assert avoidance, and any other, claims and causes of action as a result of that

activity. Moreover, Renasant Bank ("Renasant") was required, post-petition, to honor a letter of credit involved in a transaction by, between and among the Debtor, Renasant and an entity known as VFI. It appears that Reansant overpaid VFI by at least $200,000 (although Reansant really had no choice but to honor the "full" letter of credit and that resulted in the overpayment because of the VFI demand for the full amount of the letter of credit). Debtor will pursue return of those overpaid funds. Further, the Debtor, pre-petition, was the victim of a scam initiated in the State of Georgia whereby a Georgia entity, or Georgia individuals, somehow placed signs at a truck stop in Georgia that read "no parking." They apparently had no right to place those signs at another entity's place of business, and when the Debtor's truck was parked near those signs, the apparent scammers demanded a fine (which apparently has no basis in fact or law) that cost the Debtor almost $7,000 in fines, fees and costs. The Debtor received no reasonably equivalent value for those transfers and will seek to recover the same. In addition, to the extent transfer of Debtor's assets have occurred within the three (3) years prior to the filing of this case for which Debtor received less than reasonably equivalent value and/or, to the extent Debtor preferred any Creditor in the ninety (90) days prior to the Petition Date, the Debtor owns those causes of action as well and expressly reserves the right to seek return of the transferred property (whether it was transferred voluntarily or involuntarily).

### D.      Liabilities of the Debtor

The Debtor's secured and unsecured liabilities are reflected in Amended Schedules D, E and F, which are referenced herein as **Exhibit "D"**.

### ARTICLE III
### DESCRIPTION OF THE PLAN

### A.      Introduction

The Plan is a legally binding document which imposes its terms on all Creditors. Once the Plan is confirmed by the Bankruptcy Court, all parties affected by the Plan have their rights altered as provided in the Plan. The following is a brief summary of the material provisions of the Plan.

### B.      Concept of the Plan

The Debtor will continue to operate its business in the ordinary course. The Debtor intends to restructure the leases and loans on its vehicles and equipment to cut costs and increase cash flow. The Debtor also intends to sell off unnecessary equipment, reduce all operating expenses, and, if necessary, reduce payroll.

Valuation of used trucks and trailers has never been an exact science, although, until recently, values from industry publications, and, at times, auction values were realistic and could be utilized to apply to values of such used vehicles and equipment in Chapter 11 cases. Unfortunately, that is no longer the case. Because of the current crisis in the trucking industry, in many of the recent auctions, values of used trucks and trailers have decreased significantly. As a result, the value of used vehicles and equipment throughout the Plan takes into consideration the state of the trucking industry, the economy, the amount of used equipment that is on the open market, as well as the income approach (to an extent) that may decrease the value of the vehicles and equipment because it is difficult to make a profit at the current time. Accordingly, values of used vehicles and equipment throughout the Plan and treatment of Claims and interests will reflect the downward trend of values of such vehicles and equipment.

25-51204-KMS   Dkt 439   Filed 03/24/26   Entered 03/24/26 18:32:19   Page 9 of 43

25-51204-KMS Dkt 439 Filed 03/24/26 Entered 03/24/26 18:32:19 Page 10 of 43

C.    Classification and Treatment of Claims and Interests

The Plan divides the Claims against and interests in the Debtor into various classes pursuant to Bankruptcy Code § 1122. Set forth below is a description of the general classes of Claims against and interests in the Debtor and their treatment under the Plan. A Claim or interest is classified in a particular class only to the extent that the Claim or interest qualifies within the description of the class and is classified in a different class to the extent that the Claim or interest qualifies within the description of that different class.

Class 1:    Administrative Claims

Class 2:    Priority Claims

Class 3:    Secured Claims of Banc of America ("BOA")

Class 4:    Secured Claims of Bank of Wiggins ("BOW")

Class 5:    Secured Claims of BMO Harris Bank, N.A. ("BMO")

Class 6:    Secured Claims of Corporate Billing, LLC ("CB")

Class 7:    Secured Claims of Crossroads Equipment Lease & Finance, LLC ("Crossroads")

Class 8:    Secured Claims of Flagstar/Great Atlantic Financial ("Flagstar")

Class 9:    Secured Claims of M&T Equipment Finance ("M&T")

Class 10:    Secured Claims of Midland States Bank ("Midland")

Class 11:    Secured Claims of Mitsubishi HC Capital ("Mitsubishi")

Class 12:    Secured Claims of Navistar Financial Corporation ("Navistar")

Class 13:    Secured Claims of Navistar Leasing Company ("Navistar Leasing")

Class 14:    Secured Claims of Navitas Credit Corporation ("Navitas")

Class 15:    Secured Claims of PNC Equipment Finance ("PNC")

Class 16:    Secured Claims of Renasant Bank ("Renasant")

Class 17:    Secured Claims Simmons Bank ("Simmons")

Class 18:    Secured Claims of Southern States Utility Trailer Sales, Inc. ("Southern States")

Class 19:    Secured Claims of Sumitomo Mitsui Finance and Leasing Co., Ltd. ("Sumitomo")

Class 20:    Secured Claims of Trustmark National Bank ("Trustmark")

Class 21:    Secured Claims of VFI Corporate Finance ("VFI")

Class 22:    Secured Claims of Webster Capital Finance ("Webster")

Class 23:    Secured Claims of Wells Fargo Equipment ("Wells Fargo")

Class 24:    General Unsecured Creditors

Class 25:    Equity Security Interest

## ARTICLE IV
## TREATMENT OF CLAIMS AND INTERESTS

The Claims as classified in Article IV shall be satisfied as follows:

Class 1:    Administrative Claims

This class consists of the administrative expenses and Claims of professionals and of the United States Trustee under § 503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor under Title 28 of the United States Code. The compensation of professionals, such as attorneys and accountants, is subject to approval by the Court. The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court. The Court will review all requests for compensation and reimbursement of expenses.

All Class 1 expenses and Claims for fees will be paid as provided for in future Court orders, or as may be agreed upon, except that fees due to the Office of the United States Trustee will be paid as and when due until this case is closed, converted or dismissed.

**Class 2:        Priority Claims**

Priority Claims will be paid within sixty (60) months from the Effective Date of the Plan, in equal monthly installments of principal and statutory interest so as to fully pay the priority Claims over the sixty (60) month amortization period.

**Class 3:        Secured Claims of Banc of America Leasing & Capital, LLC ("BOA")**

The Secured Claims of BOA have been resolved by the agreement between BOA and the Debtor resolving *BOA's Motion for Relief from the Automatic Stay* [DK #163]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $285,000 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 4:        Secured Claims of Bank of Wiggins ("BOW")**

The Secured Claims of BOW are secured by multiple tractor trucks and trailers valued at a total of $1,086,500. The total amount of the BOW Claim is $1,524,298.

The value of the equipment is insufficient to fully secure the BOW Claim. BOW is a Partially Secured Creditor. The Debtor sets the value of the BOW collateral, and thus its Secured

-15-

Claim, at $1,086,500. The Debtor will pay the principal balance of $1,086,500 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

However, Debtor retains, and is investigating, Claims against BOW as detailed in prior sections.

This Secured Claim is impaired.

**Class 5:        Secured Claims of BMO Harris Bank, N.A. ("BMO")**

The Secured Claims of BMO have been resolved by the agreement between BMO and the Debtor resolving *BMO's Motion for Relief from the Automatic Stay* [DK #312]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $250,000 over sixty (60) months at 5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 6:        Secured Claims of Corporate Billing, LLC ("CB")**

The Secured Claims of CB, secured by the Debtor's accounts receivables, have been resolved pursuant to the terms of the *Agreed Order on Final Motion to Continue Factoring and Financing*

-16-

*Arrangement* [DK #81] entered by the Court on September 12, 2025. The factoring arrangement on the Debtor's accounts receivables continues without interruption.

### Class 7: Secured Claims of Crossroads Equipment Lease & Finance, LLC ("Crossroads")

The Secured Claims of Crossroads are resolved pursuant to the terms of the *Agreed Order on Crossroads' Motion for Relief from Stay to Recover Equipment* [DK #329] entered by the Court on January 27, 2026.

### Class 8: Secured Claims of Flagstar/Great Atlantic Financial ("Flagstar")

The Secured Claims of Flagstar are secured by three 2020 International tractor trucks valued at a total of $51,000. The total amount of the Flagstar Claim is $67,732.12.

The value of the equipment is insufficient to fully secure the Flagstar Claim. Flagstar is a Partially Secured Creditor. The Debtor sets the value of the Flagstar collateral, and thus its Secured Claim, at $51,000. The Debtor will pay the principal balance of $51,000 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

### Class 9: Secured Claims of M&T Equipment Finance ("M&T")

The Secured Claims of M&T are resolved pursuant to the terms of the *Agreed Order Resolving M&T's Motion for Relief from the Automatic Stay and Abandonment of Property of the Estate or for Adequate Protection* [DK #303] entered by the Court on January 15, 2026.

-17-

### Class 10: Secured Claims of Midland States Bank ("Midland")

The Secured Claims of Midland are secured by multiple International tractor trucks valued at a total of $178,000. The total amount of the Midland Claim is $278,000.

The value of the equipment is insufficient to fully secure the Midland Claim. Midland is a Partially Secured Creditor. The Debtor sets the value of the Midland collateral, and thus its Secured Claim, at $178,000. The Debtor will pay the principal balance of $178,000 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

### Class 11: Secured Claims of Mitsubishi HC Capital ("Mitsubishi")

The Secured Claims of Mitsubishi have been resolved by the agreement between Mitsubishi and the Debtor resolving Mitsubishi*'s Motion for Relief from the Automatic Stay* [DK #105]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $70,000 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

-18-

**Class 12:     Secured Claims of Navistar Financial Corporation ("Navistar")**

The Secured Claims of Navistar have been resolved by the agreement between Navistar and the Debtor resolving Navistar's *Motion for Relief from the Automatic Stay* [DK #140]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $273,000 over thirty-six (36) months at 7.5% interest in equal monthly installments of principal and interest. Payments will begin in March 2026.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 13:     Secured Claims of Navistar Leasing Company ("Navistar Leasing")**

The Secured Claims of Navistar Leasing have been resolved by the agreement between Navistar Leasing and the Debtor resolving Navistar Leasing's *Motion for Relief from the Automatic Stay* [DK #140]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $1,050,000 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 14:     Secured Claims of Navitas Credit Corporation ("Navitas")**

The Secured Claims of Navitas are secured by three 2020 International tractor trucks valued at a total of $51,000. The total amount of the Navitas Claim is $17,618.37.

