**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

**IN RE: BIG LEVEL TRUCKING, INC.**
**Debtor**

**CHAPTER 11**
**CASE NO. 25-51204-KMS**

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via email transmission and/or U.S. Mail, postage prepaid, a true and correct copy of the *Motion for Authority to Sell Real Property Outside the Ordinary Course of Business Free and Clear of Liens, Claims and Interests* and the *Notice* in connection therewith (copies of which are attached hereto as Exhibit "A"), to all creditors and parties-in-interest as listed on the matrix on file with the Clerk of the Court (a copy of which is attached hereto as Exhibit "B").

THIS, the 18th day of November, 2026.

Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way, Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Pleadings\COS - Mot to Sell 1727 Dummy Line Rd 11-15-26.wpd

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

**IN RE: BIG LEVEL TRUCKING, INC.**
**Debtor**

**CHAPTER 11**
**CASE NO. 25-51204-KMS**

**NOTICE**

NOTICE IS HEREBY GIVEN that the Debtor herein has filed its *Motion for Authority to Sell Real Property Outside the Ordinary Course of Business Free and Clear of Liens, Claims and Interests* (the "Motion"), a copy of which is attached, incorporated by reference and marked as Exhibit "A."

PLEASE TAKE FURTHER NOTICE that all creditors and parties-in-interest wishing to object to the Motion must file a written objection or other responsive pleading within **twenty-one (21) days** from and after the date of this Notice, with the Clerk of the Court, Mr. Danny L. Miller, the Clerk of the U. S. Bankruptcy Court, Southern District of Mississippi, Dan M. Russell, Jr. U.S. Courthouse, 2012 15th Street, Suite 244, Gulfport, MS 39501, and a copy of any objection must be served upon Craig M. Geno, Esq., and Christopher J. Steiskal, Sr., Esq., Law Offices of Geno and Steiskal, PLLC, counsel for the Debtor, at 601 Renaissance Way, Suite A, Ridgeland, MS 39157. Attorneys and other registered users of the Case Management/Electronic Case Filing (CM/ECF) system shall file any such objection electronically. In the event an objection to the Motion is filed, it will be scheduled for hearing in due course.

DATED, this the 18th day of November, 2026.

Respectfully submitted,

BIG LEVEL TRUCKING, INC.

By Its Attorneys,

LAW OFFICES OF GENO AND STEISKAL, PLLC

By: [signature]
Craig M. Geno

**EXHIBIT "A"**

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way, Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Pleadings\Notice - Mot to Sell 1727 Dummy Line Rd 11-15-26.wpd

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF MISSISSIPPI

CHAPTER 11

IN RE: BIG LEVEL TRUCKING, INC.

CASE NO. 26-51204-KMS

DEBTOR(S)

---

**MOTION FOR AUTHORITY TO SELL REAL PROPERTY OUTSIDE THE ORDINARY COURSE OF BUSINESS FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS**

---

COMES NOW Debtor Big Level Trucking, LLC (the "Debtor"), by and through undersigned counsel, and files this its *Motion for Authority to Sell Real Property Outside the Ordinary Course of Business Free and Clear of Liens, Claims and Interests* (the "Motion"), and in support thereof, would respectfully show unto the Court as follows, to-wit:

1. On August 18, 2025, the Debtor filed this case by filing a Voluntary Petition pursuant to Chapter 11 of the United States Bankruptcy Code.

2. This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334; 11 U.S.C. §§ 105, 363, 541, 1107, related statutes, related rules and various orders of reference. This is a core proceeding.

3. In the exercise of the Debtor's best business judgment, the Debtor has made the decision to liquidate certain real property in an effort to generate credits to pay the indebtedness of secured creditors.

4. Specifically, the property that forms the subject matter of this Motion is approximately 17.08 acres, more or less, located at 1727 Dummy Line Road, Wiggins, MS, 39577, in Stone County, Mississippi (the "Property"). The Property is where the Debtor's business operations are currently located in Wiggins, Mississippi.

**EXHIBIT "A"**

5. The decision to liquidate the Property is in the best interests of all creditors and parties-in-interest herein. The purchaser for the Property is the Stone County School District (the "Purchaser"). The purchase price for the Property is $1,700,000. A copy of the contract for sale of the real property is attached, incorporated by reference and marked as **Exhibit "A"**.

6. The Purchaser is a good faith purchaser, and the sale transaction is an arms-length transaction. The Debtor had no prior connections with the Purchaser before the proposed sale described herein.

7. The Purchaser originally approached the Debtor with the possibility of a "straight" purchase of the Property, but the Debtor had no options to relocate its business. And, since it was in Chapter 11, its changes of obtaining financing/refinancing of a replacement property were not favorable. However, the Debtor and the Purchaser have agreed that the Debtor shall sell the Property to the Purchaser, and then at closing, the Purchaser as landlord, and Debtor as tenant, shall enter into the a commercial lease agreement that is substantially in the form attached to the contract for sale. The initial term of the lease agreement shall be for one (1) year with two (2) renewal terms in increments of six (6) months each, and the rent shall be based upon an appraisal as required by applicable law. The Debtor as tenant will be responsible for all taxes, insurance, utilities, and other charges as set forth in the lease agreement. The Debtor's lease of the Property from the Purchaser, after the sale is final and consummated, will enable the Debtor to continue its business operations while the Debtor searches for a new place to relocate.

8. The Debtor seeks authority of the Court to consummate the sale and then to execute such deed, transfer of title or other related documents which are reasonably necessary to consummate and close the sale of the Property.

9. The Debtor seeks to sell the Property free and clear of liens, claims and security

interests with the exception of ad valorem tax claims which shall be prorated based upon possession, and paid at closing, and with the exception of customary seller's costs of closing, with all valid liens and claims, if any, to attach to the sale proceeds.

10. The Debtor requests that the Court approve the sale for the fair, reasonable, and appropriate contract price of $1,700,000, with the "lease back" provisions.

11. Other grounds to be assigned upon a hearing hereof.

WHEREFORE, PREMISES CONSIDERED, the Debtor respectfully prays that upon a hearing hereof, this Honorable Court will grant the Motion and authorize the Debtor to sell the Property free and clear of liens, claims and interests. The Debtor also prays for all general relief.

THIS, the 18th day of November, 2026.

Respectfully submitted,

BIG LEVEL TRUCKING, INC.

By Its Attorneys,

LAW OFFICES OF GENO AND STEISKAL, PLLC

By: ______________________
Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
Christopher J. Steiskal, Sr.; MSB No. 101654
LAW OFFICES OF GENO AND STEISKAL, PLLC
601 Renaissance Way, Suite A
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com
csteiskal@cmgenolaw.com
N:\Firm Data\Users\Bankrupt\Big Level Trucking, Inc\Pleadings\Mot to Sell 1727 Dummy Line Rd 11-15-26.wpd

## CERTIFICATE OF SERVICE

I hereby certify that I have caused to be served this date, via Notice of Electronic Filing, a true and correct copy of the above and foregoing to the following:

Steven D. Usry, Esq.
Office of the United States Trustee
steven.usry@usdoj.gov

THIS, the 18th day of November, 2026.

Craig M. Geno

# REAL ESTATE PURCHASE AND SALE AGREEMENT

This Real Estate Purchase and Sale Agreement ("**Agreement**") is effectively dated as of the date on which the last of Buyer and Seller signs and delivers this Agreement (the "**Effective Date**") and is entered into by and between **Big Level Trucking, Inc., a Mississippi corporation, as *DEBTOR-IN-POSSESSION* in that certain involuntary Chapter 11 Bankruptcy matter captioned *In re Big Level Trucking*, Cause No. 25-521204-KMS (Bankr. S.D. Miss 2025)**, whose mailing address is P.O. Box 306, Wiggins, MS 39507 ("**Seller**"), and the **Board of Education for the Stone County School District, acting by and through its President**, whose mailing address is 214 Critz Street, Wiggins, MS 39577 ("**Buyer**"). Buyer and Seller are sometimes individually referred to as a "**Party**" and collectively as the "**Parties**".

1. **Sale of Property.** Seller agrees to sell to Buyer and Buyer agrees to purchase from Seller, subject to the terms and conditions of this Agreement, those certain parcel(s) of land commonly referred to as the Tax Parcel No. 107 -36-001.002 (PPIN 7811) and Tax Parcel No. 107 -36-001.006 (PPIN 6600), being in total approximately 17.08 acres, more or less, being located in Stone County, Mississippi and more particularly described in **Exhibit "A"** and made a part hereof (the "**Property**"). All Property referenced in **Exhibit "A"** is being sold by Seller and purchased by Buyer together with all right, title and interest of Seller in and to any timber and improvements thereon, any land lying in the bed of any highway, street, road, opened or proposed, in front of or abutting or adjoining such tracts or pieces of land, all licenses, privileges, riparian and drainage rights, and any easements and appurtenances pertaining thereto. Seller makes no representation as to the exact number of acres in the Property.

2. **Purchase Price.** The Purchase Price shall be **the lesser of**: (i) One Million Seven Hundred and No/100 Dollars ($1,700,000.00); or (ii) the fair market value of the Property as determined by the average of at least two (2) independent appraisals by certified general appraisers licensed by the State of Mississippi as required by Miss. Code Ann. §37-7-301(aa) (the "**Purchase Price**"). The Purchase Price shall be payable by Buyer at Closing in cash, in immediately available funds, subject to prorations, credits, and adjustments set forth in this Agreement and as provided in any order(s) issued by the Bankruptcy Court *In re Big Level Trucking, Inc.*, Cause No. 25-521204-KMS (Bankr. S.D. Miss. 2025) (the "**Bankruptcy Case**").

3. **Deposit.** Within five (5) business days after the Effective Date of this Agreement, Buyer shall deposit with Buyer's counsel, Balch & Bingham LLP ("**Escrow Agent**") the sum of One Thousand and No/100 Dollars ($1,000.00) (the "**Deposit**"). The Deposit shall be placed in Escrow Agent's non-interest bearing trust account and shall be held in escrow pursuant to the terms and conditions of this Agreement. Unless otherwise provided herein, the Escrow Agent shall pay the Deposit to Seller at Closing to be credited to Buyer's payment of the Purchase Price. In the event that Buyer and Seller fail to reach an agreement regarding dispersal of the Earnest Money, the Escrow Agent is authorized to file an interpleader action, and the parties agree that the Escrow Agent will be reimbursed from the Earnest Money for all costs including reasonable attorney's fees.

4. **Inspection and Due Diligence Period.** Beginning on the Effective Date of this Agreement and for a period of time not to exceed one hundred twenty (120) days (the "**Due Diligence Period**"), Buyer and its agents and representatives shall, after reasonable notice to Seller and at reasonable times, be entitled to go upon the Property for the purpose of making or conducting any inspection, investigation or survey reasonably related to the purchase of the Property or to Buyer's prospective use thereof, which inspections include: (i) any and all customary studies, examinations, surveys, inquiries, and inspections, or investigations of or concerning the Property which shall include the right to conduct non-invasive, non-destructive testing of the Property, including a Phase I Environmental Report (specifically including a Phase II Environmental Report or other invasive testing as recommended by Buyer's consultants) and the right to place non-invasive sampling materials about the Property; (ii) conduct such other testing and examinations as may be reasonably necessary subject to the permission of Seller; and (iii) ascertain and confirm the suitability of the Property for Buyer's intended use thereof (collectively, the "**Inspections**"). Buyer shall not permit any mechanic's or materialmen's liens or any other liens to attach to the Property by reason of the performance of any work or the purchase of any materials by Buyer or any other party engaged by Buyer in connection with any Inspections conducted





EXHIBIT "A"

by or for Buyer. Seller shall have the right to have a representative present during all Inspections conducted at the Property. In the event Buyer obtains a Phase I Environmental Report or other environmental report prior to the expiration of the Due Diligence Period that recommends a Phase II Environmental Report be undertaken and Buyer undertakes such additional inspections (with Seller's consent as described in the preceding sentence) but Buyer, despite good faith efforts, is unable to obtain a final Phase II Environmental Report prior to the expiration of the Due Diligence Period (as the same may be extended), then Buyer may preserve its right to raise title defects and to terminate this Agreement for any reason, including diminution of value of the Property due to one or more recognized environmental condition(s), until the later of receipt of a final and satisfactory Phase II Environmental Report and if so terminated, Buyer shall be reimbursed for the full amount of the Deposit. In the event Buyer obtains a survey of the Property, a copy of which shall be provided to Seller upon receipt, then Seller agrees to quitclaim the surveyed legal description to Buyer, if requested, at Closing. Buyer agrees to hold harmless and indemnify Seller from any and all liability arising out of Buyer's inspections and its Due Diligence as allowed above. Buyer further agrees to repair any and all damage caused by such of Buyer's Inspections. If Buyer determines, in its sole and absolute discretion, that it is unsatisfied with any aspect of the Property prior to the expiration of the Due Diligence Period, Buyer shall have the right to terminate this Agreement by written notice to Seller given prior to the expiration of the Due Diligence Period, in which event the Title Company shall return the Deposit to Buyer and the parties shall have no further obligations to each other except for those obligations that expressly survive termination. Should Buyer terminate this Agreement at the end of Due Diligence for any reason whatsoever, Buyer shall provide Seller copies of any Inspections performed on the Property.