The value of the equipment is sufficient to fully secure the Navitas Claim. Navitas is a Fully Secured Creditor. The Debtor will pay the principal balance of $17,618.37 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 15:     Secured Claims of PNC Equipment Finance ("PNC")**

The Secured Claims of PNC are resolved pursuant to the terms of the *Agreed Order on PNC's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362* [DK #389]entered by the Court on March 2, 2026.

**Class 16:     Secured Claims of Renasant Bank ("Renasant")**

The Secured Claims of Renasant are secured by three 2020 International tractor trucks valued at a total of $142,500. The total amount of the Renasant Claim is $216,767.85.

The value of the equipment is insufficient to fully secure the Renasant Claim. Renasant is a Partially Secured Creditor. The Debtor sets the value of the Renasant collateral, and thus its Secured Claim, at $142,500. The Debtor will pay the principal balance of $142,500 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 17:      Secured Claims Simmons Bank ("Simmons")**

The Secured Claims of Simmons are secured by two 2020 International tractor trucks valued at a total of $70,000. The total amount of the Simmons Claim is $30,243.42.

The value of the equipment is sufficient to fully secure the Simmons Claim. Simmons is a Fully Secured Creditor. The Debtor will pay the principal balance of $30,243.42 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 18:      Secured Claims of Southern States Utility Trailer Sales, Inc. ("Southern States")**

The Secured Claims of Southern States are secured by fifteen 2024 utility trailers valued at a total of $354,636.60. The total amount of the Southern States Claim is $544,994.26.

The value of the equipment is insufficient to fully secure the Southern States Claim. Southern States is a Partially Secured Creditor. The Debtor sets the value of the Southern States collateral, and thus its Secured Claim, at $354,636.60. The Debtor will pay the principal balance of $354,636.60 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 19:      Secured Claims of Sumitomo Mitsui Finance and Leasing Co., Ltd. ("Sumitomo")**

The Secured Claims of Sumitomo are secured by three 2020 International tractor trucks valued at a total of $48,000. The total amount of the Sumitomo Claim is $13,458.27.

The value of the equipment is sufficient to fully secure the Sumitomo Claim. Sumitomo is a Fully Secured Creditor. The Debtor will pay the principal balance of $13,458.27 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 20:      Secured Claims of Trustmark National Bank ("Trustmark")**

The Secured Claims of Trustmark were resolved on an interim basis pursuant to the terms of the *Agreed Interim Order on Trustmark's Motion to Lift the Stay* [DK #158] regarding adequate protection entered by the Court on October 27, 2025. The Debtor has been making weekly payments to Trustmark.

The Secured Claims of Trustmark are secured by nine International tractor trucks valued at a total of $212,000. The total amount of the Trustmark Claim is $573,991.02.

The value of the equipment is insufficient to fully secure the Trustmark Claim. Trustmark is a Partially Secured Creditor. The Debtor sets the value of the Trustmark collateral, and thus its Secured Claim, at $212,000. The Debtor will pay the principal balance of $212,000 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 21:       Secured Claims of VFI Corporate Finance ("VFI")**

VFI has been paid (and overpaid) in full. Debtor will seek return of the overpayment.

**Class 22:       Secured Claims of Webster Capital Finance ("Webster")**

The Secured Claims of Webster are resolved pursuant to the terms of the *Agreed Order on Webster's Motion for Relief from the Automatic Stay* [DK #390] entered by the Court on March 2, 2026.

**Class 23:       Secured Claims of Wells Fargo Equipment Finance, Inc. ("Wells Fargo")**

The Secured Claims of Wells Fargo have been resolved by the agreement between Wells Fargo and the Debtor resolving *Wells Fargo's Motion for Relief from the Automatic Stay* [DK #197]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $241,939.84 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 24:       General Unsecured Creditors**

The Unsecured Creditors in this case will receive, for the three (3) year life of the Plan, the Debtor's net operating income which will be determined by Debtor's gross revenues, initially, and then deducted from that will be overhead/costs of operation; payment of Secured Claims; payment of administrative expense Claims; payment of priority Claims; and sufficient funds to "carry" the Debtor from the last month of each twelve (12) month post-confirmation period to the next month or two, with the resulting cash being the net operating income of the Debtor for years 1, 2, and 3 of the Plan. Upon determination of the net operating income, the Debtor will make distributions to Unsecured Creditors on a Pro-Rata basis thirty (30) days after the anniversary dates of the Effective Date of the Plan in years 1, 2, and 3 of the post-confirmation reorganization. The unsecured portion of all Allowed Secured Claims shall be included in Class 24.

**Class 25:       Equity Security Interest**

The equity security holders will maintain their equity security interests in the Debtor. There is no "equity" or value in the Debtor after considering the debt of the enterprise greatly exceeds the value of its assets.

### ARTICLE V
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

On the Effective Date, each executory contract and/or unexpired lease in which the Debtor is a party that has not been assumed or rejected in conjunction with the Plan before the Confirmation with the approval of the Court shall be deemed rejected. Claims created by the rejection of any

executory contract or unexpired lease must be served on counsel for the Debtor and filed with the Court no later than sixty (60) days after the entry of a Final Order confirming the Plan. Any Claim not filed within such time will be forever barred as against the estate and the Debtor. All such Claims arising from the rejection of an executory contract or unexpired lease shall be treated under the Plan as General, Unsecured Claims (Class 24) under the Plan. All insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation date.

The Debtor has simultaneously filed an *Omnibus Motion for Authority to Assume Truck/Trailer Leases* wherein the Debtor seeks approval of the Court to assume the truck and trailers leases with various vendors. The Debtor has also simultaneously filed an *Omnibus Motion for Authority to Assume Service Agreements* wherein the Debtor seeks approval of the Court to assume service agreements used in the Debtor's business operations. Additionally, the Debtor has simultaneously filed an *Omnibus Motion for Authority to Assume Lease/Owner Operator Agreements*, wherein the Debtor seeks approval of the Court to assume the lease/owner operator agreements with various drivers. Those motions are incorporated herein by reference. The hearings on the motions shall be set by the Court for a date certain in the future. Upon information and belief, the Debtor asserts that there are no monetary or non-monetary defaults with respect to the unexpired leases or executory contracts that need to be cured prior to the assumption.

### ARTICLE VI
### MODIFICATION OF THE PLAN

The Debtor may amend or modify the Plan at any time prior to the entry of an order confirming the Plan without the approval of the Court. Subsequent to the entry of the Confirmation order, the Debtor may modify the Plan before substantial consummation of the Plan with the approval of the Court.

### ARTICLE VII
### WITHDRAWAL OF THE PLAN

The Debtor reserves the right to revoke and withdraw the Plan as the plan of reorganization for the Chapter 11 case, at any time prior to the Confirmation date if conditions set forth in the Plan cannot be satisfied for any reason after the Confirmation date, at any time up to the Effective Date. If the Debtor revokes or withdraws the Plan prior to the Confirmation date, then the Plan shall be deemed null and void.

### ARTICLE VIII
### RETENTION OF JURISDICTION

Subsequent to Confirmation of the Plan, the Court will retain jurisdiction to hear and determine all Claims against the Debtor and to hear and to enforce all causes of action which exist on behalf the Debtor, including, without limitation, all turnover and avoidance causes of action granted to the Debtor and that will be owned and possibly pursued by the Debtor, post-confirmation, under the Bankruptcy Code. The Court will also retain jurisdiction to construe and apply the provisions of the Plan, including the administration and implementation of the Plan, to enter orders in aid of consummation of the Plan, to effectuate the abandonment of assets, if necessary, to issue any orders in connection with the Plan in these proceedings, to hear and decide applications for compensation and reimbursement of expenses, to resolve objections to Claims, adversary proceedings, and matters pending independently of the Plan and to close the Chapter 11 case.

### ARTICLE IX
### PLAN ALTERNATIVES

A.    **Feasibility of the Plan**

Feasibility in the trucking industry when success for the Debtor's type of business operations is dependent several factors is not an easy task. At this point in time, the Debtor's business

-27-

operations have been steady since the bankruptcy filing. Barring unforeseen decreases in delivery rates that negatively affect the Debtor operational revenue, the Debtor intends to continue its operations at a consistent level. As noted, fuel costs are also a concern.

The Debtor has prepared and relies upon a proposed cash flow and budget, a copy of which is attached, incorporated by reference and marked as **Exhibit "E"**. This cash flow should "roll over" into 2027 and 2028. Again, that will depend in part upon any unforeseen circumstances related to delivery rates as well as truck repair, truck maintenance, and fuel costs.

The Debtor submits its Plan is feasible.

### B.    Liquidation Analysis

Section 1129 of the Bankruptcy Code provides that the Court may confirm the Plan only if certain requirements are met.  One of these requirements is that each non-accepting holder of an Allowed Claim must receive or retain under the Plan, on account of such Claim, property as of the Effective Date of the Plan at least equal to the value such holder would receive if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

For the purposes of the following discussion, it is assumed that a Chapter 7 trustee would seek to maximize the value of the Debtor's estate by attempting to sell all the assets of the Debtor, just as the Debtor is doing, or has already done. The following are some, but not all, of the consequences the Debtor believes would result from Chapter 7 liquidation:

1.    Substantial Chapter 7 administrative costs relating to professional fees, broker commissions, sales commissions and other associated expenses would occur.

2.    The collection of the large amount of Debtor's assets under the time pressures and adverse publicity related to Chapter 7 liquidation would create a difficult

---

-28-

environment and would result in a transaction consummated at a substantial discount to fair market price.

3.    A Chapter 7 Trustee will be unfamiliar with the Debtor's assets at the time of his/her appointment and is not likely to be in a position to collect the Debtor's assets during the liquidation period very effectively.  Debtor's management has incentives to collect the assets.

4.    The Debtor has already noted that valuations in trucking cases with respect to used vehicles and equipment has always been a difficult task, but it has been made even more so with the dramatic downturn in used vehicle and equipment prices.  The Debtor's valuations, set forth in the treatment of the Claims of Secured Creditors, reflect the current down market for used vehicles and equipment as well as liquidation values.

5.    Liquidation prices for used trucking equipment is not an easy task either, especially in light of the fact that more used trucking equipment is being sold at very significant discounts than ever before.  And, as noted, there are some pieces of used trucking equipment that do not attract even a bid in auctions, leaving them unsold.