5. **Title.** Seller shall convey to Buyer merchantable and insurable, fee simple title to the Property by general warranty deed. Prior to the expiration of the Due Diligence Period, Buyer shall obtain and deliver to Seller a written commitment issued by a title insurance underwriter reasonably acceptable to Buyer (the "**Title Company**") binding the Title Company to insure good and marketable title to the Property subject to exceptions for ad valorem taxes for the year of closing, prior reservations of oil, gas and mineral rights and interests, and all applicable federal, state and local governmental statutes, ordinances and regulations, and other exceptions acceptable to Buyer (the "**Permitted Exceptions**") by its Owner Title Insurance Policy upon recording of the Deed (the "**Title Commitment**"). Seller shall (i) pay in full all ad valorem taxes and assessments of any kind constituting a lien against the Property; (ii) release or cause to be released any mortgages, deeds of trust, deeds to secure debt, UCC fixture filings, title liens or similar instruments which encumber the Property; and (iii) cancel or cause to be cancelled and discharged (1) any mechanics', contractors' or similar liens which encumber the Property; (2) any leases (including agricultural and hunting), options to purchase or right(s) of first refusal to purchase the Property; and (3) any judgment or tax liens which encumber the Property (the matters referenced in the foregoing clauses (i) through and including (iii) are collectively referred to herein as "**Monetary Liens**").

6. **Documents Affecting Title.** No later than ten (10) days from execution of this Agreement by Seller, Seller shall, to the extent in Seller's possession and/or its agents and attorneys, provide Buyer with the following: (i) any surveys of the Property, (ii) environmental reports of the Property, (iii) unrecorded leases related to the Property, (iv) all governmental permits or approvals pertaining to the Property or use thereof; (v) sufficient information for all outstanding monetary obligations related to the Property, including of any Monetary Liens; (vi) complete and accurate copies of all permits and authorities related to the Property and use thereof; and (vii) any correspondence from any governmental authorities related to the Property or use thereof. Upon review of these documents, Buyer reserves the right for ten (10) days to make such additional requirements as it may deem necessary (collectively, the "**Seller's Documents**").

7. **Defects in Title.** Prior to the expiration of the Due Diligence Period, Buyer shall notify Seller, in writing, of any title objections revealed in the Inspections, Survey or Title Commitment ("**Buyer's Objections**"). Matters not raised in Buyer's Objections shall be deemed accepted by Buyer. Buyer shall also have the right to re-examine title to the Property up to and including the date of Closing and to raise any additional objections to title arising after the date of the Title Commitment ("**Buyer's Updated Objections**"). Matters not raised in Buyer's Updated Objections shall be deemed accepted by Buyer. Seller may, in

Seller's sole and absolute discretion and at Seller's sole cost, make reasonable efforts to cure Buyer's Objections, including performing recommended remediation to the Property in accordance with applicable law due to any recognized environmental condition, and Seller shall deliver all curative material to Buyer. In the event Seller fails, refuses, or is unable to cure the title defects to the reasonable satisfaction of Buyer on or before fifteen (15) days after the date of Buyer's Objections or Buyer's Updated Objections, then Buyer shall notify Seller in writing whether Buyer: (a) approves Seller's title as being marketable, or (b) elects to accept such title as Seller is able to deliver, or (c) elects to grant a request by Seller for additional time in writing for title curative, or (d) rejects Seller's title as unmarketable, in which event this Agreement shall become void and Escrow Agent shall promptly return the Earnest Money to Buyer.

8. **Closing**. The settlement or consummation of the purchase and sale contemplated by this Agreement ("**Closing**") shall be held on a mutually agreeable date not more than thirty (30) days from the expiration of the Due Diligence Period ("**Closing Date**") or a mutually agreed upon date. Settlement shall take place at the office of Balch & Bingham, LLP, 1310 Twenty-Fifth Avenue, Gulfport, Mississippi 39501 (the "**Buyer's Counsel**"); however, the Closing may be handled by delivery to Buyer's Counsel of closing documents which have been dully executed under the supervision of the executing party's attorney.

   a. Seller shall deliver the following documents, all of which will be duly executed and acknowledged (where appropriate):

      i. A General Warranty Deed (the "**Deed**") executed by Seller, incorporating as an exhibit therein a final, non-appealable Order under Section 363 of the U.S. Bankruptcy Code authorizing the sale free and clear of any Monetary Liens;
      ii. An ad valorem tax proration agreement;
      iii. Lease Agreement;
      iv. A Non-Foreign Person Affidavit;
      v. A tax information form for 1099 reporting purposes;
      vi. Seller's Settlement Statement;
      vii. An Incumbency Certificate;
      viii. A written certificate stating that all representations and warranties contained in Section 10 remain, as of the Closing Date, true, correct, and complete in all material respects as when first made hereunder, which will survive the Closing for a period of three (3) years;
      ix. The Title Company's standard form Gap Affidavit, Broker's Lien Affidavit, and Seller's/Owner's Affidavit with such disclosures and qualifications as Seller deems necessary to accurately represent matters of title addressed therein;
      x. Seller's proof of proper formation and due authorization prior to closing the transaction by providing: (a) a certificate of current good standing from each applicable jurisdiction; (b) copies of the Seller's formation documents (e.g., articles of incorporation, certificate of formation, etc.) and any amendments thereto; (c) copies of the Seller's current governing documents (e.g., by-laws, operating agreement, partnership agreement, etc.) and any amendments thereto; and (d) a written consent or resolution executed by the governing body of the Seller authorizing the transaction and designating the person(s) who will execute the instruments. These requirements will also apply to any upstream entities acting for and on behalf of Seller; and
      xi. Such additional documents, including but not limited to a broker's lien affidavit, as might be reasonably required by the Escrow Agent and Title Company to consummate the sale of the Property, subject to Seller's approval of the form of same.

   b. At Closing, Buyer shall deliver the following documents:

      i. Buyer's Closing Settlement Statement;
      ii. An ad valorem tax proration agreement;
      iii. Lease Agreement; and

iv. Such additional documents, including but not limited to a broker's lien affidavit, as might be reasonably required by the Escrow Agent, the Bankruptcy Court and Title Company to consummate the sale of the Property, subject to Buyer's approval of the form of same.

9. **Closing Costs.** Closing costs and expenses shall be paid as follows:

| | |
|---|---|
| Buyer | Title Examination / Search; |
| Split | Closing costs (Split 50/50); |
| Buyer | Appraisal costs; |
| Seller | The cost of Seller's attorney retained for Seller's sole representation; |
| Buyer | The cost of Buyer's attorney retained for Buyer's sole representation; |
| Buyer | Recording deed; |
| Buyer | Title Insurance Premium-Owner's policy; |
| Buyer | Title Insurance Premium-Loan policy (if applicable); |
| Buyer | Environmental Site Assessment (Phase I and Phase II); |
| Buyer | Survey; and |
| Seller | Costs of obtaining and recording releases of any Monetary Liens and curing Title Objections, including environmental remediation. |

Taxes and assessments for the year of the Closing are assumed by the Buyer. The Tax Parcels Numbers comprising the Property are listed as follows: Parcel No(s). Tax Parcel No. 107 -36-001.002 (PPIN 7811) and Tax Parcel No 107 -36-001.006 (PPIN 6600).

Buyer's obligation to pay the appraisal and other Due Diligence costs in connection with Inspections, as contemplated in this Agreement, is subject to Seller's strict obligation to promptly reimburse the Buyer for such expenses in the event Seller terminates this Agreement as contemplated in Section 16(a) of this Agreement. This obligation will expressly survive termination of this Agreement.

10. **Seller's Representations and Additional Covenants.** Seller represents and covenants that each of the following is true and correct on the date of this Agreement and shall be true and correct on the date of Closing, and it shall be a condition of Buyer's obligation to close the purchase of the Property that each of the following is true and correct on the date of Closing:

a. Subject to the conditions precedent in Section 16, Seller is duly authorized to enter into and perform its obligations under this Agreement. The individual(s) executing this Agreement on behalf of Seller have all requisite authority to execute this Agreement; and this Agreement, as executed, is valid, legal and binding upon Seller upon the occurrence of the requirements of Section 16(d).

b. Seller has no actual knowledge of any pending or threatened condemnation or similar proceeding or assessments affecting the Property or any portion thereof, nor has Seller knowledge that any such action is presently contemplated.

c. To actual Seller's knowledge during Seller's time of ownership: (i) no "hazardous substances", as that term is defined in the Comprehensive Environmental Response, Compensation, and Liability Act, and the rules and regulations promulgated pursuant thereto, or any other pollutants, toxic materials, or contaminants have been or shall prior to Closing be discharged, disbursed, released, stored, treated, generated, disposed of, or allowed to escape on the Property in violation of applicable law; (ii) no underground storage tanks are located on the Property or were located on the Property and subsequently removed or filled; (iii) the Property has not been used as a gas station, cemetery, landfill, or as a dump for garbage or refuse; and (iv) the Property has not previously been and is not currently listed on the Mississippi Department of Environmental Quality's CERCLA/Uncontrolled Sites File List. As of the Effective Date, Seller has not received any notice or demand from any governmental or regulatory agency or authority requiring Seller to remove any hazardous substances or contaminants or toxic materials from the Property.

d. Seller has not entered into any unrecorded contracts, options, leases, servitudes, conveyances or other agreements affecting the use, title, occupancy or development of and rights appurtenant to the Property.

The representations,warranties and agreements set forth in this paragraph shall survive Closing for up to 3 years.

11. **Default.**

a. If the sale and purchase of the Property is not closed because of default of Buyer, and if Seller is not in default under this Agreement, at the option of Seller, the Deposit shall be delivered to Seller as liquidated damages, and this shall be Seller's sole remedy for Buyer's default hereunder. It is understood and agreed that Seller's damages in the event of Buyer's default cannot be ascertained with reasonable certainty at this time and that both parties have agreed to the amount of the liquidated damages in lieu of any suit for actual damages.

b. If the sale and purchase of the Property is not closed because of default of Seller and if Buyer is not in default under this Agreement, at the option of Buyer, (i) the Deposit shall be returned to Buyer upon demand, or (ii) Buyer may seek to enforce specific performance of Seller's obligations hereunder.

12. **Possession.** At Closing, Seller shall deliver to Buyer exclusive use and possession of the Property, subject to that certain Lease Agreement (defined hereinbelow) as contemplated in Section 17 of this Agreement.

13. **Insurance; Risk of Loss**. Seller will maintain insurance on the Property until Closing. The risk of loss or damage to the Property prior to Closing by casualty, condemnation, or otherwise shall be borne by Seller.

14. **Notices.** Any notice required or permitted to be given by the terms of this Agreement or under any applicable law by either party shall be in writing and shall be either hand delivered, sent by overnight courier or sent by certified or registered mail, postage prepaid, return receipt requested. Such written notice shall be addressed as set forth on the signature pages hereinbelow. Any party may, by subsequent written notice, designate a different address or party for receiving notice. Notice shall be deemed to have been given when hand or courier delivered or two (2) days after being deposited in the U.S. certified mail, properly addressed and with the full first class postage affixed.

15. **Condemnation.** Should any governmental entity having the power of condemnation initiate eminent domain proceedings prior to the time of Closing hereunder to condemn any portion of or any interest in the Property, Buyer, at its sole option, may elect to:

a. Terminate Buyer's obligation to purchase the Property by giving written notice to Seller within ten (10) days after notification and receive a refund of the Deposit; or

b. Complete the purchase of the Property in accordance with the terms of this Agreement without diminution of the purchase price or change of the terms hereof, in which event Seller shall assign to Buyer all sums to be awarded or to be awarded in connection with said condemnation. Seller shall not negotiate a settlement of any pending or threatened eminent domain proceeding without the prior written consent of Buyer.