6.    The age and condition of the used trucking equipment comes into play as well, so it is difficult to establish an "across the board" liquidation percentage for used trucking equipment.  However, based upon the Debtor's experience and observation at auction prices, the Debtor believes that forced liquidation values would be no more than 70% - 75% of the values set forth in the treatment section.

The Debtor has some actual experience with liquidation of truck assets during the pendency of this case.  One of the Debtor's lease operators decided to exit the business and put ten 2021

International trucks up for sale. The lease operator did not have any significant offers that he thought were realistic for about six months. At the end of six months, he sold the ten 2021 International trucks for $18,000 per truck. That arms-length, supposedly "fair market value" sale has formed part of the benchmark the Debtor has used for its liquidation analysis. The value of those same trucks based upon traditional industry publications and valuation guides are, of course, much higher than the $18,000 the lease operator actually received - and in the case of the lease operator, the Debtor had nothing to do and nothing to gain with respect to those sales. That is one of the main reasons the Debtor has valued, at liquidation, its fleet at no more than 70% - 75% of the values set forth in the treatment section of the discussion involving the restructuring and treatment of the Claims of Secured Creditors. And, frankly, that is probably an optimistic "high end" valuation at liquidation because of the number of trucking firms that have simply gone out of business and the vast number of used units that are on the market. Finally, as all the Creditors will note, many of the Debtor's trucks and trailers are older models with substantial mileage, which also detracts from values at auction and lowers the liquidation value of them.

### C.   Plan Alternatives

The Debtor has considered various alternatives to the Plan. If the Debtor was liquidated, Secured Creditors would be forced to accept liquidation prices for used vehicles and equipment that is not an attractive option. Further, vendors and suppliers would lose a steady source of purchase of their goods and services, and prepetition Unsecured Creditors would not be able to participate in post-confirmation profits of the Debtor.

For those reasons, the Debtor believes that an internal reorganization is its best bet and the only viable alternative absent facing disastrous losses and going out of business. For the reasons set

forth herein, the Debtor believes that to maximize the potential value of the Debtor and maximize the return to Creditors, the Plan is the most desirable and beneficial course of action.

### ARTICLE X
### TAX CONSEQUENCES

#### A.   General

Under the Internal Revenue Code of 1986, as amended (the "Tax Code") and regulations promulgated thereunder (the "Regulations"), there are certain significant federal income tax consequences associated with the Plan. Certain of these consequences are discussed below. The tax consequences described below are subject to significant uncertainties because of (i) the complexity of the transactions contemplated by the Plan; (ii) the uncertainty as to the tax consequences of events in prior years, including changes made by the Bankruptcy Tax Act of 1980 ("BTA80"), the Tax Reform Act of 1985 ("TRA85"), the Tax Reform Act of 1986 ("TRA86"), the Omnibus Reconciliation Act of 1987 ("ORA87"), the Technical and Miscellaneous Revenue Act of 1988 ("TAMRA"), the Omnibus Budget Reconciliation Act of 1989 ("OBRA89"), the Revenue Reconciliation Act of 1990 ("RRA90") and the Revenue Reconciliation Act of 1993 ("RRA93"); (iii) the differences in the nature of the Claims of various claimants, their taxpayer status, residence and methods of accounting (including claimants within the same class), (iv) prior actions taken by claimants with respect to their Claims; and (v) the possibility that events or legislation subsequent to the date hereof could change the federal tax consequences of the transactions. There may also be state, local or foreign tax issues that may affect particular claimants.

HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO CONSULT THEIR TAX ADVISORS RESPECTING THE INDIVIDUAL TAX CONSEQUENCES OF THE

TRANSACTIONS CONTEMPLATED UNDER OR IN CONNECTION WITH THE PLAN, INCLUDING STATE, LOCAL AND FOREIGN TAX CONSEQUENCES.

### B.    Tax Consequences to Claimants

The tax consequences of the implementation of the Plan to a claimant will depend in part on (i) whether the claimant's Claim constitutes a security for federal income tax purposes, (ii) whether the claimant reports income on the accrual basis, (iii) whether the claimant receives consideration in more than one tax year, (iv) whether the claimant is a resident of the United States, and (v) whether all the consideration received by the claimant is deemed to be received by that claimant as part of an integrated transaction. The federal tax consequences upon the receipt of cash and notes allocable to interest are discussed below.

### C.    Gain or Loss on Exchange

The Debtor does not believe that any of the Creditors' Claims will constitute tax securities. Whether a debt instrument constitutes a security is based on the facts and circumstances surrounding the origin and nature of the debt and its maturity date. Generally, Claims arising out of the extension of trade credit have been held not to be securities. Instruments with a five-year term or less also rarely constitute securities. Accordingly, a claimant will recognize gain or loss on the exchange of his existing Claim (other than a Claim for accrued interest) for any consideration. The amount of such gain or loss will equal the difference between (i) the "amount realized" in respect of such Claim and (ii) the adjusted tax basis of the claimant in such Claim. Pursuant to Section 1001 of the Tax Code, the "amount realized" will be equal to the sum of the cash plus the fair market value of any other property received in such exchange.

1.    Receipt of Cash. A claimant who receives cash in full satisfaction of his Claim will be required to recognize gain or loss on the exchange. The claimant will recognize gain or less equal to the difference between the "amount realized" in respect of such Claim and the adjusted tax basis of the claimant in the Claim, and the tax treatment of the exchange will parallel the tax treatment set forth under above.

2.    Determination of Character of Gain or Loss. In the case of a claimant whose existing Claim does not constitute a capital asset, the gain or loss realized on the exchange will give rise to ordinary income or loss. In the case of a claimant whose existing Claim constitutes a capital asset in his hands, the gain or loss required to be recognized will generally be classified as a capital gain or loss, except to the extent of interest. Any capital gain or loss recognized by a claimant will be long-term capital gain or loss with respect to those claims for which the holding period of the claimant is more than twelve (12) months, and short-term capital gain or loss with respect to such Claims for which the holding period of the claimant is twelve (12) months or less.

3.    Receipt of Interest. The BTA80 reversed prior law by providing that consideration attributable to accrued but unpaid interest will be treated as ordinary income, regardless of whether the claimant's existing Claims are capital assets in his hands and the exchange is pursuant to a tax reorganization. A claimant who, under his accounting method, was not previously required to include in income accrued but unpaid interest attributable to his existing Claims, and who exchanges his interest Claim for cash, other property or Stock, or a combination thereof, pursuant to the Plan will be treated as receiving ordinary interest income to the extent of any consideration so received allocable to such interest, regardless of whether that

claimant realizes an overall gain or loss as a result of the exchange of his existing Claims.

### D.    Backup Withholding

Under the Tax Code, interest, dividends and other "reportable payments" may, under certain circumstances, be subject to "backup withholding" at a thirty-one percent (31%) rate. Withholding generally applies if the holder: (i) fails to furnish his Social Security number or other taxpayer identification number ("TIN"), (ii) furnishes an incorrect TIN, (iii) fails to report interest or dividends, or (iv) under certain circumstances fails to provide a certified statement, signed under penalty of perjury, that the TIN provided is his correct number and that he is not subject to backup withholding.

BECAUSE THE FINAL OUTCOME DEPENDS SO MUCH ON EACH INDIVIDUAL CLAIMANT'S SITUATION, IT IS IMPERATIVE THAT EACH CLAIMANT SEEK INDIVIDUAL TAX COUNSEL FOR ADVICE ON HIS PARTICULAR SITUATION.

### ARTICLE XI
### SOLICITATION OF ACCEPTANCES FOR THE PLAN

Although this Disclosure Statement provides information regarding the assets, liabilities and the general financial posture of the Debtor and the potential benefits that might accrue to holders of Claims and interests in the Debtor upon Confirmation of the Plan, the Disclosure Statement neither guarantees nor purports to represent the amount or percentage of each Allowed Claim that would be realized under the Plan. Despite this uncertainty, which is inherent in any Plan, the Debtor believes that the Plan will provide each holder of a Claim with an opportunity to receive greater benefits than any other alternative.

As explained more fully herein above, before the Plan may be confirmed by the Court, the Court must find that the criteria set forth in the Bankruptcy Code have been met, including the requirement that the Plan must be accepted by an impaired class.

### ARTICLE XII
### INVALIDATION OF LIENS

All liens securing Claims which are not allowed pursuant to the provisions of the Plan or Bankruptcy Code § 502 and § 506 shall be invalidated and deemed null and void and of no further force and effect. The provisions of the confirmed Plan shall bind all Creditors and parties-in-interest, whether or not they accept the Plan, and shall discharge the Debtor from all Claims that arose prior to Confirmation. The distributions provided under the Plan shall be in exchange for and in complete satisfaction of all Claims and interests regarding any of the Debtor's assets or properties, including Claims arising after the date of filing of the Petition and prior to Confirmation. Unless otherwise specifically provided to the contrary herein or in the Confirmation order, on or after Confirmation, all holders of Claims or interests shall be precluded from asserting any Claim against the Debtor or its assets or properties.

The Debtor may close this Chapter 11 case prior to Creditor distributions, but the automatic stay under 11 U.S.C. § 362 shall remain in full force and effect until a final decree is entered closing this case.

### ARTICLE XIII
### UNITED STATES TRUSTEE'S REPORTS AND FEES

The Debtor's proposed Plan, pursuant to 28 U.S.C. § 1930(a)(6), provides payment to the United States Trustee of the appropriate sums required for all disbursements made by the Debtor during the Chapter 11 proceeding. In addition, the proposed Plan provides that the Debtor will make payments to the United States Trustee of the appropriate sums required for all disbursements made

by the Debtor pursuant to the terms of the proposed Plan, including the payment of post-confirmation quarterly fees as required by 11 U.S.C. § 1129(a)(12) until such time as this case is converted, dismissed or closed by the Court. Additionally, the Debtor shall submit to the United States Trustee post-confirmation reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.

## ARTICLE XIV
## CONCLUSION

In order for the Bankruptcy Court to confirm the Plan, the Code requires, among other things, that the Plan be proposed in good faith; that the Debtor disclose specified information concerning payments or promises to insiders; that the Plan comply with the applicable provisions of Chapter 11 of the Bankruptcy Code; that, if there is one impaired class of Creditors, at least one impaired class of Claims accepts the Plan; that Confirmation of the Plan is not likely to be followed by the need for further reorganization or liquidation of the Reorganized Debtor; that the Plan is in the best interest of each dissenting Creditor and that the Plan is fair and equitable to, and does not discriminate unfairly against, each non-accepting class of impaired Claims. The Debtor believes that each requirement has been met, and the Debtor urges you to accept the Plan.