16. **Conditions Precedent to Closing; Approvals.** The undersigned Parties recognize that this Agreement is being executed in connection with the sale of 16th Section Property for industrial purposes as contemplated by Miss. Code Ann. § 29-3-29 and that the subject property of this Agreement has been identified by Buyer as potential replacement property in lieu of the 16th Section Property as required by statute. In addition, the undersigned Parties also recognize that the Seller is a debtor-in-

possession after having filed Chapter 11 Bankruptcy in the Bankruptcy Case. Therefore, the obligations of Seller and Buyer to consummate the purchase and sale contemplated by this Agreement are strictly conditioned upon each of the following having occurred within nine (9) months after the Effective Date (the "**Outside Conditions Date**"), unless waived in writing by the party entitled to the benefit of such condition and only to the extent such waiver is permitted by applicable law:

a. **Appraisal and Minutes.** Buyer shall obtain an appraisal of the Property and spread a finding on its minutes that the Purchase Price is at or above the fair market value of the Property, along with all other findings and determinations required by Miss. Code Ann. §29-3-29; *provided, however*, in the event the updated appraised value of the Property is less than seven and one-half percent (7.5%) of One Million Seven Hundred and No/100 Dollars ($1,700,000.00) then the Seller shall have the unilateral right to terminate this Agreement subject to Seller's obligation to reimburse Purchaser for all out-of-pocket expenses incurred in connection with the appraisals and any other costs of Due Diligence reasonably incurred by Purchaser in connection with the Inspections contemplated in this Agreement.

b. **Sale of Existing Sixteenth Section Land.** Buyer shall be ready, willing and able to close on the sale of the Sixteenth Section Property to Anduril Industries, Inc. under a separate binding agreement.

c. **Governmental Approvals.** Buyer shall have obtained all necessary governmental approvals in connection with the Closing, including the approvals of the Board of Supervisors of Stone County, the Mississippi Development Authority and the Secretary of State of Mississippi, and any other approvals or consents required by law to the acquisition of the Property on the terms of this Agreement, including the Lease Agreement as contemplated in Section 17 of this Agreement.

d. **Bankruptcy Court Approval**. Seller shall have obtained a final, non-appealable Order under Section 363 of the U.S. Bankruptcy Code authorizing the sale of the Property to Buyer free and clear of any Monetary Liens, in a form reasonably satisfactory to Buyer and Title Company.

Each party shall use reasonable, good faith efforts to satisfy the conditions set forth in this Section 16. Either party may terminate this Agreement by written notice to the other party if the conditions set forth in this Section 16 have not been satisfied by the Outside Conditions Date, in which case the Title Company shall return the Deposit to Buyer and the parties shall have no further obligations to each other except for those obligations that expressly survive termination.

17. **Agreement to Enter into Lease Agreement**. At Closing, Buyer, as landlord, and Seller, as tenant, shall enter into that certain Lease Agreement substantially in the form attached hereto as **Exhibit B** (the "**Lease Agreement**"). The Lease Agreement shall become effective as of the Closing and shall permit Seller to continue to use and occupy the Property following the Closing for the purpose of conducting and supporting Buyer's ongoing business operations, subject to the terms, conditions, limitations and obligations set forth in the Lease Agreement. The undersigned Parties recognize that the Lease Agreement must secure all necessary governmental approvals and meet all requirements for lease of 16th Section lieu lands as contemplated under applicable law. The parties acknowledge and agree that the Lease Agreement constitutes an integral part of the transactions contemplated by this Agreement, and neither Buyer nor Seller shall be obligated to consummate the Closing unless the Lease Agreement has been duly executed and delivered by both parties. Except as expressly provided in this Agreement, the rights and obligations of Buyer and Seller with respect to Seller's post-Closing possession, use and occupancy of the Property shall be governed exclusively by the Lease Agreement. The initial term of the Lease Agreement shall be one (1) year with two (2) renewal terms in increments of six (6) months each, the rent shall be based upon an appraisal as required by applicable law and Seller, as tenant, shall be responsible for all taxes, insurance, utilities and other charges as set forth in the Lease Agreement. Seller, as tenant, shall use and occupy the Property solely in accordance with

the Lease Agreement and shall comply with all applicable laws, permits, restrictions and requirements relating to its use and occupancy of the Property.

18. **Miscellaneous.** This Agreement may be modified only by an instrument in writing signed by both parties. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective successors and assigns. The waiver of any breach of any term or condition hereof shall not be deemed a waiver of any other or subsequent breach, whether of like or of different nature. The captions contained herein are only for the convenience of the parties and do not modify, amplify or give full notice of any of the terms, covenants and conditions of any article, paragraph, clause or provision of this Agreement. This agreement shall be interpreted and construed in accordance with the laws of the State of Mississippi. The invalidity or unenforceability of any provision hereof shall not affect the validity or enforceability of the remainder of this Agreement. Whenever used herein, the singular form shall include the plural and vice versa, and the use of any gender shall include all genders, as appropriate.

19. **Entire Agreement.** This Agreement contains the entire agreement between the parties. There are no promises, agreements, conditions, undertakings, warranties or representations, oral, written, express or implied, between the parties other than as herein set forth.

20. **Brokerage**. Both Buyer and Seller each represent and warranty unto the other that there are no real estate or brokerage commissions payable in connection with the transactions contemplated by this Agreement, including but not limited to, compensation payable to another broker under a previous listing agreement or "protection period" clause in a previous agreement.

21. **Like-Kind Exchange**. Either party, at any time ten (10) days prior to the Closing Date, may elect to affect a simultaneous or non-simultaneous tax-deferred exchange pursuant to Section 1031, and the regulations pertaining thereto, of the Internal Revenue Code of 1986, as amended. Any Party requesting to use a 1031 Exchange shall bear all costs associated with same. Buyer and Seller expressly agree to cooperate with each other in connection with any such exchange in any manner which shall not impose any additional cost or liability upon the non-exchanging party, including without limitation by executing any and all documents, including escrow instructions or agreements consenting to an assignment of rights and obligations hereunder to an exchange entity, which may be necessary to carry out such an exchange; provided, however, that Buyer shall not be required to take title to any property in order to accommodate Seller in effecting the exchange; and provided further, however, that any election to effect such an exchange shall not delay the Closing Date unless otherwise expressly provided for herein.

22. **Time is of the Essence; Successors/Assigns**. Time is of the essence of this Agreement. The warranties and agreements herein extend to and are obligatory upon the heirs, executors, administrators, successors and assigns of the parties hereto.

23. **Counterparts**. This Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

*[See separate signature page(s) attached]*

This Agreement is made and executed in this ___________day of ________, 2026.

**BUYER:**

Board of Education for the
Stone County School District

______________________________

By: Mohamad Schuman
Its: Board President

I (We) do hereby accept the foregoing Agreement this ___day of _______________, 2026.

**SELLER:**

**DEBTOR-IN-POSSESSION *in re Big Level Trucking, Inc.*, Cause No. 25-521204-KMS**

Big Level Trucking, Inc.,
a Mississippi corporation

______________________________

By: Steven H. Evans
Its: Director, President, Chief Executive Officer

THIS IS A LEGALLY BINDING CONTRACT. PRIOR TO SIGNING IT YOU ARE ADVISED TO SEEK LEGAL ADVICE. IT CONTAINS THE ENTIRE AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CHANGED EXCEPT BY THEIR MUTUAL WRITTEN CONSENT.

# Exhibit A

## Legal Description of the Property

PARCEL NO. 1: 10 acres, more or less, in the Southeast Quarter of the Northeast Quarter and in the Northeast Quarter of the Southeast Quarter, Section 36, Township 2 South, Range 12 West, described as:

Begin at the Northeast corner of said Northeast Quarter of Southeast Quarter and then run South along the forty line 545.0 feet; thence run North 66 degrees 47 minutes West 1247.0 feet to the center of a public road; thence run Northeasterly along the center of said road as follows: North 55 degrees 44 minutes East 413.0 feet and North 48 degrees 42 minutes East 168.5 feet; thence run South 42 degrees 08 minutes East 366.0 feet to the forty line; thence run South 87 degrees 30 minutes East along the forty line 433.0 feet to the point of beginning.

The property is subject to the existing public road right-of-way. The property is located in the Southeast Quarter of Northeast Quarter and the Northeast Quarter of the Southeast Quarter of said Section.

[Exhibit A continued on the following page.]

PARCEL NO. 2: 7.4 acres, more or less, in the Southwest Quarter of the Northwest Quarter, Section 31, Township 2 South, Range 11 West, and in the Southeast Quarter of the Northeast Quarter, Section 36, Township 2 South, Range 12 West, Stone County, Mississippi, described as:

Commence at the Southwest corner of the Southwest Quarter of the Northwest Quarter, Section 31, Township 2 South, Range 11 West, being also the Southeast corner of the Southeast Quarter of the Northeast Quarter, Section 36, Township 2 South, Range 12 West, for the Point of Beginning: Thence from said Point of Beginning, run South 88 degrees 20 minutes East along and with the South boundary of said Southwest Quarter of the Northwest Quarter, Section 31, for 26.94 feet to the Southwest corner of property conveyed to Reeves by deed dated December 20, 2001, per Deed Book 182 page 497; thence run North 00 degrees 54 minutes 48 seconds East along and with the West boundary of the Reeves property for 371.38 feet to the Northwest corner of the Reeves property, said point also being the Southwest corner of property conveyed to Rains and Wilson by deed dated February 4, 2000, per Deed Book 166 page 419; thence run North 3 degrees West along and with the West boundary of the Rains and Wilson property for 200 feet to the Northwest corner of the Rains and Wilson property, said point being on the South boundary of property conveyed to Star Chevrolet Company, Inc., by deed dated July 9, 1975, per Deed Book 56 page 158; thence run South 87 degrees West along and with the South boundary of the Star Chevrolet Company property and then along and with the South boundary of the property conveyed to Robert P. Regan, Jr., by deed dated April 2, 1987, per Deed Book 93 page 530, for 489.6 feet to the centerline of Dummyline Road; thence run South 34 degrees 30 minutes West along and with the centerline of Dummy line Road for 135.1 feet; thence run South 42 degrees 30 minutes West along and with the centerline of Dummyline Road for 200 feet to the Northwest corner of property conveyed to Charles Guy Evans & Sons, Inc., by deed dated February 28, 1992, per Deed Book 117 page 153; thence run South 42 degrees 8 minutes East along and with the North and East boundary of the Charles Guy Evans & Sons property for 369.84 feet to the South boundary of said Southeast Quarter of Northeast Quarter, Section 36; thence run South 88 degrees 20 minutes East along and with the South boundary of said Southeast Quarter of Northeast Quarter, Section 36, for 433 feet back to the Point of Beginning.

SUBJECT TO a 25 foot right of way reserved along the western margin of the property.

[End of Exhibit A.]

# Exhibit B

**Lease Agreement**

[see attachment]

**THIS INSTRUMENT WAS PREPARED BY AND WHEN RECORDED RETURN TO:**

Balch & Bingham LLP
Mark E. Bond (MSB No. 103992)
1310 Twenty-Fifth Avenue
Gulfport, MS 39501
Telephone: (228) 864-9900

**STATE OF MISSISSIPPI**
**COUNTY OF STONE**

**COMMERCIAL LEASE AGREEMENT OF LAND IN LIEU OF 16TH SECTION PUBLIC SCHOOL TRUST LAND**

THIS COMMERCIAL LEASE AGREEMENT OF LAND IN LIEU OF 16TH SECTION PUBLIC SCHOOL TRUST LANDS, (hereinafter "**Lease Agreement**"), is made and entered into this the _______ day of ______________________________, 2026 by and between the LESSOR,

**Board of Education, acting for and on behalf of the Stone County School District**

**214 Critz Street, Wiggins, MS 39577**

**Telephone: (601) 928-7247**

and LESSEE,

**Big Level Trucking, Inc., a Mississippi corporation,**

**P.O. Box 306, Wiggins, MS 39507**

**Telephone: (601) 928-3770**

**Indexing Instructions**: Pt. of SW ¼ NW ¼, Sec. 31, T2S, R11W, and Pt. of SE ¼ NE ¼; Pt. NE ¼ SE ¼, Sec. 36, T2S, R12W, Stone County, MS

WITNESSETH:

That, for the term and in consideration of the rentals hereinafter set forth, and the covenants, conditions, and obligations to be observed and performed by LESSEE, and by the authority and under the direction of the LESSOR, as recorded in Minute Book ____, Page ____, LESSOR does hereby lease and rent unto LESSEE the following described land (hereinafter the "**Leased Premises**") to-wit:

Lands in lieu of 16th Section Public School Trust Lands being located in Pt. of SW ¼ NW ¼, Sec. 31, T2S, R11W, and Pt. of SE ¼ NE ¼; Pt. NE ¼ SE ¼, Sec. 36, T2S, R12W, Stone County, MS

MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND INCORPORATED BY REFERENCE AS IF COPIED FULLY HEREIN.

**1. Term.** Subject to the other provisions herein contained, the term of this Lease Agreement shall be for one (1) year, beginning the ___ day of ______________, 2026, and ending on the ___ day of ______________, 2027 (called the "**Primary Term**"). For purposes of this Lease Agreement the Anniversary Date shall be ___ day of ______________ each year.