-35-

THIS, the ___13___ day of March, 2026.

Respectfully submitted,

BIG LEVEL TRUCKING, INC.

By Its Attorneys,

LAW OFFICES OF GENO AND STEISKAL, PLLC

By: _____
        Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Plea, DS\Revised Disclosure Statement 3-12-26.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to the following:

Steven Usry, Esq.
Office of the United States Trustee
steven.usry@usdoj.gov

THIS, the 13th day of March, 2026.

_____
Craig M. Geno

-36-

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:      BIG LEVEL TRUCKING, INC.                           CHAPTER 11
               Debtor                                         CASE NO. 25-51204-KMS

# EXHIBITS "A - D"

**EXHIBITS "A - D" ARE VOLUMINOUS AND ARE NOT DUPLICATED HERE.**
**HOWEVER, IF COPIES ARE NEEDED, THEY CAN BE OBTAINED**
**VIA PACER OR BY CONTACTING KATIE CARTER**
kcarter@cmgenolaw.com



## Annualized Budget

Date: 3/13/26

| | | |
|---|---|---|
| Projected Revenue | $40,560,000 | 150@5200 / 2300 / 2.26 |
| | | |
| Cost | | |
| Payroll | $10,400,000 | +/- |
| Owner Op / Lease Op | $2,600,000 | +/- |
| Payroll Taxes | $2,496,000 | +/- |
| Recruiting | $260,000 | +/- |
| In cab systems | $124,800 | +/- ELD\Camera |
| Fuel Costs | $11,180,000 | +/- |
| Health Dental Ins | $884,000 | +/- |
| WC, PD, GL, Cargo, AL | $4,130,079 | Insurance |
| Repairs/Tires ($.20) | $3,380,000 | +/- Increase to $0.20 to mng old equip |
| Utilities | $286,000 | +/- Power\Phone\Internet\Water\Comp\ect |
| Office Suppies | $26,000 | +/- Paper\Ink\ect |
| Misc OTR Costs | $312,000 | +/- Fines\tow\ect |
| Tolls (Prepass) | $390,000 | +/- Tolls |
| Lease Payments | $2,030,756 | |
| Secured Note Payments | $1,040,000 | |
| Court Costs | $324,480 | 0.80% |
| Total Costs | $39,864,115 | |
| | | |
| Projected Surplus Funds | $695,885 | |

# EXHIBIT "E"

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  BIG LEVEL TRUCKING, INC.   CHAPTER 11

DEBTOR(S)   CASE NO. 25-51204-KMS

## PLAN OF REORGANIZATION

Unless otherwise defined, the capitalized terms contained in this Plan of Reorganization (the "Plan") shall have the same meanings as described in the Disclosure Statement. All capitalized terms used in the Plan not defined herein or in the Disclosure Statement, but which are defined in the Bankruptcy Code, shall have the respective meanings ascribed in the Bankruptcy Code. All capitalized terms used but not defined in the Plan, in the Disclosure Statement or in the Bankruptcy Code shall have the respective meanings ascribed in the Bankruptcy Rules.

### ARTICLE I
### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides the Claims against and interests in the Debtor into various classes pursuant to Bankruptcy Code § 1122. Set forth below is a description of the general classes of Claims against and interests in the Debtor and their treatment under the Plan. A Claim or interest is classified in a particular class only to the extent that the Claim or interest qualifies within the description of the class and is classified in a different class to the extent that the Claim or interest qualifies within the description of that different class.

Class 1:  Administrative Claims

Class 2  Priority Claims

Class 3:  Secured Claims of Banc of America ("BOA")

Class 4:  Secured Claims of Bank of Wiggins ("BOW")

Class 5:  Secured Claims of BMO Harris Bank, N.A. ("BMO")

Class 6:  Secured Claims of Corporate Billing, LLC ("CB")

Class 7:  Secured Claims of Crossroads Equipment Lease & Finance, LLC ("Crossroads")

Class 8:  Secured Claims of Flagstar/Great Atlantic Financial ("Flagstar")

Class 9:  Secured Claims of M&T Equipment Finance ("M&T")

Class 10:  Secured Claims of Midland States Bank ("Midland")

Class 11:  Secured Claims of Mitsubishi HC Capital ("Mitsubishi")

Class 12:  Secured Claims of Navistar Financial Corporation ("Navistar")

Class 13:  Secured Claims of Navistar Leasing Company ("Navistar Leasing")

Class 14:  Secured Claims of Navitas Credit Corporation ("Navitas")

Class 15:  Secured Claims of PNC Equipment Finance ("PNC")

Class 16:  Secured Claims of Renasant Bank ("Renasant")

Class 17:  Secured Claims Simmons Bank ("Simmons")

Class 18:  Secured Claims of Southern States Utility Trailer Sales, Inc. ("Southern States")

Class 19:  Secured Claims of Sumitomo Mitsui Finance and Leasing Co., Ltd. ("Sumitomo")

Class 20:  Secured Claims of Trustmark National Bank ("Trustmark")

Class 21:  Secured Claims of VFI Corporate Finance ("VFI")

Class 22:  Secured Claims of Webster Capital Finance ("Webster")

Class 23:  Secured Claims of Wells Fargo Equipment ("Wells Fargo")

Class 24:      General Unsecured Creditors

Class 25:      Equity Security Interest

### ARTICLE II
### TREATMENT OF CLAIMS AND INTERESTS

The Claims as classified in Article II shall be satisfied as follows:

Class 1:      Administrative Claims

This class consists of the administrative expenses and Claims of professionals and of the United States Trustee under § 503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor under Title 28 of the United States Code. The compensation of professionals, such as attorneys and accountants, is subject to approval by the Court. The timing of payment to such professionals for compensation for services rendered and reimbursement of expenses will be made as authorized and allowed by the Court. The Court will review all requests for compensation and reimbursement of expenses.

All Class 1 expenses and Claims for fees will be paid as provided for in future Court orders, or as may be agreed upon, except that fees due to the Office of the United States Trustee will be paid as and when due until this case is closed, converted or dismissed.

Class 2:      Priority Claims

Priority Claims will be paid within sixty (60) months from the Effective Date of the Plan, in equal monthly installments of principal and statutory interest so as to fully pay the priority Claims over the sixty (60) month amortization period.

Class 3:      Secured Claims of Banc of America Leasing & Capital, LLC ("BOA")

The Secured Claims of BOA have been resolved by the agreement between BOA and the Debtor resolving *BOA's Motion for Relief from the Automatic Stay* [DK #163]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $285,000 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

Class 4:      Secured Claims of Bank of Wiggins ("BOW")

The Secured Claims of BOW are secured by multiple tractor trucks and trailers valued at a total of $1,086,500. The total amount of the BOW Claim is $1,524,298.

The value of the equipment is insufficient to fully secure the BOW Claim. BOW is a Partially Secured Creditor. The Debtor sets the value of the BOW collateral, and thus its Secured Claim, at $1,086,500. The Debtor will pay the principal balance of $1,086,500 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

However, Debtor retains, and is investigating, Claims against BOW as detailed in prior sections.

This Secured Claim is impaired.

**Class 5:    Secured Claims of BMO Harris Bank, N.A. ("BMO")**

The Secured Claims of BMO have been resolved by the agreement between BMO and the Debtor resolving *BMO's Motion for Relief from the Automatic Stay* [DK #312]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $250,000 over sixty (60) months at 5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 6:    Secured Claims of Corporate Billing, LLC ("CB")**

The Secured Claims of CB, secured by the Debtor's accounts receivables, have been resolved pursuant to the terms of the *Agreed Order on Final Motion to Continue Factoring and Financing Arrangement* [DK #81] entered by the Court on September 12, 2025. The factoring arrangement on the Debtor's accounts receivables continues without interruption.

**Class 7:    Secured Claims of Crossroads Equipment Lease & Finance, LLC ("Crossroads")**

The Secured Claims of Crossroads are resolved pursuant to the terms of the *Agreed Order on Crossroads' Motion for Relief from Stay to Recover Equipment* [DK #329] entered by the Court on January 27, 2026.

**Class 8:    Secured Claims of Flagstar/Great Atlantic Financial ("Flagstar")**

The Secured Claims of Flagstar are secured by three 2020 International tractor trucks valued at a total of $51,000. The total amount of the Flagstar Claim is $67,732.12.

The value of the equipment is insufficient to fully secure the Flagstar Claim. Flagstar is a Partially Secured Creditor. The Debtor sets the value of the Flagstar collateral, and thus its Secured Claim, at $51,000. The Debtor will pay the principal balance of $51,000 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 9:    Secured Claims of M&T Equipment Finance ("M&T")**

The Secured Claims of M&T are resolved pursuant to the terms of the *Agreed Order Resolving M&T's Motion for Relief from the Automatic Stay and Abandonment of Property of the Estate or for Adequate Protection* [DK #303] entered by the Court on January 15, 2026.

**Class 10:       Secured Claims of Midland States Bank ("Midland")**

The Secured Claims of Midland are secured by multiple International tractor trucks valued at a total of $178,000. The total amount of the Midland Claim is $278,000.

The value of the equipment is insufficient to fully secure the Midland Claim. Midland is a Partially Secured Creditor. The Debtor sets the value of the Midland collateral, and thus its Secured Claim, at $178,000. The Debtor will pay the principal balance of $178,000 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 11:       Secured Claims of Mitsubishi HC Capital ("Mitsubishi")**

The Secured Claims of Mitsubishi have been resolved by the agreement between Mitsubishi and the Debtor resolving Mitsubishi*'s Motion for Relief from the Automatic Stay* [DK #105]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $70,000 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 12:       Secured Claims of Navistar Financial Corporation ("Navistar")**

The Secured Claims of Navistar have been resolved by the agreement between Navistar and the Debtor resolving Navistar*'s Motion for Relief from the Automatic Stay* [DK #140]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $273,000 over thirty-six (36) months at 7.5% interest in equal monthly installments of principal and interest. Payments will begin in March 2026.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 13:       Secured Claims of Navistar Leasing Company ("Navistar Leasing")**

The Secured Claims of Navistar Leasing have been resolved by the agreement between Navistar Leasing and the Debtor resolving Navistar Leasing's *Motion for Relief from the Automatic Stay* [DK #140]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $1,050,000 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 14:       Secured Claims of Navitas Credit Corporation ("Navitas")**

The Secured Claims of Navitas are secured by three 2020 International tractor trucks valued at a total of $51,000. The total amount of the Navitas Claim is $17,618.37.