It is expressly agreed and understood by all the parties hereto that part of the consideration given for the execution and delivery of this instrument is the option hereby granted to LESSEE to renew this Lease Agreement for two successive or "secondary" terms of six (6) months each, under the same terms, conditions, and stipulations set forth herein, including the rent adjustment under Paragraph 3. LESSEE shall exercise said option to renew the then-applicable renewal term by notifying LESSOR in writing no less than sixty (60) days in advance of the then-expiring term and by tendering the adjusted annual rental, as prorated for the applicable renewal period, to LESSOR at its above-stated address prior to the expiration of the then-expiring term as may be required by statute.

**2. Annual Rent.** LESSEE covenants and agrees to pay as rent to LESSOR the sum of ($ ________________________) for the first year of this lease which annual rent amount shall be due at the time of approval by the Board of Education. Rent set forth herein is based upon an appraisal as required under applicable law. The obligation of LESSEE to pay rent under this Lease Agreement is unconditional, and the rent shall not be subject to set off for any reason or cause; *provided, however*, in the event of early termination of this Lease Agreement by LESSEE in accordance with Paragraph 31, then LESSOR will promptly reimburse LESSEE for such annual rent paid in advance for the period following the effective date of termination. In the event the LESSEE exercises a renewal term then rents shall be adjusted annually pursuant to the rent adjustment clause contained in Paragraph 3 of this Lease Agreement. In the event LESSEE is delinquent in the payment of rent, LESSEE shall pay a late charge equal to fifteen percent (15%) of the amount of rent past due for more than 30 days and thereafter shall pay interest on any rent past due at an annual rate (the "**Default Rate**") equal to the maximum rate then allowed by law or, if there is no maximum rate, then a rate equal to five percent per annum above the discount rate, excluding any surcharge thereon, on ninety-day commercial paper in effect at the Federal Reserve Bank in the Federal Reserve district in which LESSOR is located, calculated according to the actuarial method.

**3. Rent Adjustment.** In the event of LESSEE's exercise of a renewal term as contemplated in Paragraph 2 of this Lease Agreement then LESSOR shall, at the end of the initial lease term, adjust the annual rent by the increase in the Consumer Price Index-All Urban Consumers ("**CPI**"), and thereafter notify LESSEE of the annual rent for the ensuing lease year.

(a) LESSOR shall calculate the amount of the rent adjusted by the CPI and notify LESSEE, and the rent for the ensuing lease year shall be fixed as adjusted by the CPI. Said rental amount shall be calculated by multiplying the last effective annual rent for the then ending lease year by a fraction, having as its numerator the monthly

CPI index number for the first calendar month of the ensuing lease year, and as its denominator the monthly CPI index number for the first calendar month of the then ending lease year. However, in no event shall the adjusted annual rent for any one (1) year period of the lease term be less than the rental amount for the previous lease year.

(b) If for any reason the rent adjustment calculation is not completed or LESSOR has not notified LESSEE of the rent adjustment for the ensuing lease before the Anniversary Date, LESSOR and LESSEE agree that the interim annual rent pending completion of the calculation of the rent adjustment shall be equal to the annual rent in effect as of the close of the then ending lease year. LESSEE agrees to pay the interim annual rent by the annual rent due date. If the annual rent for the ensuing lease year increases as a result of the adjustment procedure set forth in Subpart (a) and (b) of Paragraph 3 of this Lease Agreement, then LESSEE shall pay to LESSOR such excess within ten (10) days of receiving notice of such increase.

(c) This annual adjustment shall satisfy the rent adjustment required not less than once every ten (10) years under Miss. Code Ann. §29-3-69 (1972) as amended. The method of rental adjustment utilized herein is for the purpose of facilitating stable operation of the commercial operation on the Premises.

In the event the rent adjustment section of Paragraph 3 of this Lease Agreement shall be declared inadequate for any reason by a court of competent jurisdiction, such declaration shall not affect or be construed to affect the validity of this Lease Agreement, and the Lease Agreement shall continue in full force and effect and be binding on the parties, subject only to the establishment of a rental adjustment section that, in the opinion of the appropriate court having jurisdiction, meets the requirements of Miss. Code Ann. §29-3-63 and §29-3-69 (1972) presently in effect.

**4. Taxes.** LESSEE covenants and agrees to pay any and all general and special taxes and assessments, including drainage taxes, if ever any there be, applicable to the above-described property and LESSEE's interest therein; further, LESSEE covenants and agrees to pay any recording fees in connection with this Lease Agreement or any other fees so determined by law. All payments for general and special taxes and assessments, including drainage taxes, shall be made directly to the governmental authority responsible for collecting such taxes and assessments.

**5. Default.** The parties herein expressly agree that if DEFAULT shall be made in the payment of any general or special tax or assessment or rent due, pursuant to this Lease Agreement, then and in any event of DEFAULT it shall be lawful for LESSOR to enter upon said premises, or any part thereof, after LESSOR has provided thirty (30) days prior written notice to LESSEE and upon LESSEE'S failure to cure such DEFAULT within said thirty (30) days, either with or without the process of law, to re-enter and repossess the same, and to distrain from any rent or assessment that may be due thereon, at the election of LESSOR, but nothing here is to be construed to mean that LESSOR is not permitted to hold LESSEE liable for any unpaid rent or assessment to that time.

As to all other conditions, covenants, and obligations imposed on LESSEE herein, enforcement shall be by proceeding at law or in equity against any person violating or attempting to violate said conditions, covenants, and obligations to restrain violation and recover damages, if any, including reasonable expenses of litigation including but not limited to fees charged by attorneys, expert witnesses, surveyors and appraisers, which LESSEE expressly agrees to pay. Such enforcement by proceedings at law or in equity may be instituted at any time after thirty (30) days written notice. Enforcement proceedings shall include the right of the Tax Collector to recover any tax, assessment, fees and costs.

**6. Remedies.** In the event of any FORFEITURE, DEFAULT, OR CANCELLATION of this Lease Agreement or termination of the term therefore aforesaid, LESSEE shall promptly and peaceably quit, deliver up and surrender possession of the leased property and all LESSOR-owned structures and improvements thereon to the said LESSOR, and thereupon this Lease Agreement and all agreements and covenants on LESSOR's behalf to be performed and kept, shall cease, terminate, and be utterly void, the same as if the Lease Agreement had not been made. At

LESSOR's option LESSEE shall be required to remove all LESSEE-owned improvements. In addition thereto LESSOR shall be entitled to whatever remedies it may have at law or equity for the collection of any unpaid rental hereunder, or for any other sums, for damages or otherwise, that it may have sustained on account of the LESSEE's non-fulfillment or nonperformance of the terms and conditions of this Lease Agreement including costs for removing LESSEE owned improvements.

Immediately upon the termination of this Lease Agreement, whether by FORFEITURE, DEFAULT, or CANCELLATION, LESSOR shall be entitled to take possession of the Leased Premises and all LESSOR-owned improvements thereon absolutely, and custom, usage, or law to the contrary notwithstanding. Any removal of property from the Leased Premises shall be accomplished so as to leave said the Leased Premises in a condition satisfactory to LESSOR. At LESSOR'' option LESSEE shall remove all of the LESSEE's property within thirty (30) days of LESSOR's possession. LESSEE shall be subject to the accrual of rent during said thirty (30) day period.

7. **Curing Default.** Notwithstanding any DEFAULT provisions of this Lease Agreement, any present or future holder of a mortgage or deed of trust securing money loaned on facilities located on the Leased Premises shall have the right of a thirty (30) day notice of default within which to cure any DEFAULT which may be cured by the payment of money. In addition, for any other DEFAULT for which a forfeiture of said Lease Agreement may be invoked, such holder of such mortgage or deed of trust shall bc entitled to a notice in writing of the claimed DEFAULT and shall have a reasonable time, which shall not be less than Thirty (30) days, either to require the correction of such DEFAULT or in lieu thereof to protect itself through the exercise of a power of sale and thereby acquire a leasehold in said property and correct such DEFAULT. LESSEE hereby covenants and agrees to notify LESSOR of the existence of all such mortgages, deeds of trust, or other secured encumbrances, and that, in the absence of such notice, LESSOR has no obligation whatever to notify any such holder of said encumbrance.

8. **Assignment.** This lease SHALL NOT BE ASSIGNED OR SUBLEASED. Assignment or sublease of this Lease Agreement or any rights hereunder shall automatically terminate this lease without any further notice or action by LESSOR. In the event LESSEE owns improvements on the Leased Premises, any purchaser of said improvements or any person or entity holding a contract to purchase said improvements shall have the right of first refusal to negotiate a new lease agreement with LESSOR.

9. **Regulatory Compliance.** LESSEE shall comply with all applicable laws, rules, and regulations concerning LESSEE's use and occupancy of the Leased Premises and/or obligations under this Lease Agreement. This obligation shall include, but not be limited to, compliance with all federal, state and local environmental regulations concerning the air, water and soil, endangered species, wetlands, and other laws, rules and regulations that may presently exist or hereafter be adopted. In the event of contamination of the air, water or soils arising out of any LESSEE use, LESSEE shall be responsible for all mandated reporting, remediation and monitoring with this obligation to survive termination of this Lease Agreement. Notwithstanding the requirements of this paragraph LESSEE:

(a) Except as modified by <u>Paragraph 22</u> below, LESSEE will not use, generate, manufacture, produce, store, release, discharge or dispose of on, under or about the Leased Premises or transport to or from the Leased Premises any hazardous substance or pollutant (as either may be defined by any present or future laws or regulations of any governmental authority or by any administrative or judicial decisions) or any solid wastes and will not allow any other person to do so.

(b) Shall keep and maintain the Leased Premises in compliance with and shall not cause or permit the Leased Premises to be in violation of any environment laws or regulations nor any laws or regulations pertaining to the disposal of solid, liquid, or gaseous wastes, both hazardous, and non-hazardous.

(c) Shall give prompt written notice to LESSOR and the Secretary of State of:

1) Any proceeding or inquiry by any governmental authority with respect to the presence of any solid wastes or hazardous substance on the leased premises or the migration thereof from or to other property;
2) All claims made or threatened by any governmental authority with respect to the presence of any solid wastes or hazardous substance on the Leased Premises or the migration thereof from or to other property; or
3) LESSEE's discovery of any occurrence or condition that would cause the Leased Premises to be subject to any restrictions on the ownership, occupancy, transferability or use of the Leased Premises under any environmental or solid waste disposal law, regulation, ordinance or ruling.

**10. Environmental Accidents.** In addition to any other requirements of law, LESSEE shall immediately furnish written notice of all spills, leaks, accidents or similar matters on the premises to LESSOR and the Secretary of State at the addresses provided in this instrument. LESSEE shall also furnish LESSOR and the Secretary of State a copy of all filings, including but not limited to, environmental issues, required bylaws, rules or regulations arising out of any spills, leaks, accidents, or other matters related to the use and occupation of the premises by LESSEE. Nothing in this paragraph shall place any duty of cleanup or remediation of property upon LESSOR, with those duties belonging exclusively to LESSEE.

**11. Breach of Lease Agreement.** If LESSEE breaches any of the provisions of this Lease Agreement and fails to cure the same after thirty (30) days written notice from the LESSOR, then LESSEE, in addition to any other damages for which it may be responsible, shall pay LESSOR, its reasonable costs and expenses in enforcing the Lease Agreement, including but not limited to fees charged by attorneys, expert witnesses, surveyors and appraisers.

**12. Notices.** All notices specified by this instrument shall be in writing and sent by registered or certified mail, postage prepaid to the following addresses or hand-delivered in person, delivered by facsimile or otherwise to the following persons. By written notice, either party may change the persons or addresses to whom notice shall be sent.

To LESSOR:
16th Section Manager
Stone County School District
214 Critz Street, Wiggins, MS 39577
Telephone: (601) 928-7247

To SECRETARY OF STATE:
Mississippi Secretary of State's Office, Public Lands Division
Attn: 16th Section Lands
Post Office Box 136
Jackson, Mississippi 39205-0136
(601)-359-1350

To LESSEE:
Big Level Trucking, Inc.
Attn: Steven H. Evans, President
P.O. Box 306, Wiggins, MS 39507
Telephone: (601) 928-3770

**13. Insurance.** LESSEE shall maintain contractual and comprehensive general liability insurance with a company acceptable to LESSOR and the Secretary of State with a minimum combined single limit of liability of one million dollars ($1,000,000.00) (and the members of LESSEE shall collectively maintain a similar policy or self-insure for an excess limit of liability of one million dollars ($1,000,000.00)) for personal injuries or death of persons or destruction of property arising out of its operation, use or occupancy of the Leased Premises. LESSEE shall furnish proof of insurance (or self-insurance for LESSEE's members, if applicable) to LESSOR, shall keep this insurance (or self-insurance for LESSEE's members, if applicable) in full force and effect, and shall furnish LESSOR notice if the coverage is placed with another insurance company (or if the self-insurance for LESSEE's members is managed by another company, if applicable). The amount of this instrument shall be adjusted for inflation every ten years on each tenth anniversary of this instrument according to the procedures then set forth by the Office of the Secretary of State of Mississippi. LESSEE shall be responsible for insuring LESSEE property, including all personal property, vehicles, trucks, trailers and equipment.