The value of the equipment is sufficient to fully secure the Navitas Claim. Navitas is a Fully Secured Creditor. The Debtor will pay the principal balance of $17,618.37 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 15:      Secured Claims of PNC Equipment Finance ("PNC")**

The Secured Claims of PNC are resolved pursuant to the terms of the *Agreed Order on PNC's Motion for Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362* [DK #389]entered by the Court on March 2, 2026.

**Class 16:      Secured Claims of Renasant Bank ("Renasant")**

The Secured Claims of Renasant are secured by three 2020 International tractor trucks valued at a total of $142,500. The total amount of the Renasant Claim is $216,767.85.

The value of the equipment is insufficient to fully secure the Renasant Claim. Renasant is a Partially Secured Creditor. The Debtor sets the value of the Renasant collateral, and thus its Secured Claim, at $142,500. The Debtor will pay the principal balance of $142,500 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 17:      Secured Claims Simmons Bank ("Simmons")**

The Secured Claims of Simmons are secured by two 2020 International tractor trucks valued at a total of $70,000. The total amount of the Simmons Claim is $30,243.42.

The value of the equipment is sufficient to fully secure the Simmons Claim. Simmons is a Fully Secured Creditor. The Debtor will pay the principal balance of $30,243.42 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 18:      Secured Claims of Southern States Utility Trailer Sales, Inc. ("Southern States")**

The Secured Claims of Southern States are secured by fifteen 2024 utility trailers valued at a total of $354,636.60. The total amount of the Southern States Claim is $544,994.26.

The value of the equipment is insufficient to fully secure the Southern States Claim. Southern States is a Partially Secured Creditor. The Debtor sets the value of the Southern States collateral, and thus its Secured Claim, at $354,636.60. The Debtor will pay the principal balance of $354,636.60 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 19:    Secured Claims of Sumitomo Mitsui Finance and Leasing Co., Ltd. ("Sumitomo")**

The Secured Claims of Sumitomo are secured by three 2020 International tractor trucks valued at a total of $48,000. The total amount of the Sumitomo Claim is $13,458.27.

The value of the equipment is sufficient to fully secure the Sumitomo Claim. Sumitomo is a Fully Secured Creditor. The Debtor will pay the principal balance of $13,458.27 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 20:    Secured Claims of Trustmark National Bank ("Trustmark")**

The Secured Claims of Trustmark were resolved on an interim basis pursuant to the terms of the *Agreed Interim Order on Trustmark's Motion to Lift the Stay* [DK #158] regarding adequate protection entered by the Court on October 27, 2025. The Debtor has been making weekly payments to Trustmark.

The Secured Claims of Trustmark are secured by nine International tractor trucks valued at a total of $212,000. The total amount of the Trustmark Claim is $573,991.02.

-11-

The value of the equipment is insufficient to fully secure the Trustmark Claim. Trustmark is a Partially Secured Creditor.    The Debtor sets the value of the Trustmark collateral, and thus its Secured Claim, at $212,000. The Debtor will pay the principal balance of $212,000 over sixty (60) months, at 4.5% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments will begin on the Effective Date.

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 21:    Secured Claims of VFI Corporate Finance ("VFI")**

VFI has been paid (and overpaid) in full. Debtor will seek return of the overpayment.

**Class 22:    Secured Claims of Webster Capital Finance ("Webster")**

The Secured Claims of Webster are resolved pursuant to the terms of the *Agreed Order on Webster's Motion for Relief from the Automatic Stay* [DK #390] entered by the Court on March 2, 2026.

**Class 23:    Secured Claims of Wells Fargo Equipment Finance, Inc. ("Wells Fargo")**

The Secured Claims of Wells Fargo have been resolved by the agreement between Wells Fargo and the Debtor resolving *Wells Fargo's Motion for Relief from the Automatic Stay* [DK #197]. An agreed order has not yet been entered by the Court.

The Debtor will pay the principal balance of $241,939.84 over sixty (60) months at 6% interest in equal monthly installments of principal and interest. The Debtor will make interest-only payments for the first four months. Starting in the fifth month, the Debtor will make full principal and interest monthly payments. Payments have already begun.

-12-

The Debtor will continue to maintain insurance upon its tangible assets and will maintain the tangible assets in good working condition and order.

This Secured Claim is impaired.

**Class 24:       General Unsecured Creditors**

The Unsecured Creditors in this case will receive, for the three (3) year life of the Plan, the Debtor's net operating income which will be determined by Debtor's gross revenues, initially, and then deducted from that will be overhead/costs of operation; payment of Secured Claims; payment of administrative expense Claims; payment of priority Claims; and sufficient funds to "carry" the Debtor from the last month of each twelve (12) month post-confirmation period to the next month or two, with the resulting cash being the net operating income of the Debtor for years 1, 2, and 3 of the Plan.  Upon determination of the net operating income, the Debtor will make distributions to Unsecured Creditors on a Pro-Rata basis thirty (30) days after the anniversary dates of the Effective Date of the Plan in years 1, 2, and 3 of the post-confirmation reorganization.  The unsecured portion of all Allowed Secured Claims shall be included in Class 24.

**Class 25:       Equity Security Interest**

The equity security holders will maintain their equity security interests in the Debtor.  There is no "equity" or value in the Debtor after considering the debt of the enterprise greatly exceeds the value of its assets.

**ARTICLE III**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

On the Effective Date, each executory contract and/or unexpired lease in which the Debtor is a party that has not been assumed or rejected in conjunction with the Plan before the Confirmation with the approval of the Court shall be deemed rejected.  Claims created by the rejection of any

-13-

executory contract or unexpired lease must be served on counsel for the Debtor and filed with the Court no later than sixty (60) days after the entry of a Final Order confirming the Plan.  Any Claim not filed within such time will be forever barred as against the estate and the Debtor.  All such Claims arising from the rejection of an executory contract or unexpired lease shall be treated under the Plan as General, Unsecured Claims (Class 24) under the Plan.  All insurance policies under which the Debtor is the insured party shall be deemed assumed as of the Confirmation date.

The Debtor has simultaneously filed an *Omnibus Motion for Authority to Assume Truck/Trailer Leases* wherein the Debtor seeks approval of the Court to assume the truck and trailers leases with various vendors. The Debtor has also simultaneously filed an *Omnibus Motion for Authority to Assume Service Agreements* wherein the Debtor seeks approval of the Court to assume service agreements used in the Debtor's business operations.  Additionally, the Debtor has simultaneously filed an *Omnibus Motion for Authority to Assume Lease/Owner Operator Agreements*, wherein the Debtor seeks approval of the Court to assume the lease/owner operator agreements with various drivers.  Those motions are incorporated herein by reference.  The hearings on the motions shall be set by the Court for a date certain in the future.  Upon information and belief, the Debtor asserts that there are no monetary or non-monetary defaults with respect to the unexpired leases or executory contracts that need to be cured prior to the assumption.

**ARTICLE IV**
**CLOSING DATE**

The Closing Date shall be the Effective Date.  The Effective Date of the Plan shall be ninety (90) days after the order confirming the Plan becomes final and non-appealable.

-14-

all holders of Claims or interests shall be precluded from asserting any Claim against the Debtor or its assets or properties.

The Debtor may close this Chapter 11 case prior to Creditor distributions, but the automatic stay under 11 U.S.C. § 362 shall remain in full force and effect until a final decree is entered closing this case.

## ARTICLE VIII
## REVESTING OF PROPERTY

Except as otherwise provided herein, property of the Debtor shall revest in the Reorganized Debtor on the Effective Date. Subsequent to the Effective Date, the Reorganized Debtor may buy, use, acquire, and dispose of property, free of any restrictions contained in the Bankruptcy Code.

## ARTICLE IX
## UNITED STATES TRUSTEE'S REPORTS AND FEES

The Debtor's proposed Plan, pursuant to 28 U.S.C. § 1930(a)(6), provides payment to the United States Trustee of the appropriate sums required for all disbursements made by the Debtor during the Chapter 11 proceeding. In addition, the proposed Plan provides that the Debtor will make payments to the United States Trustee of the appropriate sums required for all disbursements made by the Debtor pursuant to the terms of the proposed Plan, including the payment of post-confirmation quarterly fees as required by 11 U.S.C. § 1129(a)(12) until such time as this case is converted, dismissed or closed by the Court. Additionally, the Debtor shall submit to the United States Trustee post-confirmation reports in the format prescribed by the United States Trustee until such time as this case is converted, dismissed or closed by the Court.

## ARTICLE X
## JURISDICTION OF THE COURT

Subsequent to Confirmation of the Plan (including after the Chapter 11 case has been closed), the Court shall have jurisdiction of all matters arising out of, and related to, the Chapter 11 case and the Plan for, inter alia, the following purposes:

1.  To determine any and all proceedings involving the allowance, estimation, classification, priority, payment or subordination of Claims or interests;

2.  To determine and all applications or motion for allowances of compensation and reimbursement of necessary expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

3.  To determine any and all applications or motions pending on the Effective Date for the rejection or assumption of executory contracts or unexpired leases or for the assumption and assignment, as the case may be, of executory contracts or unexpired leases to which the Debtor is a party or which the Debtor may be liable, and to hear and determine, and if need be, liquidate, any and all Claims arising therefrom including the determination of defaults required to be cured;

4.  To determine any and all applications, adversary proceedings and contested or litigated matters initiated or asserted by the Debtor on or prior to the Effective Date and arising under Chapter 11 of the Bankruptcy Code or arising in or related to the Debtor's Chapter 11 case, including but not limited to, (i) causes of action and other Claims to avoid or recover transfers of the Debtor's property, including, but not limited to, all avoidance actions under Chapter 5 of the Bankruptcy Code and actions pursuant to applicable state law, (ii) all Claims and causes of action arising from pre-petition activities of the Debtor, whether arising by statute or common law, whether arising under the laws of the United States, Mississippi or any other state having jurisdiction over any Claim or

controversy, and whether maintainable against third parties, affiliates or insiders of the Debtor, and (iii) Claims, causes of action and other litigation that may adversely impact or affect the Debtor's property;

5.     To issue orders, determinations and rulings regarding the valuation, recovery, disposition, distribution, operation or use of the Debtor's property, including Claims to recover preferences, fraudulent conveyances or damages of any type from any person and whether initiated before or after the Effective Date;

6.     To consider any modifications to the Plan, remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation order;

7.     To determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, implementation or consummation of the Plan or any person's obligation and responsibilities thereunder;

8.     To consider and act on the compromise and settlement of any Claim against or Claim or cause of action by or against the Debtor;

9.     To issue such orders in aid of execution of the Plan to the extent authorized by 11 U.S.C. § 1142;

10.     To enter a final decree closing the Debtor's Chapter 11 case;

11.     To recover all assets of the Debtor, wherever located; and

12.     To determine matters concerning state, local and federal taxes in accordance with §§ 346, 546 and 1146 of the Bankruptcy Code.