LESSOR may maintain one or more master property insurance policies covering the building, development, or portfolio of properties of which the Leased Premises form a part. LESSEE shall reimburse LESSOR for the portion of the premium and any applicable insurance-related charges under such policy or policies that is reasonably and equitably attributable to the Leased Premises, including any applicable premium taxes, assessments, and other charges directly related to such insurance coverage. LESSEE shall not be responsible for the entire premium or for any portion thereof attributable to other properties covered under the same policy or policies. The portion of the premium attributable to the Leased Premises shall be determined by LESSOR using a reasonable, consistent, and equitable allocation method, taking into account, as applicable, the insured value of the Leased Premises relative to the total insured value of all properties covered under the relevant policy, the nature and extent of the insurance coverage applicable to the Leased Premises, and any property-specific factors affecting the premium. Upon LESSEE's reasonable request, LESSOR shall provide a statement setting forth the amount payable by LESSEE and a reasonable explanation of the allocation method used, together with reasonable supporting documentation, subject to the redaction of confidential information relating to other insured properties. LESSEE shall pay the amount properly attributable to the Leased Premises within thirty (30) days after receipt of LESSOR's written invoice and supporting statement.

**14. Indemnification.** LESSEE shall protect, indemnify, defend, save, and hold harmless LESSOR, the State of Mississippi and the Secretary of State, their officers, board members, employees and agents, from and against all claims, demands, liabilities, suits, injuries, and any and all losses or damages and cost of every kind and nature whatsoever ("**loss**"), including but not limited to all court costs and attorneys fees and all personal injury or death and/or damage to any person or entity including, but not limited to, LESSOR and its property or other loss arising out of any alleged noncompliance with laws or caused by LESSEE'S exercise of its rights under this Lease Agreement and/or resulting from the actions or omissions of LESSEE in connection with its presence on or any use of the Leased Premises by it, its officers, agents, subcontractors, employees or invitees. Provided, however, it is understood that the indemnity provided by LESSEE as described in this paragraph shall not extend to intentional or negligent acts of LESSOR, its officers, or agents. In the event the intentional or negligent acts of LESSOR, its officers or agents, are not the direct and sole proximate cause for one hundred percent (100%) of the loss or claim, LESSEE shall be responsible to fulfill its obligations under this paragraph for the percentage of liability not attributable to LESSOR, its officers or agents.

**15. Mortgage Transactions.** The preceding restrictions on assignments of this lease shall not apply to and no prior approval of LESSOR shall be required for (i) a mortgage of the leasehold estate (ii) a foreclosure or an assignment of the leasehold estate to the mortgagee in lieu of foreclosure or (iii) a transfer by a mortgagee who has acquired the leasehold estate and such transfer occurs within a reasonable period of time commensurate with liquidation of the

asset. However, any person acquiring the leasehold estate by any of the above means shall be obligated, within 10 days thereafter, to provide LESSOR with a copy of the assignment.

No mortgagee shall be deemed to have assumed and no mortgagee shall be personally obligated to perform any of LESSEE'S obligations under this lease which accrued prior to acquisition of the leasehold estate, provided that this limitation on personal liability shall not diminish the rights and remedies otherwise available to LESSOR in the event of a default nor the right of a mortgagee to cure defaults as herein provided. A mortgagee, having acquired the leasehold estate through foreclosure or assignment in lieu of foreclosure, shall be liable for performance of all obligations of LESSEE which accrue during the period the mortgagee has ownership of the leasehold estate, and any rent payment which becomes due during such period shall be paid in full and not prorated. Nothing contained in this lease or in any mortgage shall release LESSEE from the full and faithful performance of LESSEE's obligations under this lease or from any liability for non-performance or constitute a waiver of any right of LESSOR against LESSEE. The term "mortgage" as used in this paragraph means any mortgage, deed of trust, collateral assignment or other transfer or pledge of this lease as security for an indebtedness of LESSEE; and the term "mortgagee" means the holder of the indebtedness to whom or for whose benefit this lease has been mortgaged or pledged as security.

**16. Waste.** LESSEE shall be responsible for any damage that may be caused to LESSOR's property by the activities of LESSEE, its employees, agents, contractors, and invitees under this Lease Agreement, and shall exercise reasonable care in the protection of all improvements, timber and other property of LESSOR, which may be located on the Leased Premises or in the vicinity thereof, against fire or damage from any and all other causes. LESSEE, its employees, agents, contractors, and invitees shall exercise reasonable care in conducting the activities described above, and shall not, in any event, commit waste or allow waste to be committed.

**17. Quiet Possession.** LESSEE shall have quiet and peaceful possession of the Leased Premises as long as compliance is made with the terms of this Lease Agreement.

**18. Bankruptcy or Judgments.** The undersigned Parties recognize that the LESSEE has filed Chapter 11 Bankruptcy *In re Big Level Trucking, Inc.*, Cause No. 25-521204-KMS (Bankr. S.D. Miss. 2025) (the "**Bankruptcy Case**"). LESSEE hereby covenants and agrees that if an execution or process is levied upon the Leased Premises or if a petition of bankruptcy, other than the Bankruptcy Case, be filed by or against LESSEE in any court of competent jurisdiction, LESSOR shall have the right at its option, to cancel this Lease Agreement. LESSEE further covenants and agrees that this Lease Agreement and the interest of LESSEE hereunder shall not, without the written consent of LESSOR first obtained, be subject to garnishment or sale under execution or otherwise in any suit or proceeding which may be brought against said LESSEE.

**19. Condemnation.** If the whole of the Leased Premises, or such portion thereof as will make the Leased Premises unsuitable for LESSEE'S normal business activity, should be condemned for any public use or conveyed under threat of condemnation, then this Lease Agreement shall terminate on the date possession is acquired by the condemning authority, and rent shall be apportioned as of that date. All compensation awarded or paid upon such total or partial taking of the Leased Premises shall belong to LESSOR without participation by LESSEE except to the extent the award fairly represents the value of improvements which are the property of LESSEE. It is provided, however, that nothing herein shall preclude LESSEE from prosecuting any claim directly against the condemning authority for loss of business, cost of relocation or any other damages to which a tenant may be entitled provided that no such claim shall diminish or otherwise adversely affect the amount of LESSOR'S award.

**20. Classification/Use.** The lands herein have been classified as Commercial in accordance with §29-3-31 et seq. Miss. Code Ann. (1972) as amended. LESSOR warrants that the Leased Premises shall be permitted to be used as for the purpose of conducting commercial long-haul trucking business operations consisting of the receipt, handling,

loading, unloading, staging, transfer, trans-loading of trucks and trailers and such ancillary administrative and operational activities as are related to or supportive of such approved use (collectively, the "**Permitted Use**"). This warranty does not apply to any change in use which may be required by governmental authority or other means beyond the control of LESSOR.

LESSEE shall not use the Leased Premises for any of the following purposes: Activities that are considered hazardous including, but not limited to, demolition or the storage or use of dangerous substances; any activity considered to be a nuisance; any activity that is unlawful or immoral; or any activity which at the discretion of the LESSOR and the Secretary of State is inappropriate upon Sixteenth Section Land.

**21. Successors.** To the extent assignment of this Lease Agreement is allowed by the above provisions this Lease Agreement shall be binding upon LESSEE'S successors and assigns.

**22. General Duties of LESSEE.** LESSEE agrees:

(a) To comply with all laws and ordinances applicable to the use of the Leased Premises including, without limitation, laws and regulations pertaining to accessibility by handicapped persons;
(b) To allow inspection of the Leased Premises during normal business hours by any persons responsible for management or supervision of the property or this lease acting in their official capacity;
(c) To perform all obligations herein expressed in a prompt fashion, without notice or demand;
(d) To surrender the Leased Premises upon termination or expiration of this Lease Agreement, with improvements to be in the condition as herein specified;
(e) To provide LESSOR, at each Anniversary Date, written certification by LESSEE or an officer of LESSEE of compliance with the provisions of this lease;
(f) To maintain the Leased Premises at all times in a clean, neat and orderly manner, free of waste materials, and to keep grass and other vegetation clipped; and
(g) To be solely responsible, at Lessee's sole cost and expense, for obtaining, arranging, installing, connecting, maintaining, repairing, replacing, relocating, and paying for all utilities, utility services, and other services required or desired under this lease.

**23. Reservations.** LESSOR reserves title to all oil or gas, coal, lignite or other minerals in, on, or under said lease property, together with the right to enter and remove the same, but not in a manner which interferes with LESSEE'S operations on the Leased Premises.

**24. Rights-of-Way.** LESSOR reserves the right to grant or sell rights-of-way across the Leased Premises for roads, highways, railroads, fiber optic cables or any public utility line, provided that any such roads, highways, railroads, fiber optic cables or public utility lines be constructed in a manner so as not to interfere with LESSEE'S operations.

**25. Recording.** LESSOR will deliver this Lease Agreement to the Chancery Clerk of Stone County for recording, and LESSEE has herewith delivered to LESSOR a sum payable to such Chancery Clerk in an amount sufficient to record such Lease Agreement.

**26. Immunity.** No provision of this Lease Agreement, whether requiring LESSEE to maintain insurance or to indemnify LESSOR or otherwise, shall be construed as a waiver by LESSOR of any provision of law related to governmental immunity.

**27. Interpretation.** The parties to this Lease Agreement acknowledge that they have freely entered into this Lease Agreement and any ambiguities shall not be construed against a single party.

**28. Governing Law.** This Lease Agreement shall be governed by, construed, and enforced in accordance with the laws of the State of Mississippi. Jurisdiction and venue for any actions arising from this Lease Agreement and any amendments hereto shall rest exclusively in the Chancery Court of Stone County, Mississippi.

**29. Secretary of State.** By virtue of the signature below, the Secretary of State of the State of Mississippi has approved this Lease Agreement in accordance with the Secretary's authority for general supervision of 16th Section Public School Trust Land. Approval of this Lease Agreement by the Secretary of State indicates that the LESSOR has exercised the care and skill of an ordinary prudent person to protect the beneficiaries of the 16th Section Public School Trust Land.

**30. Supervisory Right.** Secretary of State, as supervisory trustee, shall have the right to institute any action to enforce the terms of this Lease Agreement in the event LESSOR fails to do so in a timely manner. In the event the Secretary institutes legal action to enforce the terms of this Lease Agreement, he shall have all rights as are conferred to LESSOR.

**31. Termination for Convenience.** LESSEE may terminate this Lease Agreement, whether in whole or in part, for any or no reason, without premium or penalty, by delivering not less than sixty (60) days' prior written notice to Lessor. The termination shall become effective on the stated date notwithstanding the existence of a default. LESSOR will promptly reimburse LESSEE for such annual rent paid in advance for the period following the effective date of termination. The amount of such reimbursement shall be prorated on a daily basis, calculated from and including the effective date of termination through the end of the applicable prepaid rental period, based on the total number of days in such prepaid rental period. For the avoidance of doubt, LESSEE shall remain responsible for all rent and other amounts accrued or payable under this Lease through the effective date of termination, and no refund shall be due for any period prior to such date.

**32. Additional Provisions.** This Lease Agreement contains an **Exhibit "B."** Any additional or special provisions to this Lease Agreement are set forth in Exhibit "B" and incorporated by reference as if copied fully herein. If there are no additional or special provisions then Exhibit "B" shall state "NONE."

**33. Entire Agreement.** This Lease Agreement shall constitute the entire agreement between the parties. Any prior understanding or representation of any kind preceding the date of this Lease Agreement shall not be binding upon either party except to the extent incorporated in this Lease Agreement. This Lease Agreement contains Exhibits "A" and "B." If Exhibits "A" and "B" are not attached to this Lease Agreement, then this Lease Agreement shall be null and void.

**34. Lessee's Authority.** (i) Lessee is a duly organized, validly existing legal entity in good standing under the laws of the State of Mississippi; (ii) Lessee has full power and authority to enter into, deliver, and perform this Lease Agreement; (iii) Lessee has taken all necessary entity action to authorize the execution, delivery, and performance of this Lease; (iv) the individual executing this Lease on behalf of Lessee is duly authorized to bind Lessee; and (v) Lessee has obtained all necessary court approvals, if any, in connection with the Bankruptcy Case to authorize Lessee's execution, delivery, and performance of this Lease Agreement.