-18-

THIS, the ___13th___ day of March, 2026.

Respectfully submitted,

BIG LEVEL TRUCKING, INC.

By Its Attorneys,

LAW OFFICES OF GENO AND STEISKAL, PLLC

By: _____
        Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.conm
csteiskal@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Plan, DS\Plan - 2026-03-06.wpd

**CERTIFICATE OF SERVICE**

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via electronic filing transmission, a true and correct copy of the above and foregoing to the following:

Steve Usry, Esq.
Office of the United States Trustee
steve.usry@usdoj.gov

THIS, the ___13th___ day of March, 2026.

_____
Craig M. Geno

-19-

Label Matrix for local noticing
0538-6
Case 25-51204-KMS
Southern District of Mississippi
Gulfport-6 Divisional Office
Fri Mar 20 18:56:41 CDT 2026

90 Degree Benefits
P.O. Box 1688
Pascagoula, MS 39568-1688

Alabama Media Group
P.O. Box 2168
Grand Rapids, MI 49501-2168

Alan L. Smith, Esq.
Baker, Donelson, Bearman, Caldwell & Ber
For Banc of America Leasing & Capital, L
100 Vision Drive, Suite 400
Jackson, Mississippi 39211-7009

Alan L. Smith, Esq.
Baker, Donelson, Bearman, Caldwell & Ber
For Navistar Leasing Company
100 Vision Drive, Suite 400
Jackson, Mississippi 39211-7009

Alexander Hardware
206 N Magnolia Drive
P.O. Box 276
Wiggins, MS 39577-0276

American Express
P.O. Box 981535
El Paso, TX 79998-1535

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern  PA 19355-0701

American Trucking Associations
P.O. Box 201068
Dallas, TX 75320-1068

Andrew R. Wilson
BENNETT LOTTERHOS SULSER & WILSON, P.A.
For M&T Equipment Finance Corporation
P.O. Box 1488
Madison, Mississippi 39130-1488

Automotive Glass Spec., Inc.
607 Adeline Street
Hattiesburg, MS 39401-3843

BCT, Inc.
P.O. Box 95741
Chicago, IL 60694-5741

BMO Bank N.A.
P.O. Box 3040
Cedar Rapids IA 52406-3040

BMO Harris Bank, N.A.
P.O. Box 71951
Chicago, IL 60694-1951

BMSS
1020 Highland Colony Parkway
Suite 600
Ridgeland, MS 39157-2150

Ballman's Auto Repair
1725 S Azalea Drive
Wiggins, MS 39577-8107

Banc of America
P.O. Box 25916
Overland Park, KS 66225-5916

Banc of America Leasing & Capital, LLC
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Banc of America Leasing & Capital, LLC
c/o Alan L. Smith, Esq.
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Bank of NY Trust Co.
c/o Navistar
2701 Navistar Drive
Lisle, IL 60532-3637

Bank of NY Trust Co., Agent
c/o Navistar
2701 Navistar Drive
Lisle, IL 60532-3637

Bank of Wiggins
c/o Paul S. Murphy, Esq.
Butler Snow LLP
P.O. Drawer 4248
Gulfport, MS 39502-4248

Bank of Wiggins
109 W Pine Avenue
Wiggins, MS 39577-2654

Bank of Wiggins
c/o Paul S. Murphy
Butler Snow LLP
P.O. Drawer 4248
Gulfport, MS 39502-4248

Bean Co.
802 Hwy 12 W
Starkville, MS 39759-3580

BeanCo
802 Hwy 12 W
Starkville, MS 39759-3580

Bestone Tire & Service
1702 N Collins Blvd
Suite 100
Richardson, TX 75080-3662

Big Level Trucking, Inc.
P.O. Box 306
Wiggins, MS 39577-0306

Blossman Gas, Inc.
1316 S Magnolia
Wiggins, MS 39577-2705

Bo Bennett
P.O. Box 215
Counce, TN 38326-0215

EXHIBIT "B"

Bob Matus
17940 Gulf Blvd
Unit 16D
Redington Shores, FL 33708-1156

Brent Tice
319 First Street S
Wiggins, MS 39577-2737

Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite 3600
Attn: Katie Spewak
St. Louis, MO 63102-2726

Burkes Auto Parts
429 East Central Avenue
Wiggins, MS 39577-2717

Robert Alan Byrd
P.O. Box 1939
Biloxi, MS 39533-1939

C-Spire Wireless
P.O. Box 519
Meadville, MS 39653-0519

CET Logistics
P.O. Box 306
Wiggins, MS 39577-0306

Calvin Barnes
14986 Hw. 57 S
McLain, MS 39456

Calvin Barnes
14986 Hwy 57 S
McLain, MS 39456-6502

Chad J. Hammons, Esq.
Jones Walker LLP
For Mitsubishi HC Capital America, Inc
P.O. Box 427
Jackson, MS 39205-0427

Chase Auto Finance
P.O. Box 9001801
Louisville, KY 40290-1801

Chuck Evans
32 Madewood Court
Hattiesburg, MS 39402-7948

Cintas Corporation
P.O. Box 630921
Cincinnati, OH 45263-0921

Colonial Life
Processing Center
P.O. Box 903
Columbia, SC 29202-0903

Copeland Cook Taylor & Bush
P.O. Box 17619
Hattiesburg, MS 39404-7619

Copeland, Cook, Taylor and Bush
Attn: Accounting Department
P.O. Box 6020
Ridgeland, MS 39158-6020

Corporate Billing, LLC
Dept 100
P.O. Box 830604
Birmingham, AL 35283-0604

Corporate Billing, a Division of SouthState
c/o Eric T. Ray
Holland & Knight LLP
1901 Sixth Ave N, Suite 1400
Birmingham, AL 35203-4605

(p)QUALIA COLLECTION SERVICES
P O BOX 4699
PETALUMA CA 94955-4699

Crossroads Equipment Lease & Finance, LLC
9385 Haven Avenue
Rancho Cucamonga, CA 91730-5338

Crossroads Equipment Lease and Finance
400 Alexander Park Dr.
Ste. 201
Princeton, NJ 08540-6797

Daimler Truck Financial
14372 Heritage Parkway
Fort Worth, TX 76177-3300

David Johns
168 Woodlands Glen Circle
Brandon, MS 39047-7107

Demetric Ratcliff
100 Ginger Drive
Hattiesburg, MS 39402-9658

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Department of the Treasury
Internal Revenue Service
c/o U.S. Attorney
501 E. Court St., Suite 4.430
Jackson, MS 39201-5025

Don Mattocks
253 Tidewater Road
Hattiesburg, MS 39402-7920

Endom Welding and Trailer Repair
P.O. Drawer 10
Ellisville, MS 39437-0010

(p)MITSUBISHI HC CAPITAL AMERICA  INC
1 PIERCE PLACE SUITE 1100 WEST
ITASCA IL 60143-3149

Eric T. Ray, Esq.
HOLLAND & KNIGHT LLP for
Corporate Billing, Division of SouthStat
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203-4605

Erin McManus
Watkins and Eager PLLC
For Trustmark Bank, successor in
P.O. Box 650
Jackson, MS 39205-0650

FIT Logistical Service
319 First Street S
Wiggins, MS 39577-2737

FIT Logistical Services
319 First Street S
Wiggins, MS 39577-2737

FIT Logistical Services
P.O. Box 1071
Hattiesburg, MS 39403-1071

Fast Pace Mississippi, PLLC
P.O. Box 306415
Nashville, TN 37230-6415

Ferguson Trucking, LLC
P.O Box 307
Houston, MS 38851-0307

Ferguson Trucking, LLC
1538 Hwy 15 N
Houston, MS 38851-7463

Ferguson Trucking, LLC
159 County Road 43
Houston, MS 38851-7668

Flagstar/GAF
Great Atlantic Financial
41 Hackensack Avenue
Hackensack, NJ 07601

Fleet Charge Select
3500 Lacey Road
Suite 220
Downers Grove, IL 60515-2481

FleetPride
P.O. Box 847118
Dallas, TX 75284-7118

Gas and Supply
2905 Industrial Blvd
Laurel, MS 39440-5953

Craig M. Geno
Law Offices of Craig M. Geno, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157-6038

Scot P. Goldsholl
Padgett Law Group
415 North McKinley,
Suite 1177
Little Rock, AR 72205-3177

Grantham Heavy Equipment Machine Shop
P.O. Box 444
Monticello, MS 39654-0444

Gulf Coast Tire Supply
P.O. Box 1161
Lucedale, MS 39452-1161

H & P Leasing
P.O. Box 6257
Jackson, MS 39288-6257

Hamblin & Hamblin
837 N Eason Blvd
Tupelo, MS 38804-6903

Chad J. Hammons
Jones Walker
P.O. Box 427
Jackson, MS 39205-0427

James Haney
Wong Fleming
400 Alexander Park Drive
Suite 201
Princeton, NJ 08540-6797

James K. Haney
WONG FLEMING, P.C.
400 Alexander Park Dr., Ste. 201
Princeton, NJ 08540-6797

Hankook Tire America Corp.
333 Commerce Street
Suite 600
Nashville, TN 37201-1836

Thomas M Hewitt
Butler Snow LLP
1020 Highland Colony Pkwy Ste 1400
Ridgeland, MS 39157-2139

Idle Smart
P.O. Box 1922
Lenox, MA 01240-4922

Impact Training Solutions, Inc.
2355 Lusk Drive
Neosho, MO 64850-8833

Independent Furniture Supply
Wanda Bell
P.O. Box 2186
Tupelo, MS 38803-2186

Infinite Wisdom
P.O. Box 7935
Missoula, MT 59807-7935

J.W. Sledge
212 Reservoir Road
Columbia, MS 39429-8543

Jack's Home Improvement Center
747 Hall Street
Wiggins, MS 39577-2105

Jackson Trailer and Equipment, LLC
P.O. Box 6366
Pearl, MS 39288-6366

James Haney
Wong Fleming
For Crossroads Equipment Lease and Finan
400 Alexander Park Drive Suite 201
Princeton, NJ 08540-6797