**35. Counterparts.** This Lease Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

*[This space left blank intentionally. Signatures and acknowledgements to follow.]*

**IN WITNESS WHEREOF**, this Lease Agreement is executed by LESSOR and pursuant to order entered upon its minutes, is executed by LESSEE this the ___ day of ____________________, 2026.

Signed, Sealed and Delivered in the Presence of:

**LESSOR**:

Board of Education for the Stone County School District

Superintendent: ______________________________

Board President: ______________________________
Mohamad Schuman

**APPROVED**:

Stone County Board of Supervisors

President: ______________________________

Secretary of State: ______________________________
Michael Watson

**LESSEE**:

Big Level Trucking, Inc., a Mississippi corporation

______________________________
By: Steven H. Evans
Its: Director, President, Chief Executive Officer

[*This space left blank intentionally. Notary acknowledgements to follow.*]

## ACKNOWLEDGMENTS

### School District

STATE OF MISSISSIPPI
COUNTY OF ______________________

Personally appeared before me, the undersigned authority in and for said county and state, on this ____ day of ____________, 2026, within my jurisdiction, the within named ________________, Superintendent of Schools and Mohamad Schuman, School Board President of the Board of Education for the Stone County School District, who acknowledged that in said representative capacity as Superintendent of Schools and President of the Board of Education for the Stone County School District, they executed the above and foregoing instrument for and on behalf of said Board of Education, after first having been duly authorized so to do.

______________________________
Printed Name: ______________________
(Notary Public)

My Commission Expires: ________________________ (Affix official seal, if applicable)

### Board of Supervisors

STATE OF MISSISSIPPI
COUNTY OF ________________

Personally appeared before me the undersigned authority in and for the said county and state, on this the ____ day of ________________ 2026, within my jurisdiction, the within named ______________, who acknowledged to me that he / she is the President of the Board of Supervisors of Stone County, Mississippi, and that in said representative capacity he / she executed the above and foregoing instrument for and on behalf of said Board of Supervisors, after first having been duly authorized so to do.

______________________________
Printed Name: ______________________
(Notary Public)

My Commission Expires: ________________________ (Affix official seal, if applicable)

ACKNOWLEDGEMENTS

Secretary of State

STATE OF ______________
COUNTY OF ____________

Personally appeared before me, the undersigned authority in and for the said county and state, on this ______ day of______________, 2026, within my jurisdiction, the within named Michael D. Watson, Jr., who acknowledged to me that he is Secretary of State of the State of Mississippi and Land Commissioner, and that in said representative capacity he executed the above and foregoing instrument for and on behalf of the State of Mississippi, after first having been duly authorized so to do.

______________________________________
Printed Name: __________________________
(Notary Public)

My Commission Expires: ______________________________ (Affix official seal, if applicable)

ACKNOWLEDGEMENTS

Lessee - Corporate

STATE OF MISSISSIPPI
COUNTY OF ______________________

Personally appeared before me, the undersigned authority in and for said county and state, on this the _____ day of _______________, 2026, within my jurisdiction, the within named Steven H. Evans, who acknowledged to me that he is the Director, President, Chief Executive Officer of Big Level Trucking, Inc., a Mississippi corporation, and that in said representative capacity he executed the above and foregoing instrument, after first having been duly authorized so to do.

________________________________
Printed Name: ____________________
(Notary Public)

My Commission Expires: ________________________ (Affix official seal, if applicable)

# EXHIBIT "A"
# LEGAL DESCRIPTION OF PROPERTY

PARCEL NO. 1: 10 acres, more or less, in the Southeast Quarter of the Northeast Quarter and in the Northeast Quarter of the Southeast Quarter, Section 36, Township 2 South, Range 12 West, described as:

Begin at the Northeast corner of said Northeast Quarter of Southeast Quarter and then run South along the forty line 545.0 feet; thence run North 66 degrees 47 minutes West 1247.0 feet to the center of a public road; thence run Northeasterly along the center of said road as follows: North 55 degrees 44 minutes East 413.0 feet and North 48 degrees 42 minutes East 168.5 feet; thence run South 42 degrees 08 minutes East 366.0 feet to the forty line; thence run South 87 degrees 30 minutes East along the forty line 433.0 feet to the point of beginning.

The property is subject to the existing public road right-of-way. The property is located in the Southeast Quarter of Northeast Quarter and the Northeast Quarter of the Southeast Quarter of said Section.

PARCEL NO. 2: 7.4 acres, more or less, in the Southwest Quarter of the Northwest Quarter, Section 31, Township 2 South, Range 11 West, and in the Southeast Quarter of the Northeast Quarter, Section 36, Township 2 South, Range 12 West, Stone County, Mississippi, described as:

Commence at the Southwest corner of the Southwest Quarter of the Northwest Quarter, Section 31, Township 2 South, Range 11 West, being also the Southeast corner of the Southeast Quarter of the Northeast Quarter, Section 36, Township 2 South, Range 12 West, for the Point of Beginning: Thence from said Point of Beginning, run South 88 degrees 20 minutes East along and with the South boundary of said Southwest Quarter of the Northwest Quarter, Section 31, for 26.94 feet to the Southwest corner of property conveyed to Reeves by deed dated December 20, 2001, per Deed Book 182 page 497; thence run North 00 degrees 54 minutes 48 seconds East along and with the West boundary of the Reeves property for 371.38 feet to the Northwest corner of the Reeves property, said point also being the Southwest corner of property conveyed to Rains and Wilson by deed dated February 4, 2000, per Deed Book 166 page 419; thence run North 3 degrees West along and with the West boundary of the Rains and Wilson property for 200 feet to the Northwest corner of the Rains and Wilson property, said point being on the South boundary of property conveyed to Star Chevrolet Company, Inc., by deed dated July 9, 1975, per Deed Book 56 page 158; thence run South 87 degrees West along and with the South boundary of the Star Chevrolet Company property and then along and with the South boundary of the property conveyed to Robert P. Regan, Jr., by deed dated April 2, 1987, per Deed Book 93 page 530, for 489.6 feet to the centerline of Dummyline Road; thence run South 34 degrees 30 minutes West along and with the centerline of Dummy line Road for 135.1 feet; thence run South 42 degrees 30 minutes West along and with the centerline of Dummyline Road for 200 feet to the Northwest corner of property conveyed to Charles Guy Evans & Sons, Inc., by deed dated February 28, 1992, per Deed Book 117 page 153; thence run South 42 degrees 8 minutes East along and with the North and East boundary of the Charles Guy Evans & Sons property for 369.84 feet to the South boundary of said Southeast Quarter of Northeast Quarter, Section 36; thence run South 88 degrees 20 minutes East along and with the South boundary of said Southeast Quarter of Northeast Quarter, Section 36, for 433 feet back to the Point of Beginning.

SUBJECT TO a 25 foot right of way reserved along the western margin of the property.

# Exhibit "B"
## Additional Provisions

1. NONE

Label Matrix for local noticing
0538-6
Case 25-51204-KMS
Southern District of Mississippi
Gulfport-6 Divisional Office
Sun Nov 15 14:49:14 CST 2026

90 Degree Benefits
P.O. Box 1688
Pascagoula, MS 39568-1688

Alabama Media Group
P.O. Box 2168
Grand Rapids, MI 49501-2168

Alan L. Smith, Esq.
Baker, Donelson, Bearman, Caldwell & Ber
For Banc of America Leasing & Capital, L
100 Vision Drive, Suite 400
Jackson, Mississippi 39211-7009

Alan L. Smith, Esq.
Baker, Donelson, Bearman, Caldwell & Ber
For Navistar Leasing Company
100 Vision Drive, Suite 400
Jackson, Mississippi 39211-7009

Alexander Hardware
206 N Magnolia Drive
P.O. Box 276
Wiggins, MS 39577-0276

American Express
P.O. Box 981535
El Paso, TX 79998-1535

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

American Trucking Associations
P.O. Box 201068
Dallas, TX 75320-1068

Keisha Jackson Anderson
c/o Eric Landry, Esq.
1100 POYDRAS STREET
Ste. 3900
New Orleans, LA 70163-2802

Lloyd Justin Anderson
c/o Eric Landry, Esq.
1100 POYDRAS STREET
SUITE 3900
New Orleans, LA 70163-2802

Andrew R. Wilson
BENNETT LOTTERHOS SULSER & WILSON, P.A.
For M&T Equipment Finance Corporation
P.O. Box 1488
Madison, Mississippi 39130-1488

Automotive Glass Spec., Inc.
607 Adeline Street
Hattiesburg, MS 39401-3843

BCT, Inc.
P.O. Box 95741
Chicago, IL 60694-5741

BMO Bank N.A.
P.O. Box 3040
Cedar Rapids IA 52406-3040

BMO Harris Bank, N.A.
P.O. Box 71951
Chicago, IL 60694-1951

BMSS
1020 Highland Colony Parkway
Suite 600
Ridgeland, MS 39157-2150

Ballman's Auto Repair
1725 S Azalea Drive
Wiggins, MS 39577-8107

Banc of America
P.O. Box 25916
Overland Park, KS 66225-5916

Banc of America Leasing & Capital, LLC
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Banc of America Leasing & Capital, LLC
c/o Alan L. Smith, Esq.
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Bank of NY Trust Co.
c/o Navistar
2701 Navistar Drive
Lisle, IL 60532-3637

Bank of NY Trust Co., Agent
c/o Navistar
2701 Navistar Drive
Lisle, IL 60532-3637

Bank of Wiggins
c/o Paul S. Murphy, Esq.
Butler Snow LLP
P.O. Drawer 4248
Gulfport, MS 39502-4248

Bank of Wiggins
109 W Pine Avenue
Wiggins, MS 39577-2654

Bank of Wiggins
c/o Paul S. Murphy
Butler Snow LLP
P.O. Drawer 4248
Gulfport, MS 39502-4248

Bean Co.
802 Hwy 12 W
Starkville, MS 39759-3580

BeanCo
802 Hwy 12 W
Starkville, MS 39759-3580

Erin McManus Best
Watkins and Eager PLLC
P.O. Box 650
Jackson, MS 39205-0650

Bestone Tire & Service
1702 N Collins Blvd
Suite 100
Richardson, TX 75080-3662

**EXHIBIT "B"**

Big Level Trucking, Inc.
P.O. Box 306
Wiggins, MS 39577-0306

Blossman Gas, Inc.
1316 S Magnolia
Wiggins, MS 39577-2705

Bo Bennett
P.O. Box 215
Counce, TN 38326-0215

Bob Matus
17940 Gulf Blvd
Unit 16D
Redington Shores, FL 33708-1156

Brent Tice
319 First Street S
Wiggins, MS 39577-2737

Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite 3600
Attn: Katie Spewak
St. Louis, MO 63102-2726

Burkes Auto Parts
429 East Central Avenue
Wiggins, MS 39577-2717

Robert Alan Byrd
P.O. Box 1939
Biloxi, MS 39533-1939

C-Spire Wireless
P.O. Box 519
Meadville, MS 39653-0519

CET Logistics
P.O. Box 306
Wiggins, MS 39577-0306

Calvin Barnes
14986 Hw. 57 S
McLain, MS 39456

Calvin Barnes
14986 Hwy 57 S
McLain, MS 39456-6502

Chad J. Hammons, Esq.
Jones Walker LLP
For Mitsubishi HC Capital America, Inc
P.O. Box 427
Jackson, MS 39205-0427

Chase Auto Finance
P.O. Box 9001801
Louisville, KY 40290-1801

Chuck Evans
32 Madewood Court
Hattiesburg, MS 39402-7948

Cintas Corporation
P.O. Box 630921
Cincinnati, OH 45263-0921

Colonial Life
Processing Center
P.O. Box 903
Columbia, SC 29202-0903

Copeland Cook Taylor & Bush
P.O. Box 17619
Hattiesburg, MS 39404-7619

Copeland, Cook, Taylor and Bush
Attn: Accounting Department
P.O. Box 6020
Ridgeland, MS 39158-6020

Corporate Billing, LLC
Dept 100
P.O. Box 830604
Birmingham, AL 35283-0604

Corporate Billing, a Division of SouthState
c/o Eric T. Ray
Holland & Knight LLP
1901 Sixth Ave N, Suite 1400
Birmingham, AL 35203-4605

(p)QUALIA COLLECTION SERVICES
P O BOX 4699
PETALUMA CA 94955-4699

Crossroads Equipment Lease & Finance, LLC
9385 Haven Avenue
Rancho Cucamonga, CA 91730-5338

Crossroads Equipment Lease and Finance
400 Alexander Park Dr.
Ste. 201
Princeton, NJ 08540-5313

Daimler Truck Financial
14372 Heritage Parkway
Fort Worth, TX 76177-3300

David Johns
168 Woodlands Glen Circle
Brandon, MS 39047-7107

Demetric Ratcliff
100 Ginger Drive
Hattiesburg, MS 39402-9658

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Department of the Treasury
Internal Revenue Service
c/o U.S. Attorney
501 E. Court St., Suite 4.430
Jackson, MS 39201-5025