Jeff Martin Auctioneer
P.O. Box 16809
Hattiesburg, MS 39404-6809

Jeff Martin Auctioneers, Inc.
P.O. Box 16809
Hattiesburg, MS 39404-6809

Jim F. Spencer, Jr.
Watkins & Eager PLLC
For Trustmark Bank, successor in
Post Office Box 650
Jackson, MS 39205-0650

Joe Stevens, Esq.
Wise Carter Child & Caraway, P.A.
For Renasant Bank
601 Adeline St.
Hattiesburg, MS 39401-3843

Joey Ferguson
159 CR 43
Houston, MS 38851-7668

John S. Simpson, Esq.
Simpson Law Firm PA
for H&P Leasing, Inc.
P.O. Box 2058
Madison, MS 39130-2058

John S. Simpson, Esq.
Simpson Law Firm PA
for Southern States Utility Trailer Sale
P.O. Box 2058
Madison, MS 39130-2058

John Tucker
Tower Loan of MS
P.O. Box 320001
Flowood, MS 39232-0001

Johnny's Wrecker Service
5484 Hwy 42
Hattiesburg, MS 39401-1413

Johnson & Johnson
P.O. Box 899
Charleston, SC 29402-0899

Roy Jones
997 Hwy. 49, Lot 63
Perkinston, MS 39573-6603

Justin B. Little, Esq.
Reynolds, Reynolds & Little, LLC
For BMO Bank, N.A.
Post Office Box 2863
Tuscaloosa, Alabama 35403-2863

KFCU VISA Card
Credit Card Center
P.O. Box 71050
Charlotte, NC 28272-1050

Kacy Burnsed
1007 Clifton Road, NE
Atlanta, GA 30307-1227

Keesler Federal Credit Union
c/o Robert Alan Byrd
P.O. Box 1939
Biloxi, MS 39533-1939

Keesler Federal Credit Union
Atten: Bankruptcy
P.O. Box 7001
Biloxi, MS 39534-7001

Keesler Federal Credit Union
PO Box 7001
Biloxi, MS 39534-7001

Winston Lee
Burr & Forman LLP
190 E. Capitol St.
Ste M-100
Jackson, MS 39201-2149

LesJam
P.O. Box 808
McComb, MS 39649-0808

Justin B. Little
REYNOLDS, REYNOLDS & LITTLE, LLC
Post Office Box 2863
Tuscaloosa, AL 35403-2863

Long Drive Investments
122 Bellewood Road
Hattiesburg, MS 39402-8811

Love's Travel Stops
10601 N Pennsylvania Ave
Oklahoma City OK 73120-4108

Love's Travel Stops & Country Stores, I
Andrew R. Turner, esq
4100 First Place Tower
15 East Fifth Street, Ste. 4100
Tulsa, Ok 74103-4305

Love's Travel Stops and Country Stores
P.O. Box 842568
Kansas City, MO 64184-2568

Loves Travel Stops & Country Stores, Inc.
CONNER & WINTERS, LLP
15 East Fifth Street, Ste. 4100
Tulsa, Oklahoma 74103-4305

Loves Travel Stops & Country Stores, Inc.
CONNER & WINTERS, LLP
4100 First Place Tower
Tulsa, Oklahoma 74112

Lytx, Inc.
P.O. Box 849972
Los Angeles, CA 90084-9972

M&T Equipment Finance Corporation
f/k/a Peoples United Equipment Finance
c/o Bennett Lotterhos Sulser & Wilson PA
P.O. Box 1488
Madison, MS 39130-1488

M&T Equipment Finance Corporation f/k/a Peop
United Equipment Finance Corp.
Michael D. Bloom
300 Frank W. Burr Blvd, Suite 50
Teaneck, NJ 07666-6703

MISSISSIPPI DEPARTMENT OF REVENUE
Legal Department
P. O. BOX 22828
JACKSON, MS 39225-2828

(p)MISSISSIPPI STATE TAX COMMISSION
P O BOX 22808
JACKSON MS 39225-2808

Abigail M. Marbury
Office of the U.S. Trustee
501 E Court Street Suite 6-430
Jackson, MS 39201-5022

Matthew W. McDade
for Charles Evans, Jr. a/k/a Chuck Evans
BALCH & BINGHAM LLP
1310 25th Avenue
Gulfport, MS 39501-1931

James A. McCullough II
Brunini, Grantham, Grower & Hewes, PLLC
P, O. Drawer 119
Jackson, MS 39205-0119

Matthew Ward McDade
Balch & Bingham
1310 25th Avenue
Gulfport, MS 39501-1931

McLeod Software
Dept 3500
P.O. Box 830539
Birmingham, AL 35283-0539

Erin McManus
Watkins and Eager PLLC
P.O. Box 650
Jackson, MS 39205-0650

Memorial Hospital at Gulfport
4500 Thirteenth Street
Gulfport, MS 39501-2569

Michelin North America, Inc.
P.O. Box 100860
Atlanta, GA 30384-0860

Midland States Bank
c/o Byrd & Wiser
PO Drawer 1939
Biloxi, MS 39533-1939

Midland States Bank
1801 Park 270 Drive
Suite 200
Saint Louis, MO 63146-4022

Midland States Bank
PO Box 2149
Gig Harbor, WA 98335-4149

Miller Rental & Investment
1047 First Street S
Wiggins, MS 39577-8213

Miller Rental & Investments
1047 First Street S
Wiggins, MS 39577-8213

Miller Transportation
P.O. Box 366
Wiggins, MS 39577-0366

Mississippi Department of Revenue
Bankruptcy Section
P.O. Box 22808
Jackson, MS 39225-2808

Mississippi State Port Authority
P.O. Box 40
Gulfport, MS 39502-0040

Mississippi Trucking Association
825 North President Street
Jackson, MS 39202-2561

Mitsubishi HC Capital America, Inc.
c/o Chad J. Hammons, Esq.
Jones Walker LLP
3100 N. State St., Ste. 300
Jackson, MS 39216-4013

Mitsubishi HC Capital America/Webster
P.O. Box 71347
Chicago, IL 60694-1347

(c)MUNN DIESEL REPAIR & SALES
17 J C MUNN RD
SUMRALL MS  39482-4634

Paul S. Murphy
Butler Snow O'Mara Stevens &Cannada
1300-25th Avenue, Suite 204
Gulfport, MS 39501-1994

Nationwide Testing Association, Inc.
P.O. Box 508
772 North Broad Street
Mooresville, NC 28115-9551

Navistar Financial Corporation
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Navistar Financial Corporation
P.O. Box 96070
Chicago, IL 60693-6070

Navistar Leasing Company
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Navistar Leasing Company
P.O. Box 98454
Chicago, IL 60693-8454

Navitas Credit Corporation
201 Executive Center Drive
Suite 100
Columbia, SC 29210-8410

New Orleans Terminal
50 Napoleon Avenue
New Orleans, LA 70115-7758

Onsite Auto Glass
21313 Saucier Lizano Road
Saucier, MS 39574-9671

Orkin
P.O. Box 2010
Gulfport, MS 39505-2010

(p)PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

PNC Bank, National Association
c/o Winston Lee
190 E. Capitol Street, Suite M-100
Jackson, MS 39201-2152

PNC Equipment Finance
655 Business Center Drive
Horsham, PA 19044-3409

William B. Palmertree
Palmertree, Neyman & Jolly, PLLC
P.O. Box 969
Hernando, MS 38632-0969

Parker's Service Center, LLC
419 East Central Avenue
Wiggins, MS 39577-2717

Paul S. Murphy
BUTLER SNOW LLP
For XTRA Lease LLC.
1300 25th Avenue, Suite 204
Gulfport, MS 39501-1994

Paul S. Murphy
Butler Snow O'Mara Stevens &Cannada
For Bank of Wiggins
1300-25th Avenue, Suite 204
Gulfport, MS 39501-1994

Pearl River Valley
422 E Pine Street
Wiggins, MS 39577-2800

Penske Truck Leasing Co.
P.O. Box 827380
Philadelphia, PA 19182-7380

(p)PENSKE TRUCK LEASING CO  L P
PO BOX 563
READING PA 19603-0563

Pine Belt Fleet Services
5102 US Hwy 49
Hattiesburg, MS 39401

Timothy Pitts
341 Earl Lane, Lot B
Picayune, MS 39466

Rand McNally
1100 W Idaho Street
Suite 330
Boise, ID 83702-5655

Eric T. Ray
Holland & Knight LLP
1901 Sixth Ave N, Suite 1400
Birmingham, AL 35203-4605

Renasant Bank
2001 Park Place North
Birmingham, Al 35203-2735

Renasant Bank
2001 Park Place
Suite 315
Birmingham, AL 35203-2735

Robbie Rollin
19572 Brighton Drive
Saucier, MS 39574-6207

Robert Alan Byrd
Byrd & Wiser Attorneys at Law
For Midland States Bank
P.O. Box 1939
Biloxi, MS 39533-1939

Robert Alan Byrd
For Keesler Federal Credit Union
P.O. Box 1939
Biloxi, MS 39533-1939

Sylvie Derdeyn Robinson
MS Dept of Revenue
P O Box 22828
Jackson, MS 39225-2828

Rocking C Truck and Trailer
P.O. Box 3327
Gulfport, MS 39505-3327

Thomas Carl Rollins Jr
The Rollins Law Firm, PLLC
PO BOX 13767
Jackson, MS 39236-3767

Rushing Enterprises, Inc.
P.O. Box 220
Headland, AL 36345-0220

STM-Pilot-Flying J
Dept 6412
P.O. Box 11407
Birmingham, AL 35246-6412

Sam McClendon
1310 Oloh Road
Sumrall, MS 39482-4490

Thomas Jackson Schultz
Burr & Forman LLP
190 E Capitol St
Suite M-100
Jackson, MS 39201-2149

Scot P. Goldsholl
Padgett Law Group
For Simmons Bank
415 North McKinley, Suite 1177
Little Rock, AR 72205-3177

(p)SIEMENS FINANCIAL SERVICES INC
ATTN ATTN - STEPHANIE MITCHELL
4800 NORTH POINT PARKWAY
ALPHARETTA GA 30022-3732

Signature Finance
P.O. Box 5524
Hicksville, NY 11802-5524

(p)SIMMONS BANK
POST OFFICE BOX 733
UNION CITY TN 38281-0733

John S. Simpson
Simpson Law Firm, P.A.
P.O. Box 2058
Madison, MS 39130-2058

SkyBitz
P.O. Box 74007409
Chicago, IL 60674-7409

Alan Lee Smith
Baker Donelson
100 Vision Drive
Suite 400
Jackson, MS 39211-7009

South MS Business Machine
P.O. Box 697
Gulfport, MS 39502-0697

South Mississippi Business Machines of
Gulfport, Inc.- South Miss. Business
Machines of Gulfport, Inc
P O Box 697
Gulfport, MS 39502-0697