Don Mattocks
253 Tidewater Road
Hattiesburg, MS 39402-7920

Endom Welding and Trailer Repair
P.O. Drawer 10
Ellisville, MS 39437-0010

(p)MITSUBISHI HC CAPITAL AMERICA INC
1 PIERCE PLACE SUITE 1100 WEST
ITASCA IL 60143-3149

Eric T. Ray, Esq.
HOLLAND & KNIGHT LLP for
Corporate Billing, Division of SouthStat
1901 Sixth Avenue North, Suite 1400
Birmingham, Alabama 35203-4605

Erin McManus
Watkins and Eager PLLC
For Trustmark Bank, successor in
P.O. Box 650
Jackson, MS 39205-0650

FIT Logistical Service
319 First Street S
Wiggins, MS 39577-2737

FIT Logistical Services
319 First Street S
Wiggins, MS 39577-2737

FIT Logistical Services
P.O. Box 1071
Hattiesburg, MS 39403-1071

Fast Pace Mississippi, PLLC
P.O. Box 306415
Nashville, TN 37230-6415

Ferguson Trucking, LLC
P.O Box 307
Houston, MS 38851-0307

Ferguson Trucking, LLC
1538 Hwy 15 N
Houston, MS 38851-7463

Ferguson Trucking, LLC
159 County Road 43
Houston, MS 38851-7668

Flagstar/GAF
Great Atlantic Financial
41 Hackensack Avenue
Hackensack, NJ 07601

Fleet Charge Select
3500 Lacey Road
Suite 220
Downers Grove, IL 60515-2481

FleetPride
P.O. Box 847118
Dallas, TX 75284-7118

Gas and Supply
2905 Industrial Blvd
Laurel, MS 39440-5953

Craig M. Geno
Law Offices of Geno and Steiskal, PLLC
601 Renaissance Way
Suite A
Ridgeland, MS 39157-6038

Scot P. Goldsholl
Padgett Law Group
415 North McKinley,
Suite 1177
Little Rock, AR 72205-3177

Grantham Heavy Equipment Machine Shop
P.O. Box 444
Monticello, MS 39654-0444

Nicholas T Grillo
Grillo Law Firm
607 Corinne Street, Suite A3
Hattiesburg, MS 39401-3827

Gulf Coast Tire Supply
P.O. Box 1161
Lucedale, MS 39452-1161

H & P Leasing
P.O. Box 6257
Jackson, MS 39288-6257

Hamblin & Hamblin
837 N Eason Blvd
Tupelo, MS 38804-6903

Chad J. Hammons
Jones Walker
P.O. Box 427
Jackson, MS 39205-0427

James Haney
Wong Fleming
400 Alexander Park Drive
Suite 201
Princeton, NJ 08540-5313

James K. Haney
WONG FLEMING, P.C.
400 Alexander Park Dr., Ste. 201
Princeton, NJ 08540-5313

Hankook Tire America Corp.
333 Commerce Street
Suite 600
Nashville, TN 37201-1836

Thomas M Hewitt
Butler Snow LLP
1020 Highland Colony Pkwy Ste 1400
Ridgeland, MS 39157-2139

Idle Smart
P.O. Box 1922
Lenox, MA 01240-4922

Impact Training Solutions, Inc.
2355 Lusk Drive
Neosho, MO 64850-8833

Independent Furniture Supply
Wanda Bell
P.O. Box 2186
Tupelo, MS 38803-2186

Infinite Wisdom
P.O. Box 7935
Missoula, MT 59807-7935

J.W. Sledge
212 Reservoir Road
Columbia, MS 39429-8543

Jack's Home Improvement Center
747 Hall Street
Wiggins, MS 39577-2105

Jackson Trailer and Equipment, LLC
P.O. Box 6366
Pearl, MS 39288-6366

James Haney
Wong Fleming
For Crossroads Equipment Lease and Finan
400 Alexander Park Drive Suite 201
Princeton, NJ 08540-5313

Jeff Martin Auctioneer
P.O. Box 16809
Hattiesburg, MS 39404-6809

Jeff Martin Auctioneers, Inc.
P.O. Box 16809
Hattiesburg, MS 39404-6809

Jim F. Spencer, Jr.
Watkins & Eager PLLC
For Trustmark Bank, successor in
Post Office Box 650
Jackson, MS 39205-0650

Joe Stevens, Esq.
Wise Carter Child & Caraway, P.A.
For Renasant Bank
601 Adeline St.
Hattiesburg, MS 39401-3843

Joey Ferguson
159 CR 43
Houston, MS 38851-7668

John S. Simpson, Esq.
Simpson Law Firm PA
for H&P Leasing, Inc.
P.O. Box 2058
Madison, MS 39130-2058

John S. Simpson, Esq.
Simpson Law Firm PA
for Southern States Utility Trailer Sale
P.O. Box 2058
Madison, MS 39130-2058

John Tucker
Tower Loan of MS
P.O. Box 320001
Flowood, MS 39232-0001

Johnny's Wrecker Service
5484 Hwy 42
Hattiesburg, MS 39401-1413

Johnson & Johnson
P.O. Box 899
Charleston, SC 29402-0899

Roy Jones
997 Hwy. 49, Lot 63
Perkinston, MS 39573-6603

Justin B. Little, Esq.
Reynolds, Reynolds & Little, LLC
For BMO Bank, N.A.
Post Office Box 2863
Tuscaloosa, Alabama 35403-2863

KFCU VISA Card
Credit Card Center
P.O. Box 71050
Charlotte, NC 28272-1050

Kacy Burnsed
1007 Clifton Road, NE
Atlanta, GA 30307-1227

Keesler Federal Credit Union
c/o Robert Alan Byrd
P.O. Box 1939
Biloxi, MS 39533-1939

Keesler Federal Credit Union
Atten: Bankruptcy
P.O. Box 7001
Biloxi, MS 39534-7001

Keesler Federal Credit Union
PO Box 7001
Biloxi, MS 39534-7001

Winston Lee
Burr & Forman LLP
190 E. Capitol St.
Ste M-100
Jackson, MS 39201-2149

LesJam
P.O. Box 808
McComb, MS 39649-0808

Justin B. Little
REYNOLDS, REYNOLDS & LITTLE, LLC
Post Office Box 2863
Tuscaloosa, AL 35403-2863

Long Drive Investments
122 Bellewood Road
Hattiesburg, MS 39402-8811

Love's Travel Stops
10601 N Pennsylvania Ave
Oklahoma City OK 73120-4108

Love's Travel Stops & Country Stores, I
Andrew R. Turner, esq
4100 First Place Tower
15 East Fifth Street, Ste. 4100
Tulsa, Ok 74103-4305

Love's Travel Stops and Country Stores
P.O. Box 842568
Kansas City, MO 64184-2568

Loves Travel Stops & Country Stores, Inc.
CONNER & WINTERS, LLP
15 East Fifth Street, Ste. 4100
Tulsa, Oklahoma 74103-4305

Loves Travel Stops & Country Stores, Inc.
CONNER & WINTERS, LLP
4100 First Place Tower
Tulsa, Oklahoma 74112-1312

Lytx, Inc.
P.O. Box 849972
Los Angeles, CA 90084-9972

M&T Equipment Finance Corporation
f/k/a Peoples United Equipment Finance
c/o Bennett Lotterhos Sulser & Wilson PA
P.O. Box 1488
Madison, MS 39130-1488

M&T Equipment Finance Corporation f/k/a Peop
United Equipment Finance Corp.
Michael D. Bloom
300 Frank W. Burr Blvd, Suite 50
Teaneck, NJ 07666-6703

MISSISSIPPI DEPARTMENT OF REVENUE
Legal Department
P. O. BOX 22828
JACKSON, MS 39225-2828

(p)MISSISSIPPI STATE TAX COMMISSION
P O BOX 22808
JACKSON MS 39225-2808

Abigail M. Marbury
Office of the U.S. Trustee
501 E Court Street Suite 6-430
Jackson, MS 39201-5022

Matthew W. McDade
for Charles Evans, Jr. a/k/a Chuck Evans
BALCH & BINGHAM LLP
1310 25th Avenue
Gulfport, MS 39501-1931

James A. McCullough II
Brunini, Grantham, Grower & Hewes, PLLC
P, O. Drawer 119
Jackson, MS 39205-0119

Matthew Ward McDade
Balch & Bingham
1310 25th Avenue
Gulfport, MS 39501-1931

McLeod Software
Dept 3500
P.O. Box 830539
Birmingham, AL 35283-0539

Memorial Hospital at Gulfport
4500 Thirteenth Street
Gulfport, MS 39501-2569

Michelin North America, Inc.
P.O. Box 100860
Atlanta, GA 30384-0860

Midland States Bank
c/o Byrd & Wiser
PO Drawer 1939
Biloxi, MS 39533-1939

Midland States Bank
1801 Park 270 Drive
Suite 200
Saint Louis, MO 63146-4022

Midland States Bank
PO Box 2149
Gig Harbor, WA 98335-4149

Miller Rental & Investment
1047 First Street S
Wiggins, MS 39577-8213

Miller Rental & Investments
1047 First Street S
Wiggins, MS 39577-8213

Miller Transportation
P.O. Box 366
Wiggins, MS 39577-0366

Mississippi Department of Revenue
Bankruptcy Section
P.O. Box 22808
Jackson, MS 39225-2808

Mississippi State Port Authority
P.O. Box 40
Gulfport, MS 39502-0040

Mississippi Trucking Association
825 North President Street
Jackson, MS 39202-2561

Mitsubishi HC Capital America, Inc.
c/o Chad J. Hammons, Esq.
Jones Walker LLP
3100 N. State St., Ste. 300
Jackson, MS 39216-4013

Mitsubishi HC Capital America/Webster
P.O. Box 71347
Chicago, IL 60694-1347

(c)MUNN DIESEL REPAIR & SALES
17 J C MUNN RD
SUMRALL MS 39482-4634

Paul S. Murphy
Butler Snow O'Mara Stevens &Cannada
1300-25th Avenue, Suite 204
Gulfport, MS 39501-1994

Nationwide Testing Association, Inc.
P.O. Box 508
772 North Broad Street
Mooresville, NC 28115-9551

Navistar Financial Corporation
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Navistar Financial Corporation
P.O. Box 96070
Chicago, IL 60693-6070

Navistar Leasing Company
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Navistar Leasing Company
P.O. Box 98454
Chicago, IL 60693-8454

Navitas Credit Corporation
201 Executive Center Drive
Suite 100
Columbia, SC 29210-8410

New Orleans Terminal
50 Napoleon Avenue
New Orleans, LA 70115-7758

Onsite Auto Glass
21313 Saucier Lizano Road
Saucier, MS 39574-9671

Orkin
P.O. Box 2010
Gulfport, MS 39505-2010

(p)PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

PNC Bank, National Association
c/o Winston Lee
190 E. Capitol Street, Suite M-100
Jackson, MS 39201-2152

PNC Equipment Finance
655 Business Center Drive
Horsham, PA 19044-3409

William B. Palmertree
Palmertree, Neyman & Jolly, PLLC
P.O. Box 969
Hernando, MS 38632-0969

Parker's Service Center, LLC
419 East Central Avenue
Wiggins, MS 39577-2717

Paul S. Murphy
BUTLER SNOW LLP
For XTRA Lease LLC.
1300 25th Avenue, Suite 204
Gulfport, MS 39501-1994

Paul S. Murphy
Butler Snow O'Mara Stevens &Cannada
For Bank of Wiggins
1300-25th Avenue, Suite 204
Gulfport, MS 39501-1994

Pearl River Valley
422 E Pine Street
Wiggins, MS 39577-2800

Penske Truck Leasing Co.
P.O. Box 827380
Philadelphia, PA 19182-7380

(p)PENSKE TRUCK LEASING CO L P
PO BOX 563
READING PA 19603-0563

Pine Belt Fleet Services
5102 US Hwy 49
Hattiesburg, MS 39401

Timothy Pitts
341 Earl Lane, Lot B
Picayune, MS 39466

Rand McNally
1100 W Idaho Street
Suite 330
Boise, ID 83702-5655

Eric T. Ray
Holland & Knight LLP
1901 Sixth Ave N, Suite 1400
Birmingham, AL 35203-4605

Renasant Bank
2001 Park Place North
Birmingham, Al 35203-2735

Renasant Bank
2001 Park Place
Suite 315
Birmingham, AL 35203-2735

Robbie Rollin
19572 Brighton Drive
Saucier, MS 39574-6207

Robert Alan Byrd
Byrd & Wiser Attorneys at Law
For Midland States Bank
P.O. Box 1939
Biloxi, MS 39533-1939