(p)SOUTHERN FINANCIAL SYSTEMS
2603 OAK GROVE ROAD
HATTIESBURG MS 39402-8928

Southern Gas and Supply of Mississippi, Inc.
Lisa Gintz
4709 Bluebonnet Blvd., Suite A
Baton Rouge, LA 70809-9655

Southern Pipe and Supply
710 West Frontage Road
Wiggins, MS 39577-8133

Southern States Utility Trailer Sales
P.O. Box 6257
Jackson, MS 39288-6257

Southern Tire Mart
Dept 143
P.O. Box 1000
Memphis, TN 38148-0143

Southern Tire Mart, LLC
800 Highway 98
Columbia, MS 39429-8255

Jim F. Spencer Jr.
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205-0650

Christopher J. Steiskal Sr.
Law Offices of Craig M. Geno, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157-6038

Steven Evans
117 Wildwood Trace
Hattiesburg, MS 39402-2353

Joe Stevens
Wise Carter Child & Caraway, P.A.
601 Adeline St.
Hattiesburg, MS 39401-3843

Stone Printing
2919 Hwy 26
Wiggins, MS 39577-9585

Sumitomo Mitsui Finance & Leasing Co.
P.O. Box 530023
Atlanta, GA 30353-0023

Sumitomo Mitsui Finance and Leasing Company
Limited
Kye Law Group, P.C.
201 Old Country Road, Suite 120
Melville, NY 11747-2725

Supervision
P.O. Box 203489
Dallas, TX 75320-3489

Systems 9 Business Solutions
237 Tidewater Road
Hattiesburg, MS 39402-7920

T. Jack Schultz
BURR & FORMAN LLP
For PNC Equipment Finance
190 E. Capitol Street, Suite M-100
Jackson, MS 39201-2149

Tennessee Farmers Mutual Insurance Companies
147 Bear Creek Pike
Columbia, TN 38401-2266

Tenstreet, LLC
120 W 3rd Street
Suite 101
Tulsa, OK 74103-3406

Thomas M Hewitt
Butler Snow LLP
For XTRA Lease LLC
1020 Highland Colony Pkwy Ste 1400
Ridgeland, MS 39157-2139

Tice and Associates
P.O. Box 458
Wiggins, MS 39577-0458

Tim's Body Shop
145 John Willis Road
Wiggins, MS 39577-9346

Timothy Pitts
34 Earl Lane
Lot B
Picayune, MS 39466-6635

Transportation Safety Services
P.O. Box 1290
Daphne, AL 36526-1290

Trewolla Sweatman
317 East Capital Street
Lamar Life Bldg, Suite 505
Jackson, MS 39201-3405

Tri County Air Services
25 Pump Branch Road
Wiggins, MS 39577-8755

Tri-State Truck Center, Inc.
P.O. Box 5858
Jackson, MS 39288-5858

Trimble Maps
P.O. Box 204769
Dallas, TX 75320-4769

Triple E Farms
P.O. Box 306
Wiggins, MS 39577-0306

Trustmark Bank f/k/a Trustmark National Bank
Jim F. Spencer, Jr.
P.O. Box 650
Jackson, MS 39205-0650

Trustmark Bank, successor in interest to Tru
c/o Jim F. Spencer, Jr.
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205-0650

(p)TRUSTMARK NATIONAL BANK
P O BOX 291
JACKSON MS 39205-0291

U.S. Attorney S.D. Mississippi
c/o Internal Revenue Service
1575 20th Avenue, 2nd Floor
Gulfport, MS 39501-2040

U.S. Attorney S.D. Mississippi
c/o U.S. Securities and Exchange Commiss
1575 20th Avenue, 2nd Floor
Gulfport, MS 39501-2040

U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, Suite 900
Atlanta, GA 30326-1382

U.S. Small Business Administration
1835 Assembly Street, Suite 1425
Columbia, SC 29201-2453

U.S. Small Business Administration
c/o U.S. Attorney
Southern District of Mississippi
501 E. Court St., Suite 4.430
Jackson, MS 39201-5025

United States Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201-5022

VFI ABS 2025-1, LLC
c/o Troy Aramburu
15 W South Temple Ste 1200
Salt Lake City, UT 84101-1547

VFI Corporate Finance
2800 East Cottonwood Parkway
2nd Floor
Salt Lake City, UT 84121-7295

VTFNA
P.O. Box 26131
Greensboro, NC 27402-6131

VanPete, LLC
1018 N Flowood Dr
Flowood, MS 39232-9532

Waring Oil Company
P.O. Box 66
Vicksburg, MS 39181-0066

Waters International Trucks, Inc.
P.O. Box 831
Hattiesburg, MS 39403-0831

Webster Capital Finance
c/o Evan S. Goldstein, Esq.
Updike, Kelly & Spellacy, P.C.
225 Asylum Street, 20th Floor
Hartford, CT 06103-1532

Webster/Sterling
Dept E19
707 Texas Avenue, Suite 200D
College Station, TX 77840-1980

Webster/Sterling
Webster Capital Finance
P.O. Box 330
Hartford, CT 06141-0330

Wells Fargo Equipment Finance
P.O. Box 858178
Minneapolis, MN 55485-8178

Wells Fargo Equipment Finance, Inc.
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Wells Fargo Equipment Finance, Inc.
Attn: La Neice Brown
801 Walnut Street, MAC F0006-052
Des Moines, IA 50309-3606

William P. Wessler
William P. Wessler
1624 24th Avenue
PO Box 175
Gulfport, MS 39502-0175

(p)COMMUNITY MEDICAL CENTER
PO BOX 1007
LUCEDALE MS 39452-1007

Andrew R. Wilson
Bennett Lotterhos Sulser & Wilson, P.A.
P.O. Box 1488
Madison, MS 39130-1488

Winston Lee
Burr & Forman LLP
For PNC Equipment Finance
190 E. Capitol St. Ste M-100
Jackson, MS 39201-2149

Workforce QA, LLC
2200 South Main Street
Suite 475
Salt Lake City, UT 84115-2601

XTRA Lease LLC
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite 3600
Attn: Katie Spewak
St. Louis, MO 63102-2726

Xtra LLC
7911 Forsyth Blvd
Suite 600
Saint Louis, MO 63105-3877

Yokohama Tire Corporation
P.O. Box 677087
Dallas, TX 75267-7087

Yokohama Tire Corporation
Wagner, Falconer & Judd, Ltd.
300 North Corporate Drive, Suite 200
Brookfield WI 53045-5833

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

CrossCheck, Inc.
1440 North McDowell Blvd.
Petaluma, CA 94954

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0039

Engs Commercial Finance Co.
One Pierce Place
Suite 1100 W
Itasca, IL 60143

(d)Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

MS State Tax Commission
Bankruptcy Section
P.O. Box 23338
Jackson, MS 39225

PNC Bank, National Association
655 Business Center Drive
Horsham, PA 19044

Penske Truck Leasing Co., LP
PO Box 563
Reading, PA 19606

Siemens Financial Services
P.O. Box 2083
Carol Stream, IL 60132

Simmons Bank
P.O. Box 7009
Pine Bluff, AR 71611-7009

(d)Simmons Bank
P.O. Box 733
Union City, TN 38281

Southern Financial Systems
P.O. Box 15203
Hattiesburg, MS 39404

Trustmark National Bank
248 East Capital Street
Jackson, MS 39201

Wiggins Primary Care
P.O. Box 1007
Lucedale, MS 39452

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

Munn Diesel Repair & Sales
398 Munn Road
Sumrall, MS 39482

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)BMO Bank, N.A.

(d)Bank of Wiggins
c/o Paul S. Murphy
Butler Snow LLP
P.O. Drawer 4248
Gulfport. MS 39502-4248

(d)CET Logistics
P.O. Box 306
Wiggins, MS 39577-0306

(u)CREDITOR ADDED IN ERROR

(u)Aloysius Davis

(d)Demetric Ratcliff
100 Ginger Drive
Hattiesburg, MS 39402-9658

(d)Chuck Evans
32 Madewood Court
Hattiesburg, MS 39402-7948

(d)Ferguson Trucking, LLC
P.O. Box 307
Houston, MS 38851-0307

(d)H&P Leasing
P.O. Box 6257
Jackson, MS 39288-6257

(u)H&P Leasing, Inc.

(d)J.W. Sledge
212 Reservoir Road
Columbia, MS 39429-8543

(d)LesJam
P.O. Box 808
McComb, MS 39649-0808

(d)Long Drive Investments
122 Bellewood Road
Hattiesburg, MS 39402-8811

(d)Love's Travel Stops & Country Stores, I
Andrew R. Turner, esq
4100 First Place Tower
15 East Fifth Street, Ste. 4100
Tulsa, Ok 74103-4305

(d)Memorial Hospital at Gulfport
4500 Thirteenth Street
Gulfport, MS 39501-2569

(d)Miller Transportation
P.O. Box 366
Wiggins, MS 39577-0366

(d)Mitsubishi HC Capital America, Inc.
c/o Chad J. Hammons, Esq.
Jones Walker LLP
3100 N. State St., Ste. 300
Jackson, MS 39216-4013

(d)PNC Equipment Finance
655 Business Center Drive
Horsham, PA 19044-3409

(d)Penske Truck Leasing Co.
P.O. Box 827380
Philadelphia, PA 19182-7380

(d)Robbie Rollin
19572 Brighton Drive
Saucier, MS 39574-6207

(d)Roy Jones
997 Hwy 49
Lot 63
Perkinston, MS 39573-6603

(u)Simmons Bank

(u)Southern States Utility Trailer Sales, Inc

(d)Systems 9 Business Solutions
237 Tidewater Road
Hattiesburg, MS 39402-7920

(d)Triple E Farms
P.O. Box 306
Wiggins, MS 39577-0306

(u)U.S. Small Business Administration

(d)Vanpete, LLC
1018 N Flowood Drive
Flowood, MS 39232-9532

(u)Webster Capital Finance                    (u)XTRA Lease LLC

End of Label Matrix
Mailable recipients   244
Bypassed recipients    29
Total                 273