Robert Alan Byrd
For Keesler Federal Credit Union
P.O. Box 1939
Biloxi, MS 39533-1939

Sylvie Derdeyn Robinson
MS Dept of Revenue
P O Box 22828
Jackson, MS 39225-2828

Rocking C Truck and Trailer
P.O. Box 3327
Gulfport, MS 39505-3327

Thomas Carl Rollins Jr
The Rollins Law Firm, PLLC
PO BOX 13767
Jackson, MS 39236-3767

Rushing Enterprises, Inc.
P.O. Box 220
Headland, AL 36345-0220

STM-Pilot-Flying J
Dept 6412
P.O. Box 11407
Birmingham, AL 35246-6412

Sam McClendon
1310 Oloh Road
Sumrall, MS 39482-4490

Thomas Jackson Schultz
Burr & Forman LLP
190 E Capitol St
Suite M-100
Jackson, MS 39201-2149

Scot P. Goldsholl
Padgett Law Group
For Simmons Bank
415 North McKinley, Suite 1177
Little Rock, AR 72205-3177

(p)SIEMENS FINANCIAL SERVICES INC
ATTN ATTN - STEPHANIE MITCHELL
4800 NORTH POINT PARKWAY
ALPHARETTA GA 30022-3732

Signature Finance
P.O. Box 5524
Hicksville, NY 11802-5524

(p)SIMMONS BANK
POST OFFICE BOX 733
UNION CITY TN 38281-0733

John S. Simpson
Simpson Law Firm, P.A.
P.O. Box 2058
Madison, MS 39130-2058

SkyBitz
P.O. Box 74007409
Chicago, IL 60674-7409

Alan Lee Smith
Baker Donelson
100 Vision Drive
Suite 400
Jackson, MS 39211-7009

South MS Business Machine
P.O. Box 697
Gulfport, MS 39502-0697

South Mississippi Business Machines of
Gulfport, Inc.- South Miss. Business
Machines of Gulfport, Inc
P O Box 697
Gulfport, MS 39502-0697

(p)SOUTHERN FINANCIAL SYSTEMS
2603 OAK GROVE ROAD
HATTIESBURG MS 39402-8928

Southern Gas and Supply of Mississippi, Inc.
Lisa Gintz
4709 Bluebonnet Blvd., Suite A
Baton Rouge, LA 70809-9655

Southern Pipe and Supply
710 West Frontage Road
Wiggins, MS 39577-8133

Southern States Utility Trailer Sales
P.O. Box 6257
Jackson, MS 39288-6257

Southern Tire Mart
Dept 143
P.O. Box 1000
Memphis, TN 38148-0143

Southern Tire Mart, LLC
800 Highway 98
Columbia, MS 39429-8255

Jim F. Spencer Jr.
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205-0650

Christopher J. Steiskal Sr.
601 Renaissance Way
Suite A
Ridgeland, MS 39157-6038

Steven Evans
117 Wildwood Trace
Hattiesburg, MS 39402-2353

Joe Stevens
Wise Carter Child & Caraway, P.A.
601 Adeline St.
Hattiesburg, MS 39401-3843

Stone Printing
2919 Hwy 26
Wiggins, MS 39577-9585

Sumitomo Mitsui Finance & Leasing Co.
P.O. Box 530023
Atlanta, GA 30353-0023

Sumitomo Mitsui Finance and Leasing Company
Limited
Kye Law Group, P.C.
201 Old Country Road, Suite 120
Melville, NY 11747-2725

Supervision
P.O. Box 203489
Dallas, TX 75320-3489

Systems 9 Business Solutions
237 Tidewater Road
Hattiesburg, MS 39402-7920

T. Jack Schultz
BURR & FORMAN LLP
For PNC Equipment Finance
190 E. Capitol Street, Suite M-100
Jackson, MS 39201-2149

Tennessee Farmers Mutual Insurance Companies
147 Bear Creek Pike
Columbia, TN 38401-2266

Tenstreet, LLC
120 W 3rd Street
Suite 101
Tulsa, OK 74103-3406

Thomas M Hewitt
Butler Snow LLP
For XTRA Lease LLC
1020 Highland Colony Pkwy Ste 1400
Ridgeland, MS 39157-2139

Tice and Associates
P.O. Box 458
Wiggins, MS 39577-0458

Tim's Body Shop
145 John Willis Road
Wiggins, MS 39577-9346

Timothy Pitts
34 Earl Lane
Lot B
Picayune, MS 39466-6635

Transportation Safety Services
P.O. Box 1290
Daphne, AL 36526-1290

Trewolla Sweatman
317 East Capital Street
Lamar Life Bldg, Suite 505
Jackson, MS 39201-3405

Tri County Air Services
25 Pump Branch Road
Wiggins, MS 39577-8755

Tri-State Truck Center, Inc.
P.O. Box 5858
Jackson, MS 39288-5858

Trimble Maps
P.O. Box 204769
Dallas, TX 75320-4769

Triple E Farms
P.O. Box 306
Wiggins, MS 39577-0306

Trustmark Bank f/k/a Trustmark National Bank
Jim F. Spencer, Jr.
P.O. Box 650
Jackson, MS 39205-0650

Trustmark Bank, successor in interest to Tru
c/o Jim F. Spencer, Jr.
Watkins & Eager PLLC
Post Office Box 650
Jackson, MS 39205-0650

(p)TRUSTMARK NATIONAL BANK
P O BOX 291
JACKSON MS 39205-0291

U.S. Attorney S.D. Mississippi
c/o Internal Revenue Service
1575 20th Avenue, 2nd Floor
Gulfport, MS 39501-2040

U.S. Attorney S.D. Mississippi
c/o U.S. Securities and Exchange Commiss
1575 20th Avenue, 2nd Floor
Gulfport, MS 39501-2040

U.S. Securities and Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, Suite 900
Atlanta, GA 30326-1382

U.S. Small Business Administration
1835 Assembly Street, Suite 1425
Columbia, SC 29201-2453

U.S. Small Business Administration
c/o U.S. Attorney
Southern District of Mississippi
501 E. Court St., Suite 4.430
Jackson, MS 39201-5025

United States Trustee
501 East Court Street
Suite 6-430
Jackson, MS 39201-5022

Steven Usry
DOJ-Ust
501 E. Court Street
Suite 6-430
Jackson, MS 39201-5022

VFI ABS 2025-1, LLC
c/o Troy Aramburu
15 W South Temple Ste 1200
Salt Lake City, UT 84101-1547

VFI Corporate Finance
2800 East Cottonwood Parkway
2nd Floor
Salt Lake City, UT 84121-7295

VTFNA
P.O. Box 26131
Greensboro, NC 27402-6131

VanPete, LLC
1018 N Flowood Dr
Flowood, MS 39232-9532

Waring Oil Company
P.O. Box 66
Vicksburg, MS 39181-0066

Waters International Trucks, Inc.
P.O. Box 831
Hattiesburg, MS 39403-0831

Webster Capital Finance
c/o Evan S. Goldstein, Esq.
Updike, Kelly & Spellacy, P.C.
225 Asylum Street, 20th Floor
Hartford, CT 06103-1532

Webster/Sterling
Dept E19
707 Texas Avenue, Suite 200D
College Station, TX 77840-1980

Webster/Sterling
Webster Capital Finance
P.O. Box 330
Hartford, CT 06141-0330

Wells Fargo Equipment Finance
P.O. Box 858178
Minneapolis, MN 55485-8178

Wells Fargo Equipment Finance, Inc.
c/o Alan L. Smith, Esq.
Baker Donelson, PC
100 Vision Drive - Suite 400
Jackson, MS 39211-7009

Wells Fargo Equipment Finance, Inc.
Attn: La Neice Brown
801 Walnut Street, MAC F0006-052
Des Moines, IA 50309-3606

William P. Wessler
William P. Wessler
1624 24th Avenue
PO Box 175
Gulfport, MS 39502-0175

(p)COMMUNITY MEDICAL CENTER
PO BOX 1007
LUCEDALE MS 39452-1007

Andrew R. Wilson
Bennett Lotterhos Sulser & Wilson, P.A.
P.O. Box 1488
Madison, MS 39130-1488

Winston Lee
Burr & Forman LLP
For PNC Equipment Finance
190 E. Capitol St. Ste M-100
Jackson, MS 39201-2149

Workforce QA, LLC
2200 South Main Street
Suite 475
Salt Lake City, UT 84115-2601

XTRA Lease LLC
Bryan Cave Leighton Paisner LLP
211 N. Broadway, Suite 3600
Attn: Katie Spewak
St. Louis, MO 63102-2726

Xtra LLC
7911 Forsyth Blvd
Suite 600
Saint Louis, MO 63105-3877

Yokohama Tire Corporation
P.O. Box 677087
Dallas, TX 75267-7087

Yokohama Tire Corporation
Wagner, Falconer & Judd, Ltd.
300 North Corporate Drive, Suite 200
Brookfield WI 53045-5833

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

CrossCheck, Inc.
1440 North McDowell Blvd.
Petaluma, CA 94954

Department of the Treasury
Internal Revenue Service
Ogden, UT 84201-0039

Engs Commercial Finance Co.
One Pierce Place
Suite 1100 W
Itasca, IL 60143

(d)Internal Revenue Service
P.O. Box 21126
Philadelphia, PA 19114

MS State Tax Commission
Bankruptcy Section
P.O. Box 23338
Jackson, MS 39225

PNC Bank, National Association
655 Business Center Drive
Horsham, PA 19044

Penske Truck Leasing Co., LP
PO Box 563
Reading, PA 19606

Siemens Financial Services
P.O. Box 2083
Carol Stream, IL 60132

Simmons Bank
P.O. Box 7009
Pine Bluff, AR 71611-7009

(d)Simmons Bank
P.O. Box 733
Union City, TN 38281

Southern Financial Systems
P.O. Box 15203
Hattiesburg, MS 39404

Trustmark National Bank
248 East Capital Street
Jackson, MS 39201

Wiggins Primary Care
P.O. Box 1007
Lucedale, MS 39452

Addresses marked (c) above for the following entity/entities were corrected as required by the USPS Locatable Address Conversion System (LACS).

Munn Diesel Repair & Sales
398 Munn Road
Sumrall, MS 39482

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)BMO Bank, N.A.

(d)Bank of Wiggins
c/o Paul S. Murphy
Butler Snow LLP
P.O. Drawer 4248
Gulfport. MS 39502-4248

(d)CET Logistics
P.O. Box 306
Wiggins, MS 39577-0306

(u)CREDITOR ADDED IN ERROR

(u)Aloysius Davis

(d)Demetric Ratcliff
100 Ginger Drive
Hattiesburg, MS 39402-9658

(d)Chuck Evans
32 Madewood Court
Hattiesburg, MS 39402-7948

(d)Ferguson Trucking, LLC
P.O. Box 307
Houston, MS 38851-0307

(d)H&P Leasing
P.O. Box 6257
Jackson, MS 39288-6257

(u)H&P Leasing, Inc.

(d)J.W. Sledge
212 Reservoir Road
Columbia, MS 39429-8543

(d)LesJam
P.O. Box 808
McComb, MS 39649-0808

(d)Long Drive Investments
122 Bellewood Road
Hattiesburg, MS 39402-8811

(d)Love's Travel Stops & Country Stores, I
Andrew R. Turner, esq
4100 First Place Tower
15 East Fifth Street, Ste. 4100
Tulsa, Ok 74103-4305

(d)Memorial Hospital at Gulfport
4500 Thirteenth Street
Gulfport, MS 39501-2569

(d)Miller Transportation
P.O. Box 366
Wiggins, MS 39577-0366

(d)Mitsubishi HC Capital America, Inc.
c/o Chad J. Hammons, Esq.
Jones Walker LLP
3100 N. State St., Ste. 300
Jackson, MS 39216-4013

(d)PNC Equipment Finance
655 Business Center Drive
Horsham, PA 19044-3409

(d)Penske Truck Leasing Co.
P.O. Box 827380
Philadelphia, PA 19182-7380

(d)Robbie Rollin
19572 Brighton Drive
Saucier, MS 39574-6207

(d)Roy Jones
997 Hwy 49
Lot 63
Perkinston, MS 39573-6603

(u)Simmons Bank

(u)Southern States Utility Trailer Sales, Inc

(d)Systems 9 Business Solutions
237 Tidewater Road
Hattiesburg, MS 39402-7920

(d)Triple E Farms
P.O. Box 306
Wiggins, MS 39577-0306

(u)U.S. Small Business Administration

(d)Vanpete, LLC
1018 N Flowood Drive
Flowood, MS 39232-9532

(u)Webster Capital Finance

(u)XTRA Lease LLC

End of Label Matrix

| | |
|---|---|
| Mailable recipients | 248 |
| Bypassed recipients | 29 |
| Total | 277 |